**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), et al.,** X : : | |
| **Plaintiffs,** : : | Case No. 1:14-cv-9367-RMB |
| -against- : : | |
| **DEUTSCHE BANK NATIONAL TRUST COMPANY; and DEUTSCHE BANK TRUST COMPANY AMERICAS,** : : : : : | |
| **Defendants,** : | |
| -and- : | |
| **The Trusts Identified in Exhibit 1,** : : : | |
| **Nominal Defendants.** : X | |
| **BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al.,** X : : : | |
| **Plaintiffs,** : : | Case No. 1:14-cv-9371-RMB |
| -against- : : | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** : : : | |
| **Defendant,** : | |
| -and- : | |
| **The Trusts Identified in Exhibit 1,** : : : | |
| **Nominal Defendants.** : X | |

| | |
|---|---|
| **ROYAL PARK INVESTMENTS SA/NV,** **Individually and on Behalf of All Others** **Similarly Situated,** | X : : : |
| **Plaintiffs,** | : : : |
| -against- | : : : : |
| **WELLS FARGO BANK, N.A., as Trustee,** | : : : |
| **Defendant.** | : : : X |

Case No. 1:14-cv-09764-RMB-SN

| | |
|---|---|
| **NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union, in its own right, and on behalf of NCUA GUARANTEED NOTES TRUST 2010-R1, NCUA GUARANTEED NOTES TRUST 2010-R2, NCUA GUARANTEED NOTES TRUST 2010-R3, NCUA GUARANTEED NOTES TRUST 2011-R1, NCUA GUARANTEED NOTES TRUST 2011-R2, NCUA GUARANTEED NOTES TRUST 2011-R3, NCUA GUARANTEED NOTES TRUST 2011-R4, NCUA GUARANTEED NOTES TRUST 2011-R5, NCUA GUARANTEED NOTES TRUST 2011-R6, NCUA GUARANTEED NOTES TRUST 2011-M1,** | X : : : : : : : : : : : : : : : : : : : : : : : : : |
| **Plaintiffs,** | : : |
| -against- | : : : |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | : : : |
| **Defendant.** | : : X |

Case No. 1:14-cv-10067-RMB

| | |
|---|---|
| PHOENIX LIGHT SF LIMITED, in its own right and the right of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED; and each of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED, in their own right, | Case No. 1:14-cv-10102-RMB |
| Plaintiffs, | |
| -against- | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## JOINT MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS[*]

---

[*]     This case involves five separate actions against three RMBS trustees—Deutsche Bank National Trust Company ("DBNTC"), Deutsche Bank Trust Company Americas ("DBTCA," and together with DBNTC, the "DB Defendants"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants"): an action by certain BlackRock funds and others against DBNTC and DBTCA (the "DB-BR" Complaint), by certain BlackRock funds and others against Wells Fargo (the "WF-BR" Complaint), and by NCUA, Phoenix Light and Royal Park each against Wells Fargo (respectively, the "NCUA Complaint," "PL Complaint," and "RP Complaint") (the five complaints collectively, the "Complaints"). Pursuant to the Court's February 11, 2015 Case Management Plan (Docket No. 44), Defendants jointly submit this memorandum in support of their respective motions to dismiss the above-captioned actions pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

William P. Quinn, Jr., Esq.
 *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel:    (215) 963-5000
Fax:    (215) 963-5001
wquinn@morganlewis.com

Elizabeth A. Frohlich, Esq.
 *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    (415) 442.1000
Fax:    (415) 442.1001
efrohlich@morganlewis.com

Bernard J. Garbutt III, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001
bgarbutt@morganlewis.com

Attorneys for Defendants
Deutsche Bank National Trust Company and
Deutsche Bank Trust Company Americas

Jayant W. Tambe, Esq.
Howard F. Sidman, Esq.
Jason Jurgens, Esq.
JONES DAY
222 East 41st Street
New York, NY 10017
Tel:    (212) 326-3939
Fax:    (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
jjurgens@jonesday.com

Traci L. Lovitt, Esq.
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel:    (617) 449-6900
Fax:    (617) 449-6999
tlovitt@jonesday.com

Attorneys for Defendant
Wells Fargo Bank, N.A.

# TABLE OF CONTENTS

Page

I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PSA-RELATED CLAIMS IN THE *BLACKROCK* CASES, AND IN ALL EVENTS THOSE PSA TRUSTS ARE IMPROPERLY JOINED ................................................................ 6

A.   The Court Cannot Exercise Supplemental Jurisdiction Over The *BlackRock* PSA Trust-Related Claims .............................................................. 6

B.   This Court Should Not Exercise Supplemental Jurisdiction, Or Should Sever And Dismiss The PSA Trusts For Improper Joinder ................................ 10

II.  PLAINTIFFS' DERIVATIVE CLAIMS SHOULD BE DISMISSED, LEAVING ONLY THEIR DIRECT AND CLASS ACTION CLAIMS ............................................ 13

A.   Plaintiffs Lack Standing To Pursue The Alleged Derivative Actions ................. 13

B.   Plaintiffs' Claims Are Direct, Not Derivative ...................................................... 15

C.   Plaintiffs Fail New York's Contemporaneous Ownership Requirement............. 16

III. PLAINTIFFS' TIA CLAIMS LACK LEGAL AND FACTUAL MERIT ..................... 16

A.   There Is No Private Right Of Action Under The TIA ......................................... 17

B.   Plaintiffs' TIA Claims Are Facially Defective .................................................... 19

IV.  PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED ...... 20

A.   Plaintiffs Lack Standing Under The "Negating Clauses." ................................... 21

B.   Plaintiffs' Two R&W-Related Contract Claims Should Be Dismissed............... 23

C.   Plaintiffs' EOD-Related Claims Fail Due To The Lack Of Any Alleged EOD ...................................................................................................................... 26

D.   Plaintiffs Fail To Plead Defendants' Actual Knowledge Of EODs.................... 29

E.   Plaintiffs' Contract Claims Are Barred By No-Action Clauses ......................... 31

V.   PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED ............................ 32

VI.  PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED ........................................ 33

# TABLE OF AUTHORITIES

Page

C<small>ASES</small>

Abbate v. Wells Fargo Bank, N.A.,
  No. CV 10-6561 DOC, 2011 U.S. Dist. LEXIS 148206 (C.D. Cal. Apr. 25,
  2011) ...................................................................................................................34

Absolute Activist Master Value Fund, Ltd. v. Ewing,
  No. 09 CIV 8862 GBD, 2014 WL 3600409 (S.D.N.Y. July 11, 2014) ....................................7

ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured
  Prods., Inc.,
  5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014) ...........................................................................22

ACE Securities Corp. v. DB Structured Products, Inc.,
  977 N.Y.S.2d 229 (1st Dep't 2013) ...................................................................................1

Alexander v. Sandoval,
  532 U.S. 275 (2001) ...............................................................................................17, 18

Aragona v. Cin-Mar Developers,
  673 N.Y.S.2d 202 (2d Dep't 1998) ...................................................................................15

Argonaut P'ship L.P. v. Bankers Tr. Co.,
  No. 96 CIV. 1970 (LLS), 2001 WL 585519 (S.D.N.Y. May 30, 2001) ...........................24, 29

Arista Records LLC v. Lime Grp. LLC,
  532 F. Supp. 2d 556 (S.D.N.Y. 2007) ...............................................................................13

Armstrong v. Exceptional Child Ctr., Inc.,
  135 S. Ct. 1378 (2015) ....................................................................................................18

Arrowgrass Master Fund Ltd. v. BNY Mellon,
  No. 651497/2010, 2012 WL 8700416 (Sup. Ct. N.Y. Cty. Feb. 24, 2012) ..........................30

Bank of N.Y. Mellon v. Walnut Place, LLC,
  No. 11-cv-05988 (S.D.N.Y. Oct. 31, 2011), ECF No. 124 ...................................................27

Bear Ranch, LLC v. Heartbrand Beef, Inc.,
  286 F.R.D. 313 (S.D. Tex. 2012) ......................................................................................7

*Bederman v. Moskowitz*,
  139 N.Y.S.2d 352 (Sup. Ct. Kings Cty. 1955) ....................................................15

*Bellikoff v. Eaton Vance Corp.*,
  481 F.3d 110 (2d Cir. 2007).......................................................................................33

*BlackRock Balanced Capital Portfolio v. HSBC Bank USA, N.A.*,
  No. 14 Civ. 9366 (SAS), 2015 WL 1501283 (S.D.N.Y. Mar. 31, 2015) ............8, 9

*Blackrock Allocation Target Shares: Series S Portofolio et al. v. Wells Fargo
  Bank, N.A.*,
  No. 651867/2014 (June 18, 2014), ECF No. 2 ....................................................13

*BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*,
  673 F.3d 169 (2d Cir. 2012)........................................................................... passim

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A. N.J.*,
  85 F.3d 970 (2d Cir. 1996)........................................................................................19

*BNP Paribas Mortg. Corp. v. Bank of America*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013).................................................................15, 35

*Brooks v. Weiser*,
  57 F.R.D. 491 (S.D.N.Y. 1972) ................................................................................15

*Bu ex rel. Bu v. Benenson*,
  181 F. Supp. 2d 247 (S.D.N.Y. 2001).....................................................................14

*Cent. Mortg. Co v. Morgan Stanley Mortg. Capital Holdings LLC*,
  No. CIV.A. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) .........................7

*CFIP Master Fund, Ltd. v. Citibank, N.A.*,
  738 F. Supp. 2d 450 (S.D.N.Y. 2010)...............................................................4, 5, 6

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
  70 N.Y.2d 382 (1987) ..........................................................................................33, 34

*Cnty. of Suffolk v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984).........................................................................................34

*Consol. Edison, Inc. v. Ne. Utils.*,
  426 F.3d 524 (2d Cir. 2005)......................................................................................15

*Cortlandt Street Recovery Corp. v. Hellas Telecomm., S.a.r.l.*,
    996 N.Y.S.2d 476 (Sup. Ct. N.Y. Cty. Feb. 5, 2014), *reargument denied*, 2015
    WL 498875 (Sup. Ct. N.Y. Cty. Feb. 5, 2015) .......................................................................22

*Cruden v. Bank of N.Y.*,
    957 F.2d 961 (2d Cir. 1992).......................................................................................................32

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523 (1984).......................................................................................................................13

*Dallas Cowboys Football Club, Ltd. v. National Football League Trust*,
    1996 U.S. Dist. LEXIS 15501 (S.D.N.Y. Oct. 18, 1996) .......................................................15

*Dedalus Found. v. Banach*,
    No. 09 Civ. 2842(LAP), 2009 WL 3398595 (S.D.N.Y. Oct. 16, 2009) ..................................10

*Deutsche Bank Nat'l Trust Co. v. FDIC*,
    No. 1:09-cv-01656-RMC (D.C. Aug. 26, 2009), ECF No. 1....................................................35

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
    No. 12 Civ. 4025 (AT), 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013)..................................25

*Dresner Co. Profit Sharing Plan v. First Fidelity Nat'l Bank, N.A.*,
    No. 95 Civ. 1924(MBM), 1996 WL 694345 (S.D.N.Y. Dec. 4, 1996) ..................................28

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011).............................................................................. passim

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*,
    838 F.2d 66 (2d Cir. 1988)..........................................................................................................3

*FHFA v. HSBC*,
    33 F. Supp. 3d 455 (S.D.N.Y. 2014)....................................................................................24, 25

*FHFA v. Nomura Holding Am., Inc.*,
    11-cv-6201-DLC, 2014 WL 6462239 (S.D.N.Y. Nov. 18, 2014) .........................................25

*FHFA v. UBS, Ams. Inc.*,
    No. 11-cv-5201, 2013 WL 3284118 (S.D.N.Y. June 28, 2013) .............................................30

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)......................................................................................................................17

*Gordillo v. Bank of N.Y. Mellon Corp.*,
 No. 12CV0212 DF, 2014 WL 3507300 (S.D.N.Y. July 14, 2014)..................................7, 9

*Gravatt v. City of New York*,
 226 F.3d 108 (2d Cir. 2000)..................................................................................30

*Halebian v. Berv*,
 590 F.3d 195 (2d Cir. 2009)..................................................................................13

*Harris v. Provident Life & Acc. Ins. Co.*,
 310 F.3d 73 (2d Cir. 2002)....................................................................................33

*Heartland Holdings, v. U.S. Trust Co. of Tex.*,
 316 S.W.3d 1 (Tex. 2010).....................................................................................24

*IMS Eng'rs-Architects, P.C. v. State of N.Y.*,
 51 A.D.3d 1355 (3d Dep't 2008) ...........................................................................21

*In re Residential Capital, LLC*,
 No. 12-12020-MG (S.D.N.Y. Dec. 11, 2013), ECF No. 6065-1 .............................35

*Ind. Inv. Protective League v. Time, Inc.*,
 50 N.Y.2d 259 (1980) ...........................................................................................16

*India.com, Inc. v. Dalal*,
 412 F.3d 315 (2d Cir. 2005)..............................................................................21, 24

*Kamen v. Kemper Fin. Servs., Inc.*,
 500 U.S. 90 (1991)................................................................................................13

*Kolari v. N.Y. Presbyterian Hosp.*,
 455 F.3d 118 (2d Cir. 2006)..................................................................................10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
 478 F. App'x 679 (2d Cir. 2012) ..........................................................................35

*Lasalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
 180 F. Supp. 2d 465 (S.D.N.Y. 2001)....................................................................16

*LNC Investments, Inc. v. First Fidelity Bank*,
 935 F. Supp. 1333 (S.D.N.Y. 1996).......................................................................18

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
 211 F.3d 697 (2d Cir. 2000)...............................................................................6, 7

*Magten Asset Mgmt. Corp. v. Bank of N.Y.*,
   841 N.Y.S.2d 219 (Sup. Ct. 2007) ..................................................................................28

*Maiden v. Biehl*,
   582 F. Supp. 1209 (S.D.N.Y. 1984) ...............................................................................14

*Manhattan Motorcars, Inc. v. Automobil Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ...................................................................................34

*Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*,
   No. 14 Civ. 8584 (KPF), 2014 WL 7399041 (S.D.N.Y. Dec. 30, 2014) ...............................20

*Mass. Mut. Life Ins. Co. v. Residential Funding Co.*,
   843 F. Supp. 2d 191 (D. Mass. 2012) ...........................................................................25

*McConnell v. Costigan*,
   No. 00 CIV. 4598(SAS), 2000 WL 171273 (S.D.N.Y. Nov. 16, 2000) ...............................11

*McGehee v. Albright*,
   210 F. Supp. 2d 210 (S.D.N.Y. 1999) ...........................................................................17

*Meckel v. Cont'l Res. Co.*,
   758 F.2d 811 (2d Cir. 1985).............................................................................................4

*Murray v. U.S. Bank Trust Nat'l Ass'n, N.A.*,
   365 F.3d 1284 (11th Cir. 2004) .....................................................................................31

*Neivel Realty Corp. v. Prudence Bonds Corp.*,
   271 N.Y.S. 209 (N.Y. Mun. Ct. 1934).............................................................................17

*Oneida Indian Nation v. Madison Cnty.*,
   665 F.3d 408 (2d Cir. 2011).............................................................................................10

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*,
   98CIV. 6907 MBM, 2000 WL 335557 (S.D.N.Y. June 30, 2000)........................................34

*Panam Mgmt. Grp., Inc. v. Pena*,
   No. 08-CV-2258(JFB)(ARL), 2010 WL 3708656 (E.D.N.Y. Sept. 14, 2010).......................11

*Peak Partners, LP v. Republic Bank*,
   191 F. App'x 118 (3d Cir. 2006) ..............................................................................3, 28

*Pessin v. Chris-Craft Indus., Inc.*,
   586 N.Y.S.2d 584 (1st Dep't 1992) ...............................................................................16

*Phoenix Light SF Limited, et al v. ACE Securities Corp., et al,*
    Index No. 650422/2012 (Sup. Ct. N.Y. Cnty. 2012), Pltf's Mem. of Law in
    Opp'n to Defs' MTD ................................................................................................26

*Phoenix Light SF Ltd. v. Goldman Sachs Grp., Inc.,*
    No. 652356/2013, 2013 WL 2650534 (Sup. Ct. N.Y. Cty. 2014) ..............................13, 26, 28

*Policemen's Annuity & Ben. Fund v. Bank of Am., NA,*
    943 F. Supp. 2d 428 (S.D.N.Y. 2013)......................................................................24

*Polymeric Res. Corp. v. Estate of Dumouchelle,*
    No. 10-14713, 2014 WL 2815681 (E.D. Mich. June 23, 2014) ...............................7

*Prudence Realization Corp. v. Atwell,*
    35 N.Y.S.2d 1001 (1st Dep't 1942), aff'd 290 N.Y. 597 (1943) (per curiam) .......................32

*Putman High Yield Trust v. Bank of N.Y.,*
    776 N.Y.S.2d 796 (1st Dep't 2004) .........................................................................31

*Raymond James & Assocs. v. Bank of N.Y. Trust Co.,*
    No. 8:07-CV-238-T-27TBM, 2008 WL 4279629 (M.D. Fla. Sept. 18, 2008) .......................24

*Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon,*
    914 F. Supp. 2d 422 (S.D.N.Y. 2012) .....................................................................19

*Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. BNY Mellon,*
    775 F.3d 154 (2d Cir. 2014)......................................................................... passim

*Rosner v. Bank of China,*
    No. 06-cv-13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F.
    App'x 637 (2d Cir. 2009) ......................................................................................24

*Ross v. Bernhard,*
    396 U.S. 531 (1970).................................................................................................15

*Semi-Tech Litig., LLC v. Bankers Trust Co.,*
    450 F.3d 121 (2d Cir. 2006).....................................................................................29

*Sheehy v. Big Flats Cmty. Day, Inc.,*
    543 N.Y.2d 629 (1989) .............................................................................................33

*Silver v. I. Goldberg & Partners, Inc.,*
    No. 92 CIV. 6989(MBM), 1994 WL 392187 (S.D.N.Y. July 28, 1994)................................12

*Sirohi v. Trs. of Columbia Univ.*,
    No. 97-7912, at *2 (2d Cir. Apr. 16, 1998) ............................................20

*Springwell Navigation Corp. v. Sanluis Corp., S.A.*,
    849 N.Y.S.2d 34 (1st Dep't 2007) ........................................................22

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008)...........................................................................17, 18

*Theodore v. TD Ameritrade, Inc.*,
    859 N.Y.S.2d 899 (Nassau Cty. Sup. Ct. Feb. 11, 2008).......................24

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ....................................................................15

*Tran v. Bank of N.Y.*,
    No. 13 Civ. 580(RPP), 2014 WL 1225575 (S.D.N.Y. Mar. 24, 2014)....................14

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979)................................................................................18

*U.S. Bank, Nat. Ass'n v. Citigroup Global Mkts. Realty Corp.*,
    No. 13 CV 6989, 2015 WL 1222075 (S.D.N.Y. Mar. 13, 2015)............25

*U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp.*,
    No. 13 Civ. 6989, 2014 WL 7714382 (S.D.N.Y. Nov. 14, 2014) ........25

*UBS Capital Americas II, LLC v. Highpoint Telecommunications Inc.*,
    No. 01-CV-8133, 2002 WL 377537 (S.D.N.Y. Mar. 8, 2002)..............30

*Univers. Research Assn. v. Coutu*,
    450 U.S. 754 (1981)..............................................................................17

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011)...................................................21

*Williams v. Citibank, N.A.*,
    565 F. Supp. 2d 523 (S.D.N.Y. 2008).....................................................9

*Wilson v. Dantas*,
    746 F.3d 530 (2d Cir. 2014)..................................................................21

*Yudell v. Gilbert*,
    444 N.Y.S.2d 380 (1st Dep't 2012) .......................................................15

*Zeffiro v. First Penn. Banking & Trust Co.*,
    623 F.2d 290 (3d Cir. 1980)..................................................................................18, 19, 32

**STATUTES**

15 U.S.C. 77ooo(b) ..................................................................................................19

15 U.S.C. § 77ooo(a)(1) ..........................................................................................19

15 U.S.C. §§ 77ooo(a)-(c) .......................................................................................17

15 U.S.C. § 77www ..................................................................................................17

28 U.S.C. § 1367 ........................................................................................................6

28 U.S.C. § 1367(c)(2), (4) ......................................................................................10

12 Del. Code § 3816(a)-(c) ......................................................................................14

Minn. Stat. § 501B.16 ..............................................................................................34

N.Y. Bus. Corp. Law § 626 ......................................................................................16

N.Y. Bus. Corp. Law § 626(b) .................................................................................16

N.Y. Gen. Oblig. Law § 13-107 ...............................................................................16

N.Y. Real Prop. Law § 126 ......................................................................................33

N.Y. Real Property Law § 125(1) .............................................................................32

**OTHER AUTHORITIES**

*International Debt Restructurings*, 14 AM. BANKR. INST. L. REV. 431, 433-37
    (2006) ..............................................................................................................20

Bogert, *The Law of Trusts and Trustees*, §§ 1, 594, 712, 869 .....................................14

S. Rep. No. 76-248, at 2 (1939) ...............................................................................17

Plaintiffs in these actions include some of the world's most sophisticated institutional investors with considerable expertise in mortgage-backed securities. At the height of the now-historic U.S. "housing bubble," they bought billions of dollars of residential mortgage-backed securities ("RMBS"). When that bubble burst and the values of homes securing those mortgages collapsed, so too did the value of many RMBS investments. Hardly helpless, RMBS investors had the ability to direct RMBS trustees to pursue claims against Warrantors—the loan "Originators" and loan pool "Sponsors" who made representations and warranties ("R&Ws") about loan quality. A number of investors did exactly that, and many of these Plaintiffs executed a years-long strategy of pursuing R&W breaches, leading to large settlements with some Warrantors. But Plaintiffs chose not to address R&W claims for the 846 RMBS trusts at issue in the Complaints. In 2013, a New York case cut off those claims when it clarified the claims' accrual date for limitations purposes. *See ACE Securities Corp. v. DB Structured Products, Inc.*, 977 N.Y.S.2d 229, 231 (1st Dep't 2013).

Rather than accept the consequences of their considered litigation choices, Plaintiffs now wrongly seek to shift their own responsibility to pursue claims—as well as the responsibilities of the Warrantors and loan servicers (the "Servicers")—to RMBS trustees Wells Fargo, DBNTC and DBTCA, who had no such responsibilities. Instead, as RMBS trustees, Defendants perform largely ministerial tasks. They owe investors, like Plaintiffs, only those limited duties specifically detailed in the trusts' Governing Agreements (the "GAs")—which bear little or no relation to the broad duties Plaintiffs allege.

As one would expect given the complexity of RMBS securitizations and the amount of money at stake, the GAs reflect the legal rights, duties, and economic risk that each party assumed. Investors accepted the risks and rewards of the housing market and of their rights to

collectively direct the RMBS trustee's remedial efforts. In contrast, RMBS trustees agreed to low pay in exchange for narrow ministerial duties, broad exculpations, and minimal economic risk in the transaction. The ***investor-driven*** process for remediating breaches by Warrantors or Servicers reflects these different choices and roles. Indeed, the GAs place the onus of taking action against Warrantors and/or Servicers for purported duty breaches ***on investors***.

Because the GAs generally require trustees to act only in response to certain investor actions that Plaintiffs did not take here, it is unsurprising that Plaintiffs plead neither specific trustee obligations that actually exist in the GAs, nor the particular conduct of Defendants that Plaintiffs allege constituted material breaches with respect to specific trusts. Rather, all Complaints contain little more than generalized allegations about publicly available information that did not trigger any trustee duties under the applicable GAs. Such threadbare allegations will not suffice to state a claim. As is explained below, the Complaints are brought in the wrong court, in the wrong format (*i.e.*, derivatively), and when considered in light of the GAs that form a basis for the Complaints, fail to state claims against Defendants. They should be dismissed.

## RELEVANT BACKGROUND

In an RMBS securitization, "a mortgage lender sells pools of mortgages into trusts created to receive the stream of interest and principal payments from the mortgage borrowers." *Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi. v. BNY Mellon*, 775 F.3d 154, 156 (2d Cir. 2014) ("*PABF*") (internal quotation marks and citation omitted). The entities who write the mortgages are typically called "Originators"; the entities that pool them are called "Sponsors" or "Sellers"; and a "Depositor" conveys them to an RMBS trust or trustee. At closing, the Sponsor selects the Servicer(s) that will enforce the mortgage terms and administer the payments.

This case involves two different types of RMBS trusts (the "Trusts"): PSA Trusts and Indenture Trusts. PSA Trusts "are organized under New York [common] law." *PABF*, 775 F.3d

at 156. With PSA Trusts, "[t]he right to receive trust income is parceled into certificates and sold to investors, called certificateholders." *Id.* "The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in a" PSA. *Id.* "Under the PSA, the trustee holds the trust property for the benefit of investors." *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d Cir. 2012). Of the 846 Trusts at issue here, 770 are PSA Trusts. Decl. of E. A. Frohlich ("F. Decl.") and Decl. of H. F. Sidman ("S. Decl.") (together, "Decls.") Ex. D.[1]

Indenture Trusts have a two-trust structure, including one common law indenture trust (for which RMBS trustees such as Defendants serve as indenture trustees), and one Delaware statutory trust called an "owner trust" or the "Issuer." Indenture Trusts are created by a trust agreement to which the Depositor, the owner trustee, and an administrator are parties. Indenture Trusts differ from PSA Trusts in that the Depositor conveys ownership of the pooled loans to the Issuer, which in turn issues its own notes pursuant to the indenture. Under the indenture, the Issuer collateralizes the notes by pledging the mortgage loans to the indenture trustee, which holds the pledge on behalf of the noteholders. Of the 846 Trusts, 76 are Indenture Trusts. Decls. Ex. E.

While RMBS trusts have the word "trust" in their name, RMBS trusts and ordinary trusts (*e.g.*, testamentary trusts) are "different legal animal[s]." *Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 122 (3d Cir. 2006). Unlike ordinary trustees, RMBS trustees' duties "are **exclusively defined** by the terms of the" GAs. *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (emphasis added); *see Ellington Credit Fund, Ltd. v. Select*

---

[1] In light of page limits, Defendants often cite exemplar trusts. But, each GA is different. Accordingly, Defendants have submitted detailed charts, denoted "Ex. XX," that list the relevant trusts or specific GA provisions implicated by their arguments.

*Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 192 (S.D.N.Y. 2011) ("[T]hese constraints apply with similar force to securitization trustees subject to PSAs . . . ."). Thus, the RMBS trustee "is not subject to the ordinary trustee's duty of undivided loyalty. Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985).

Unlike the ordinary trustee, the duties of a corporate trustee, such as an RMBS trustee, "are limited, administrative, and ministerial (rather than substantive) in nature. Such duties include, by way of example, delivering certificates." *CFIP Master Fund, Ltd. v. Citibank, N.A.*, 738 F. Supp. 2d 450, 473 (S.D.N.Y. 2010). As another example, RMBS trustees can rely on Warrantors' R&Ws, *see* Decls. Ex. JJ, and they are not required to monitor Servicers, *see* F. Decl. Ex. 120 §§ 3.01, 8.01.

Servicers—not trustees—have relationships with individual borrowers, collect payments, work with borrowers upon default, modify loans, and, if necessary, foreclose. *See, e.g.*, F. Decl. Ex. 120 Article III. The RMBS trustee neither services loans nor supervises Servicers. *See, e.g., id.* §§ 3.01, 8.01. Rather, Servicers annually certify to the trustee or the "Securities Administrator" that they complied with applicable servicing criteria. *See, e.g., id* § 3.20. The RMBS trustee may "conclusively rely" upon the accuracy of such certificates that it in good faith believes to be genuine. *See, e.g., id* §§ 8.01, 8.02(a)(i).

At or prior to the securitizations' closing, Warrantors make R&Ws about the nature and quality of the loans conveyed to the RMBS trustee. *See, e.g.*, F. Decl. Ex. 120 §§ 2.05, 2.06. The RMBS trustee is entitled to rely on those R&Ws, and has ***no*** obligation to investigate their veracity. *See* Decls. Ex. JJ. In fact, trustees are not required to act in connection with R&Ws

unless they actually "discover" an R&W breach of a specific loan that materially and adversely affects the interests of the investors.  *See id.* Exs. HH, II.

Prior to a contractually defined "Event of Default" ("EOD"), generally only investors ***themselves*** may affirmatively trigger any obligation of the RMBS trustee to initiate investigations or enforcement proceedings.  Even then, the RMBS trustee has no obligation to exercise those powers absent indemnification under provisions like the following:

> The Trustee shall be under no obligation to exercise any of the trusts or powers vested in it by this Agreement . . . unless such Certificateholders shall have offered to the Trustee reasonable security or indemnity against the costs, expenses and liability which may be incurred therein or thereby.

S. Decl. Ex. 92 § 9.02(iii); F. Decl. Exs. 120 § 802(iii), 240 § 5.06(ii).

This allocation of duties is economically rational.  The RMBS *investors* hold all the potential economic upside, downside and risks with respect to trust assets, while the RMBS trustee has no economic risk under the GAs.  This allocation of duties reflects that investors are best positioned to evaluate their risk tolerance for complex structured products, and courts have recognized that "no reasonable investment fund in the plaintiff's position would have permitted its interests . . . to be protected only by a Trustee." *CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 474.  Thus, every GA safeguards against potential waste of trust assets by conditioning costly investigatory and enforcement actions on direction from investors with a specified percentage of voting rights.  *See* Decls. Ex. CC.

RMBS trustees do not accept economic risk in these transactions and are expressly protected from having to risk their own funds even in performing their defined GA duties.  *See, e.g.*, F. Decl. Exs. 120 § 8.01, 240 § 6.01(f).  Unlike institutional investors in RMBS trusts, the RMBS trustee receives "pocket change in comparison to all other economic aspects of [the] transaction." *CFIP Master Fund, Ltd.*, 738 F. Supp. 2d at 474.  The low fees make economic

sense: they reflect the trustees' limited role, their narrow, largely ministerial duties, and their bargained-for exculpations from liability. *See id.*; *see, e.g.*, F. Decl. Exs. 120 § 8.05, 240 § 6.07. The Court should respect the arms-length negotiations of the parties and decline Plaintiffs' request that the Court rewrite the GAs.[2]

## ARGUMENT

I.   **THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE PSA-RELATED CLAIMS IN THE *BLACKROCK* CASES, AND IN ALL EVENTS THOSE PSA TRUSTS ARE IMPROPERLY JOINED.**

The Court should dismiss claims relating to the PSA Trusts in the two *BlackRock* Complaints for lack of subject matter jurisdiction. The *BlackRock* Plaintiffs rely exclusively on the federal question statute for original jurisdiction but assert only one federal claim under the Trust Indenture Act (the "TIA"). The Second Circuit has held that the TIA does not apply to PSA Trusts. *See PABF*, 775 F.3d at 163-70. As a result, all 769 of the *BlackRock* PSA Trust-related claims arise solely under state law with no supporting diversity jurisdiction, which requires their dismissal. *See* Decls. Ex. I. The *BlackRock* Plaintiffs' reliance on supplemental jurisdiction, *see* 28 U.S.C. § 1367, is misplaced.

A.   **The Court Cannot Exercise Supplemental Jurisdiction Over The *BlackRock* PSA Trust-Related Claims.**

Under § 1367(a), a federal court may exercise supplemental jurisdiction "only if [the state law claims] are so closely related to the federal questions as to form part of the same 'case or controversy' under Article III" of the U.S. Constitution. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000). The state and federal claims must share a "common nucleus of operative fact." *Id.* That is, the court must find that "the facts underlying the federal

---

[2]  Plaintiffs in the WF-BR case have agreed to dismiss their claims concerning one of the 274 Trusts at issue, SARM 2004-6, because WF is not the trustee for that Trust.

and state claims substantially overlapped or [that] the federal claim necessarily brought the facts underlying the state claim before the court." *Id.* (citation omitted); *accord Absolute Activist Master Value Fund, Ltd. v. Ewing*, No. 09 CIV 8862 GBD, 2014 WL 3600409, at *4 (S.D.N.Y. July 11, 2014).

Plaintiffs' federal TIA claims that relate to Indenture Trusts and their state law claims that relate to the PSA Trusts do not arise from a common nucleus of fact. Resolving Plaintiffs' claims will require individualized evidence pertaining to each of the 846 Trusts, which are ***distinct contractual relationships*** with no common nexus. The contracts, parties, loans, duties, and transactions are different, which refutes any conceivable common nucleus of facts. *See Gordillo v. Bank of N.Y. Mellon Corp.*, No. 12CV0212 DF, 2014 WL 3507300, at *9 (S.D.N.Y. July 14, 2014) (no common nucleus for contract and indemnity claims, even though one provided background for the other); *Polymeric Res. Corp. v. Estate of Dumouchelle*, No. 10-14713, 2014 WL 2815681, *3 (E.D. Mich. June 23, 2014) (no common nucleus for different contracts); *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, 286 F.R.D. 313, 319 (S.D. Tex. 2012) (same). A claim based on a "breach of a representation in one transaction-specific contract does not 'arise' out of the same 'transaction or occurrence' as [a claim based on] the breach of the same representation made in a different contract." *Cent. Mortg. Co v. Morgan Stanley Mortg. Capital Holdings LLC*, No. CIV.A. 5140-CS, 2012 WL 3201139, at *18 (Del. Ch. Aug. 7, 2012).

The fact that the different Trusts involve different contracts alone establishes the absence of a common nucleus of fact. The numerous, different *parties* to the various agreements is further proof of the different evidence Plaintiffs must present to establish the alleged threshold breaches by Warrantors or Servicers purportedly triggering Defendants' duty to act. Of the hundreds of unique Warrantors and Servicers, most participated only for loans in the PSA Trusts.

In other words, the vast majority of parties whose breaches Plaintiffs must establish as a threshold matter to trigger Defendants' duties are complete strangers to the Indenture Trusts' GAs. And 100, approximately half, of the DB Plaintiffs and 150, the great majority, of the WF Plaintiffs have no interest in any of the 76 Indenture Trusts and therefore cannot plead any federal claim at all. Decls. Ex. DD. As such, Plaintiffs' theory that all PSA Trust claims— which themselves involve different evidence and sources of evidence—share a common nucleus of fact with Indenture Trusts is unsupportable.[3]

Even if the contracts and parties were the same, claims involving different Trusts would not arise from the same nucleus of fact because each Trust involves different loans. Proof that a Defendant breached its contractual obligations with respect to loans in one Trust is not probative of whether it had a duty, let alone breached it, as to any other Trust. Whether a breach occurred depends, in part, on the GA's terms, the Defendants' conduct with regard to the individual Trust, the language of the particular R&Ws, and the individual loan's characteristics. The Second Circuit recognized this reality in *PABF*. It rejected an investor's argument that an alleged failure by BNYM, an RMBS trustee, to take action to rectify defaults in certain trusts "implicates the same set of concerns"—a lesser requirement than the common nucleus of facts required here, *see*

---

[3] Judge Shira A. Scheindlin recently rejected a similar jurisdictional argument in *Black Rock Balanced Capital Portfolio v. HSBC Bank USA, N.A.*, No. 14 Civ. 9366 (SAS), 2015 WL 1501283, at *4 (S.D.N.Y. Mar. 31, 2015), reasoning that the "two types of trusts . . . have many overlapping parties," a fact that, in her view, "establishes the common thread." But, the fact that some parties to the Indenture Trusts are also parties to one or more PSA Trusts, at most, would bear on judicial economy and convenience, not the threshold question of whether the federal and state claims arise out of the same nucleus of fact. The mere fact that some RMBS Trusts have some common parties does not mean that all the underlying federal and state claims arise out of the same nucleus of facts. While overlapping—indeed, identical—parties is necessary for a common nucleus, it is not sufficient for that conclusion. Overall, there would not even be a meaningful judicial economy here, because the differences in the parties overwhelm the overlap. The degree of overlapping parties was far more extensive in the *HSBC* case, calling into question whether Judge Scheindlin would have reached the same conclusion here.

*Gordillo*, 2014 WL 3507300, at *9—"as BNYM's alleged failure to take action with respect to defaults in other trusts." *PABF*, 775 F.3d at 161. As the Court observed:

> BNYM's alleged misconduct must be proved loan-by-loan and trust-by-trust. For example, whether Countrywide breached its obligations under the governing agreements (thus triggering BNYM's duty to act) requires examining its conduct with respect to each trust. Whether it was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties. And whether a loan's documentation was deficient requires looking at individual loans and documents.

*Id.* at 162. "[T]he nature of the claims in this case unavoidably generates significant differences in the proof that will be offered for each trust." *Id.* at 163. The facts Plaintiffs must prove as to one trust differ from those they must prove as to the other trusts.[4]

In addition, the GAs do not define Defendants' salient duties in the same way. Contrary to Plaintiffs' contention that all GAs impose the same obligations, the obligations differ from trust-to-trust in ways that are material to what Plaintiffs must prove at trial.[5] Plaintiffs allege that all PSAs require Defendants to enforce breaches of R&Ws (*see, e.g.*, WF-BR Compl. ¶¶ 528-529, 541), which is false because enforcement provisions under PSAs vary considerably. *See*

---

[4] Judge Scheindlin also concluded that jurisdiction was supported by the alleged "common conduct of HSBC in systematically failing to perform its duties as a trustee," *BlackRock Balanced Capital Portfolio*, 2015 WL 1501283, at *4, which is inconsistent with *PABF*. The Second Circuit rejected the argument that commonality could be proved by an RMBS trustee's alleged "policy of 'inaction' in the face of widespread defaults." *PABF*, 775 F.3d at 162. The Court continued: "Even proof that [the trustee] *always* failed to act when it was required to do so would not prove . . . which trusts actually had deficiencies that required [the indenture trustee] to act in the first place." *Id.* Judge Scheindlin's reliance on allegations of an RMBS trustee's systematic failure to perform confuses two different issues: (i) whether the particular acts or omissions that must be proved to prevail on the federal claims and state claims are the same; and (ii) whether the type of acts or omissions alleged for each claim is the same. As the Second Circuit has made clear, only the first issue is relevant to determining commonality, but Judge Scheindlin focused on the second.

[5] A "court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008).

*infra* § IV.B.1.  In light of those variations, Plaintiffs will have to establish the actual duties each GA imposes as to each Trust.  Common evidence will not suffice.

The proof needed to establish an EOD further differentiates PSA Trusts from Indenture Trusts.  The Indentures define an EOD as a breach by the Issuer, *i.e.*, the statutory trust itself, whose obligations have nothing to do with servicing.  *See, e.g.,* F. Decl. Ex. 240 Appendix A.  In contrast, PSAs define an EOD with reference to a breach by a *Servicer*, which has everything to do with servicing.  *See, e.g.,* S. Decl. Ex. 92 § 8.01.  Thus, the "operative facts" necessary to prove an EOD under an Indenture involve fundamentally different contracts, different contracting parties, different allegedly wrongful acts, different evidence, and different witnesses relative to a PSA.  This distinction is critically important here because the Complaints accuse Defendants of breaching duties that, under the express terms of the GAs, arise only upon the occurrence of an EOD.

> **B.**     **This Court Should Not Exercise Supplemental Jurisdiction, Or Should Sever And Dismiss The PSA Trusts For Improper Joinder.**

Whether the Court can exercise supplemental jurisdiction does not end the inquiry. Because supplemental jurisdiction is "a doctrine of discretion," *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006), courts may decline to exercise it where the state-law "claim substantially predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(2), (4).  If "it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."  *Oneida Indian Nation v. Madison Cnty.*, 665 F.3d 408, 439 (2d Cir. 2011); *Dedalus Found. v. Banach*, No. 09 Civ. 2842(LAP), 2009 WL 3398595, at *5 (S.D.N.Y. Oct. 16,

2009) (declining to exercise supplemental jurisdiction over a "federal tail . . . wag[ging] what is in substance a state dog").

By any measure, Plaintiffs' state law contract and tort claims predominate over their single federal TIA claim, which applies only to Indenture Trusts. With respect to the DB Defendants, 191 different Plaintiffs assert *no* federal claim—only state law claims—for almost 90% (500/564) of the Trusts at issue, and assert only a single federal claim among several state law claims for the remaining 64 Indenture Trusts at issue. *See* F. Decl. Ex. DD. With respect to Wells Fargo, the 175 different *BlackRock* Plaintiffs assert *no* federal claim—only state law claims—for 96% (262/274) of the Trusts at issue, and assert only a single federal claim among several state law claims for the remaining 12 Indenture Trusts at issue.

Resolution of the almost exclusively state law oriented *BlackRock* cases would consume considerable federal resources. The Court would oversee discovery, motion practice and trial on 846 different trusts, only a tiny fraction of which implicate federal law. For the DB-BR and WF-BR cases, the court would have to examine the conduct of hundreds of different Warrantors and Servicers, the great majority of which had nothing to do with the Indenture Trusts or the only federal claim before the Court. *See supra* at 7-8. Where, as here, exercising supplemental jurisdiction would expend considerable federal judicial resources on largely state law claims, courts routinely decline to exercise supplemental jurisdiction. *See, e.g.*, *Panam Mgmt. Grp., Inc. v. Pena*, No. 08-CV-2258(JFB)(ARL), 2010 WL 3708656, at *5 (E.D.N.Y. Sept. 14, 2010); *McConnell v. Costigan*, No. 00 CIV. 4598(SAS), 2000 WL 171273, at *5 (S.D.N.Y. Nov. 16, 2000); *Silver v. I. Goldberg & Partners, Inc.*, No. 92 CIV. 6989(MBM), 1994 WL 392187, at *6 (S.D.N.Y. July 28, 1994).

Presumably because the state law claims predominate, the *BlackRock* Plaintiffs initially filed their Complaints in New York state court but quickly dismissed them after the cases were

assigned to a state court judge who has issued rulings in a similar case that are unfavorable to Plaintiffs.[6]  This kind of forum shopping also militates against the exercise of supplemental jurisdiction.  *See, e.g.*, *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556, 583-84 (S.D.N.Y. 2007) (courts should "discourage . . . [the] strategic behavior" of boot-strapping state law counterclaims with weak federal counterclaims to get into federal court).  Accordingly, the Court should decline to exercise jurisdiction, assuming it even exists.

Alternatively, the Court should sever and dismiss the *BlackRock* PSA Trust claims.  The Plaintiffs asserting only state law claims have no basis for being in federal court apart from their having improperly joined the suits of different parties asserting separate claims relating to different contracts, trusts, and loans.  Severing the PSA Trust claims under Rule 21 would clearly require those claims' dismissal as there would be no federal jurisdiction whatsoever to which supplemental jurisdiction could attach.

## II.  PLAINTIFFS' DERIVATIVE CLAIMS SHOULD BE DISMISSED, LEAVING ONLY THEIR DIRECT AND CLASS ACTION CLAIMS.

Plaintiffs' derivative claims should be dismissed for all Trusts, because:  (i) Plaintiffs lack standing to pursue derivative claims for any Trusts; (ii) their claims are direct, not derivative, in nature; and (iii) the claims are barred by New York's contemporaneous ownership rule.  *See* Decls. Ex. H.

---

[6]  The *BlackRock* Plaintiffs originally filed their cases in New York state court.  *See* Derivative Complaint, *Blackrock Allocation Target Shares: Series S Portofolio et al. v. Wells Fargo Bank, N.A.*, No. 651867/2014 (June 18, 2014), ECF No. 2; Complaint, *Blackrock Balanced Capital Portfolio (FI) v. Deutsche Bank National Trust Company*, No. 651865/2014 (June 18, 2014) ECF No. 2.  The case was assigned to Justice Marcy Friedman, and subsequently transferred to Justice Charles E. Ramos, who has issued rulings dismissing RMBS investors' claims for failure to conduct adequate loan-level due diligence before investing.  *See Phoenix Light SF Ltd. v. Goldman Sachs Grp., Inc.*, No. 652356/2013, 2013 WL 2650534, at *6 (Sup. Ct. N.Y. Cty. 2014).

**A.      Plaintiffs Lack Standing To Pursue The Alleged Derivative Actions.**

A derivative action is a "limited exception" to the usual rule that a party must assert its own claims and thereby obtain its own recovery. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 531 (1984). In limited circumstances, a derivative plaintiff may "step into the . . . shoes" of another entity, assert that entity's claims derivatively, and obtain the entity's recovery *for* the entity. *Id.* at 528; *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991); Fed. R. Civ. P. 23.1 (shareholder may derivatively enforce a right the corporation "may properly assert"). Derivative standing "has long been understood to apply *only* to those actions in which the right claimed by the shareholder is one *the corporation could itself have enforced in court*." *Halebian v. Berv*, 590 F.3d 195, 205 n.5 (2d Cir. 2009) (emphasis added).

Plaintiffs purport to sue Defendants derivatively on behalf of the common law trusts.[7] But common law trusts are not juridical entities that "can sue or be sued, and litigation involving a trust must be brought by or against the trustee in its capacity as such." *Tran v. Bank of N.Y.*, No. 13 Civ. 580(RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014); *Bu ex rel. Bu v. Benenson*, 181 F. Supp. 2d 247, 249 & n.1 (S.D.N.Y. 2001) ("[T]he Trust is not, under New York law, a suable juridical entity."); Bogert, *The Law of Trusts and Trustees*, §§ 1, 594, 712, 869 (trust cannot own anything; trustee is the juridical person who can sue or be sued with

---

[7]  For purposes of Plaintiffs' purported derivative claims, the relevant Trusts are common law trusts even when they exist within a two-trust Indenture Trust structure. The common law trust, not the corresponding Delaware statutory trust, is the trust for which Defendants serve as trustees, in which the relevant R&Ws exist, and from which Plaintiffs' certificates are issued. Even if the Delaware statutory trusts were the relevant trusts (they are not), the Delaware Statutory Trust Act would bar Plaintiffs' derivative claims for lack of standing, for failure to meet the contemporaneous ownership requirement, and for failure to make demand upon the "Owner Trustee" authorized to sue on behalf of a statutory trust. 12 Del. Code § 3816(a)-(c).

respect to trust assets). The *trustee* is the juridical entity that can hold property, sue, and be sued, on the trust's behalf. *See Maiden v. Biehl*, 582 F. Supp. 1209, 1218 (S.D.N.Y. 1984).[8]

Because the Trusts here cannot themselves bring claims in the first instance, claims cannot be asserted derivatively on their behalf. Plaintiffs cannot salvage these derivative claims by asserting them on behalf of the trustees, because a suit *by* the trustees and *against* themselves would not present a justiciable case or controversy. *BNP Paribas Mortg. Corp. v. Bank of America*, 949 F. Supp. 2d 486, 498 (S.D.N.Y. 2013); *Bederman v. Moskowitz*, 139 N.Y.S.2d 352, 353 (Sup. Ct. Kings Cty. 1955).

In addition, the Trusts are not parties to, or intended third-party beneficiaries of, the GAs and therefore have no legal right to enforce them. *See, e.g.*, S. Decl. Ex. 10 § 11; F. Decl. Exs. 120 § 11.10, 240 § 10.10. Therefore, even if derivative contract claims could be asserted on behalf of the Trusts (they cannot), they would not be viable. *See Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 527 (2d Cir. 2005).

Finally, Plaintiffs' derivative standing, TIA, and contract claims are inconsistent. To assert a TIA claim or to rely on N.Y.G.O.L. 13-107, the PSA Trust certificates must be debt, *see PABF*, 775 F.3d at 163-70, but derivative actions are available only to equity, not debt, holders. *See Brooks v. Weiser*, 57 F.R.D. 491 (S.D.N.Y. 1972). Plaintiffs cannot have it both ways. If Plaintiffs insist on bringing a derivative action, they cannot maintain a TIA claim, and they

---

[8]  While these well-established principles compel the conclusion that Plaintiffs cannot sue on behalf of a common law trust, Defendants are unaware of a case squarely addressing whether derivative claims on behalf of a trust are barred when the trust itself cannot assert the claims in the first instance. *Dallas Cowboys Football Club, Ltd. v. National Football League Trust*, 1996 U.S. Dist. LEXIS 15501 (S.D.N.Y. Oct. 18, 1996) does not apply here. The trust at issue in that case—unlike the common law trusts at issue here—apparently was a juridical entity because the trust was itself the owner of the trademarks at issue and was a party to the license agreement at issue. *Id.* at *1. Moreover, that case was decided before the seminal case of *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), which is described below.

cannot claim standing based on a debt security statute like N.Y.G.O.L. 13-107. On the other

hand, if Plaintiffs seek to sue under those statutes, they must dismiss their derivative claims.

### B. Plaintiffs' Claims Are Direct, Not Derivative.

To determine whether a claim is derivative, courts analyze: "who suffered the alleged

harm (the corporation or the suing stockholders, individually)," and "who would receive the

benefit of any recovery or other remedy." *Yudell v. Gilbert*, 444 N.Y.S.2d 380 (1st Dep't 2012)

(quoting *Tooley*, 845 A.2d at 1033). Here, the investors, not the Trusts, suffered the alleged

harm. Plaintiffs allege that Defendants breached duties extending *only* to the investors. *See, e.g.*,

WF-BR Compl. ¶ 492. For example, Plaintiffs assert that Defendants violated the TIA.

Assuming a private right of action even exists under a federal securities statute like the TIA, it

certainly would not belong to "the Trusts." Plaintiffs assert that Defendants had a duty to notify

them of uncured EODs, but any such duty would benefit only the investors, not the Trusts. *See,

e.g.*, WF-BR Compl. ¶ 492-93. That Plaintiffs seek compensatory damages for their own losses,

not for a trust injury, is further evidence that any alleged harm would be to them personally. *See*

Prayers for Relief.

Investors would likewise receive the benefit of any recovery. In a true derivative action,

"[t]he proceeds of the action belong to the corporation . . . ." *Ross v. Bernhard*, 396 U.S. 531,

538 (1970); *Aragona v. Cin-Mar Developers*, 673 N.Y.S.2d 202, 203 (2d Dep't 1998). Here, no

recovery would "belong" to the Trusts; as Plaintiffs admit, the Trusts are merely pass-through

vehicles. *See* WF-BR Compl. ¶¶ 2, 224, 228; *see also Lasalle Bank Nat'l Ass'n v. Nomura Asset

Capital Corp.*, 180 F. Supp. 2d 465, 467 n.1 (S.D.N.Y. 2001). Any damage award would be

promptly disbursed entirely to investors in their ratable share. *See, e.g.*, PSA § 9.15; F. Decl.

Exs. 120 § 8.12(a), 240 § 5.03(f).

### C.    Plaintiffs Fail New York's Contemporaneous Ownership Requirement.

Finally, Plaintiffs fail New York's "rigorously enforced" contemporaneous ownership rule, N.Y. Bus. Corp. Law § 626. *Ind. Inv. Protective League v. Time, Inc.*, 50 N.Y.2d 259, 263 (1980). It authorizes a plaintiff to assert a derivative action only if it: (i) is a "holder at the time of bringing the action," and (ii) was "a holder at the time of the transaction of which he complains, or that his shares or his interest therein devolved upon him by operation of law." N.Y. Bus. Corp. Law § 626(b).

Plaintiffs allege that they were investors in the relevant Trusts "at the time of the transactions of which [they] complain[], or interests therein devolved upon [them] by operation of" N.Y. Gen. Oblig. Law § 13-107. Section 13-107, however, concerns the transfer of "claims or demands." It does not apply to the transfers of "shares" or "interests" necessary for derivative standing under § 626. Moreover, "under New York law, an interest is conferred by operation of law" under § 626 "only if it occurs automatically by operation of [law], not by the voluntary actions of private parties." *Pessin v. Chris-Craft Indus., Inc.*, 586 N.Y.S.2d 584, 587 (1st Dep't 1992). Accordingly, Plaintiffs' derivative claims should be dismissed.

## III.    PLAINTIFFS' TIA CLAIMS LACK LEGAL AND FACTUAL MERIT.

Plaintiffs' TIA claims fail for two reasons: (i) no private right of action exists under the TIA, and (ii) even if it did, Plaintiffs fail to plead that Defendants violated it.

### A.    There Is No Private Right Of Action Under The TIA.

Plaintiffs' TIA claims should be dismissed in their entirety, first, because there is no federal TIA private cause of action or remedy. *See* Decls. Ex. J. The TIA contains no applicable, express text suggesting a private right or remedy. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164 (2008). With no "evidence anywhere in the text to suggest that Congress intended to create a private right to enforce regulations," no such right

may be implied.  *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001).  The TIA's terms actually

demonstrate the *absence* of intent.  The TIA limits trustees; it does not confer rights on investors.

*See, e.g.*, 15 U.S.C. §§ 77ooo(a)-(c).  "Statutes that focus on the person regulated rather than the

individuals protected create no implication of an intent to confer rights on a particular class of

persons."  *Sandoval*, 532 U.S. at 289 (internal quotation marks and citation omitted); *Gonzaga

Univ. v. Doe*, 536 U.S. 273, 287 (2002) (same); *McGehee v. Albright*, 210 F. Supp. 2d 210, 217

n.6 (S.D.N.Y. 1999).  The TIA's recognition of a limited private action for misleading statements

to the SEC also supports Defendants' interpretation.  *See* 15 U.S.C. § 77www.  It shows that

"when Congress wished to provide a private damages remedy, it knew how to do so and did so

expressly."  *Univers. Research Assn. v. Coutu*, 450 U.S. 754, 773 (1981).

      The TIA's legislative history contains *no* statement about a federal remedy.  It provides

that, "[a]fter the indenture has been executed it will be enforced only by the parties, like any

other contract."  S. Rep. No. 76-248, at 2 (1939).  The indenture is enforceable "in the same

manner that indentures presently executed are enforceable," *see* Trust Indentures, Hr'g before

Subcomm. of the H. Comm. on Interstate & Foreign Commerce, 75th Cong. 23 (Apr. 25, 1938)

(statement of SEC Chairman William O. Douglas), which was then, as now, under state contract

law.  *See, e.g.*, *Neivel Realty Corp. v. Prudence Bonds Corp.*, 271 N.Y.S. 209, 212-14 (N.Y.

Mun. Ct. 1934).

      To the extent Plaintiffs intend to rely on *Zeffiro v. First Penn. Banking & Trust Co.*, 623

F.2d 290, 302 (3d Cir. 1980), or *LNC Investments, Inc. v. First Fidelity Bank*, 935 F. Supp. 1333,

1338-40 (S.D.N.Y. 1996), those cases are inconsistent with the Supreme Court's most recent

jurisprudence—*Stoneridge*, *Sandoval* and *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct.

1378, 1387 (2015) (plurality) ("Our precedents establish that a private right of action under

federal law is not created by mere implication")—which require textual indicators of a private action and remedy. In *Zeffiro*, moreover, the court was persuaded by the TIA's statement of purpose. 623 F.2d at 297 (quoting 15 U.S.C. § 77bbb). Since *Zeffiro*, the Supreme Court has made clear that Congress's protective intent is insufficient. *See Stoneridge*, 552 U.S. at 164. The court also relied on the Supreme Court's decision in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 18-19 (1979). *See Zeffiro*, 623 F.2d at 298. But, there, the Supreme Court held that an *express* statutory provision voiding certain contracts implied a limited rescission remedy. *Transamerica*, 444 U.S. at 18-19. Here, there is no analogous, express provision. The *Zeffiro* court also ignored the Supreme Court's holding that other statutory provisions proscribing investment advisor conduct did ***not*** imply a private remedy, but regulated conduct. *Id.* at 21.[9] The *LNC* decision is less persuasive. The *LNC* defendant did not raise Defendants' argument; the court examined the issue *sua sponte* and adopted *Zeffiro*'s flawed reasoning. *See LNC Invs.*, 935 F. Supp. at 1338-39. Accordingly, there is no implied federal right or remedy. If this Court agrees, there is no TIA claim and no federal question jurisdiction in the *BlackRock* cases, which requires their dismissal.

### B. Plaintiffs' TIA Claims Are Facially Defective.

Even if a private right of action exists, Plaintiffs' TIA claims fail under the TIA's terms. *See* Decls. Ex. K. Plaintiffs' § 315(a) claim, for example, should be dismissed, because it merely permits indentures to limit trustees' pre-default duties "except for the performance of such duties as are specifically set out in [the] indenture." 15 U.S.C. § 77ooo(a)(1). It does not create any

---

[9] In *Bluebird Partners, L.P. v. First Fidelity Bank, N.A. N.J.*, 85 F.3d 970, 974 (2d Cir. 1996), the Second Circuit cited *Zeffiro* in analyzing whether federal or state assignment law applied to asserted TIA claims. The court did *not* decide whether the TIA creates a private right of action. Rather, it analyzed only the choice of law assuming the claim's existence. *Id.* at 974. Ultimately, the court's entire choice of law discussion was *dicta* as it found that the plaintiff lacked standing, which precluded an automatic assignment under any law. *See id.* at 973, 975.

new duties beyond those in the indenture, and as courts have confirmed, breach of an indenture is not an automatic TIA violation. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 431. Thus, for all the reasons Plaintiffs' pre-default contract claims fail, *see infra* § IV.B, their TIA § 315(a) claims fail.

Plaintiffs' § 315(b) and (c) claims should be dismissed because those provisions require actual knowledge of default. *See* 15 U.S.C. 77ooo(b) (applying to "notice of all defaults known to the trustee"); *id.* § 77ooo(c) (using the term default as it "is defined in such indenture"). Plaintiffs have not alleged any ***actual*** knowledge of default. *See infra* § IV.D. In addition, the indentures define EODs in terms of ***issuer*** conduct. *See* Decls. Ex. R**.** The Complaints' allegations are predicated entirely on alleged servicer, not issuer, conduct.[10] *See infra* § IV.C.1.

Finally, Plaintiffs cannot succeed under TIA § 316(b), 15 U.S.C. § 77ppp. Section 316(b) is violated only where modifications of indentures "effect an involuntary debt structuring" so as to "impair or affect" a bondholder's right to receive payment. *Marblegate Asset Mgmt. v. Educ. Mgmt. Corp.*, No. 14 Civ. 8584 (KPF), 2014 WL 7399041, at *19 (S.D.N.Y. Dec. 30, 2014); *see also* George W. Shuster, Jr., *The Trust Indenture Act and International Debt Restructurings*, 14 AM. BANKR. INST. L. REV. 431, 433-37 (2006) (section was adopted "to prevent out-of-court debt restructurings from being forced upon minority bondholders"). Plaintiffs do not, and cannot, allege that Defendants have altered the indenture's payment terms.

## IV.    PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs allege that Defendants breached the GAs by failing: (i) to provide notice to the deal parties of third-party R&W breaches; (ii) to enforce rights with respect to R&W breaches; (iii) to provide notice of servicing-related EODs; (iv) to act against servicers for those EODs, and

---

[10] Phoenix Light's allegation that an issuer EOD occurred with respect to the one indenture trust at issue in that case fails for the reasons set forth in § IV.C.1 *infra.*

(v) to act as "prudent persons" after EODs occurred.  Plaintiffs ignore the GAs' actual terms and fail to allege conduct giving rise to the breach of any the GAs.

Indeed, Plaintiffs' contract claims are a fundamentally flawed attempt to improperly "group plead" as to hundreds of unrelated transactions.  The five Complaints assert numerous different breach of contract claims with respect to 846 different Trusts, literally thousands of claims.  If Plaintiffs had filed a single complaint for each Trust, they would have been required to allege for each:  "the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Sirohi v. Trs. of Columbia Univ.*, No. 97-7912, at *2 (2d Cir. Apr. 16, 1998) (quoting *Sud v. Sud*, 621 N.Y.S.2d 37, 38 (1st Dep't 1995)).

Plaintiffs seek to escape this requirement by supersizing their claims—bundling hundreds of unrelated contracts together in a single lawsuit—and attempting to treat the GAs as uniform. But that aggregation and the differences between GAs increase, rather than lessen, Plaintiffs' burden.  Plaintiffs have heightened the likelihood that their Complaints include trusts to which no liability could ever attach due to their particular GAs' terms and the particular trustee's conduct (certain examples of which are set forth below), but makes that risk extremely difficult to ferret out in a single motion to dismiss.  As to each Trust, Plaintiffs must allege specific contractual duties and the basis for their claims of breach.  *See Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 327 (S.D.N.Y. 2011); *Ellington Credit Fund*, 837 F. Supp. 2d at 189-91.  None of the Complaints makes such Trust-specific allegations.  For good reason:  as Defendants show in the following sections, when the GAs' actual terms and Defendants' actual conduct are examined, Plaintiffs cannot prevail.  Accordingly, the Court should dismiss the contract claims.

### A.    Plaintiffs Lack Standing Under The "Negating Clauses."

At the outset, Plaintiffs' threshold assertion of standing is inconsistent with many of the

GAs' "negating clauses." *See* Decls. Ex. L.  Under New York law, "where a provision exists in an agreement expressly negating an intent to permit enforcement by third parties . . . that provision is decisive." *India.com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005); *see Wilson v. Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) (same); *IMS Eng'rs-Architects, P.C. v. State of N.Y.*, 51 A.D.3d 1355, 1358 (3d Dep't 2008) (same).

Two hundred and seventy-eight of the Trusts contain "negating clauses" that expressly prohibit suits to enforce the GAs by anyone other than:  (i) signatories to the GAs; (ii) "Certificateholders," "Bondholders," or "Noteholders"; (iii) "Swap Providers"; (iv) "Cap Providers"; (v) various insurers; (vi) Hedge Counterparties; (vii) servicers or custodians for certain trusts in which the servicer/custodian is not a party to the GA; and (viii) Owner Trustees, Derivative Administrators, and other parties not relevant here.[11]  Decls. Ex. EE.  While the GAs do not uniformly grant *all* eight entities enforcement power, none goes beyond the eight. Plaintiffs do not fall within any category.

Plaintiffs assert that they are "Certificateholders" or "Noteholders" because they are "beneficial" certificateholders or noteholders of the Trusts.  *See, e.g.*, DB-BR Compl. ¶¶ 1, 21. But as used in the negating clauses, "Certificateholder" or "Noteholder" means "[t]he Person in whose name a Certificate is registered in the Certificate Register."  Decls. Ex. EE.  Plaintiffs do not allege that they are registered "Certificateholders" in the Certificate Register with respect to any Certificates or Notes for the 278 Trusts that have negating clauses.  Plaintiffs' conclusory allegations cannot overcome the actual contractual definition.  *ACE Secs. Corp. Home Equity Loan Trust, Series 2007-HE3 v. DB Structured Prods., Inc.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y.

---

[11]  Even though Plaintiffs are not "Certificateholder," "Bondholders," or "Noteholders" under the definitions in the GAs, Plaintiffs could have caused the "Depository," which is the registered holder under the GAs, to provide the requisite notice.  See, e.g., BOAMS 2005-1 § 6.02(c)(i).

2014) ("[T]he document, not the allegations, control.").

Plaintiffs also allege that they "hold the *economic and beneficial interest* in their Certificates and are the true parties in interest." WF BR Compl. ¶ 21 (emphasis added). At most, this suggests that Plaintiffs are the Trusts' "Certificate Owners" or "Note Owners." Decls. Ex. EE (defining "Certificate Owner" as, "[w]ith respect to each Book-Entry Certificate, any beneficial owner thereof and with respect to each Physical Certificate, the Certificateholder thereof"). But "Certificate Owners" or "Note Owners" are not "Certificateholders or "Noteholders." Indeed, courts routinely distinguish between "registered" holders and beneficial owners in determining standing under indenture agreements. *See, e.g., Springwell Navigation Corp. v. Sanluis Corp., S.A.*, 849 N.Y.S.2d 34, 34-35 (1st Dep't 2007) (registered noteholder, not beneficial owner, had standing); *Cortlandt Street Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 996 N.Y.S.2d 476, 489 (Sup. Ct. N.Y. Cty. Feb. 5, 2014), *reargument denied*, 2015 WL 498875 (Sup. Ct. N.Y. Cty. Feb. 5, 2015) ("[A] beneficial holder of a note lacks standing to sue . . . where . . . the indenture reserves the right to sue to the registered holder of the note.").[12] Thus, Plaintiffs' breach of contract claims as to 278 Trusts should be dismissed. *India.com,* 412 F.3d at 321-22; Decls. Ex. L.

### B. Plaintiffs' Two R&W-Related Contract Claims Should Be Dismissed.

#### 1. Plaintiffs' contention that all GAs obligate Defendants to enforce R&W claims is disproved by the GAs' terms.

Plaintiffs allege that Defendants breached the GAs by breaching their duty to "exercise[e] all of [their] rights under the PSAs to enforce the sellers' repurchase obligations." *E.g.*, WF-BR

---

[12] *See also, e.g., Raymond James & Assocs. v. Bank of N.Y. Trust Co.*, No. 8:07-CV-238-T-27TBM, 2008 WL 4279629, at *8 (M.D. Fla. Sept. 18, 2008) (same); *Heartland Holdings, v. U.S. Trust Co. of Tex.,* 316 S.W.3d 1, 8-11 & n.6 (Tex. 2010) (same; applying *Raymond James*); *Theodore v. TD Ameritrade, Inc.*, 859 N.Y.S.2d 899 (Nassau Cty. Sup. Ct. Feb. 11, 2008) (same).

Compl. ¶ 490. This claim should be dismissed as to all Trusts identified in Decls. Exhibit N, because their GAs either do not obligate Defendants to enforce repurchase obligations at all, or only obligate them to enforce under specific circumstances not pled here. Decls. Ex. FF. The Court also should dismiss this claim as to the 87 Trusts, because their GAs impose no R&W enforcement duties on Defendants unless they receive written notice of a breach or upon satisfaction of other conditions precedent. Decls. Ex. GG. Plaintiffs have not alleged satisfaction of those preconditions. *See Argonaut P'ship L.P. v. Bankers Tr. Co.*, No. 96 CIV. 1970 (LLS), 2001 WL 585519, at *2 (S.D.N.Y. May 30, 2001).

**2.     Defendants did not "discover" any R&W breaches, which precludes the R&W notice claims and the remaining R&W enforcement claims.**

With respect to virtually all of the Trusts, Defendants' duty, if any, to give notice of, or enforce, a Warrantor's R&W breach arises only "upon discovery" of that breach. Decls. Exs. HH, II. The R&W claims as to such Trusts should also be dismissed, because the Complaints do not adequately allege discovery of any R&W breaches.

Discovery requires actual knowledge in the context of an RMBS trustee's notice duties, because *no* GA obligates Defendants to investigate whether any R&W (or other) breaches occurred. Decls. Ex. JJ. To the contrary, before an EOD, ***every single*** GA expressly exculpates Defendants from having to investigate anything—including the accuracy of R&Ws in underlying loan documents—absent direction from a set percentage of voting rights, which Plaintiffs do not allege any investor ever gave. *See, e.g.*, S. Decl. Ex. 92 §9.02(v); F. Decl. Exs. 120 § 8.02(a)(iii); 240 § 5.06(ii); Decls. Ex. JJ; *see also Ellington Credit Fund*, 837 F. Supp. 2d at 189 (trustees have no "monitoring or safeguarding duties beyond those explicitly provided in the PSA."). The common law cannot alter the parties' bargained-for exchange. Accordingly, Defendants can discover a breach only if they actually learn of it.

Plaintiffs have not alleged even **one example** of Defendants' actual discovery of a specific R&W breach that impacted a loan in any Trust at issue here. Rather, the Complaints cite only reports of generalized origination misconduct, increased default rates, credit downgrades, and R&W breaches in trusts not at issue here.

At most, these generalized allegations establish that Defendants may have been alerted to a **risk** of R&W falsity, not that they discovered any **actual R&W breaches** in the loans held by the Trusts. These allegations are insufficient. "[A] viable breach of contract claim depends on the Trustee's **actual notice** of a breach of the PSA." *Policemen's Annuity & Ben. Fund v. Bank of Am., NA*, 943 F. Supp. 2d 428, 442 (S.D.N.Y. 2013) (emphasis added), *abrogated on other grounds by PABF*, 775 F.3d 684. Mere "suspicion of falsity, before it ripens into actual knowledge, will not suffice." *FHFA v. HSBC*, 33 F. Supp. 3d 455, 481 (S.D.N.Y. 2014); *see also Rosner v. Bank of China*, No. 06-cv-13562, 2008 WL 5416380, at *4 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009) (same).

Courts frequently distinguish between a known **risk** of R&W falsity and discovery of an **actual** R&W breach impacting a particular loan in a particular trust. For example, in *FHFA v. Nomura Holding Am., Inc.*, 11-cv-6201-DLC, 2014 WL 6462239, at *22 (S.D.N.Y. Nov. 18, 2014), the court held that rising borrower defaults, originator collapses and bankruptcies, credit rating downgrades, and public reports of substandard origination practices—*i.e.*, what Plaintiffs allege here—were insufficient to establish discovery of an R&W breach. *See also U.S. Bank, Nat. Ass'n v. Citigroup Global Mkts. Realty Corp.*, No. 13 CV. 6989 (GBD), 2015 WL 1222075, at *4 (S.D.N.Y. Mar. 13, 2015) (allegations regarding DOJ settlement were insufficient to plead knowledge of breaching loans in particular trust); *U.S. Bank Nat'l Ass'n v. Citigroup Global*

*Mkts. Realty Corp.*, No. 13 Civ. 6989, 2014 WL 7714382, at *6 (S.D.N.Y. Nov. 14, 2014)

("speculative" allegations regarding discovery through loan servicing insufficient).

There is, moreover, "no **necessary** relationship between deficiencies in an [o]riginator's

underwriting practices and the falsity of . . . **particular** representations . . . about a set of

**particular** [m]ortgage [l]oans." *FHFA v. HSBC*, 2014 WL 3702587, at *24 (emphasis added);

*see also Mass. Mut. Life Ins. Co. v. Residential Funding Co.*, 843 F. Supp. 2d 191, 208 (D. Mass.

2012). Nor do rising default rates or ratings downgrades evidence R&W breaches, because they

do not "speak to **why** the investments were performing poorly and certainly did not disclose any

fraudulent behavior." *Deutsche Zentral-Genossenschaftsbank AG v. HSBC N. Am. Holdings, Inc*.,

No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *13 (S.D.N.Y. Dec. 17, 2013) (emphasis added).[13]

Plaintiffs' reliance on allegations that, if true, would prove only that Defendants were on

inquiry notice of possible R&W breaches affecting the Trusts rests on a false premise: that

Defendants, upon receiving inquiry notice, had an obligation to investigate. Again, that

assumption is wrong. Decls. Ex. JJ.[14]

---

[13] Indeed, some Plaintiffs have conceded that notice arguments based on downgrades cannot succeed because a "decline in a security's rating says nothing as to what caused the decline, especially during a market-wide downturn." *Phoenix Light SF Limited, et al v. ACE Securities Corp., et al*, Index No. 650422/2012 (Sup. Ct. N.Y. Cnty. 2012), Pltf's Mem. of Law in Opp'n to Defs' MTD [Dkt. No. 72], at 9. Those Plaintiffs have similarly admitted that generalized public information, such as the filing of other complaints, news stories, and government investigations, are insufficient to establish inquiry notice. *Id.* at 7-10.

[14] Many Plaintiffs have acknowledged this in other court filings. *See, e.g.,* Institutional Investors' Statement in Support of Settlement and Consolidated Response to Settlement Objections at 14, *Bank of N.Y. Mellon v. Walnut Place, LLC*, No. 11-cv-05988 (S.D.N.Y. Oct. 31, 2011), ECF No. 124 ("The Trustee does not have, and will never have, an obligation to investigate facts to determine whether an Event of Default has occurred unless 25% of the Certificateholders instruct it to do so.").

**C.    Plaintiffs' EOD-Related Claims Fail Due To The Lack Of Any Alleged EOD.**

Plaintiffs' claims based on alleged breaches of post-EOD duties should be dismissed because Plaintiffs have not pled any EODs *as defined by the GAs*.  For 539 Trusts, an EOD occurs *only if*:  (i) a specified party (*i.e.*, Issuer, Servicer or Master Servicer, depending on the type of, and parties to, the relevant GA) materially breaches its obligations; (ii) that party is notified of the breach by a specified entity (*e.g.*, Trustee, Securities Administrator, Depositor, or Certificateholders with a specified percentage of the Voting Rights); *and* (iii) the breach is not cured within a specified period.  Compl. ¶ 271; Decls. Ex. KK.  Plaintiffs do not allege these events and thus fail to plead EODs.  Further, with respect to seven PSA Trusts, the GAs do not impose prudent person duties on Defendants following EODs; so even if Plaintiffs had pled an EOD, Defendants could not have breached any post-EOD prudent person duty.  F. Decl. Ex. RR.

**1.    Plaintiffs have not pled EODs for the Indenture Trusts.**

As Plaintiffs admit, with Indenture Trusts, "only the conduct of the issuer, the Trust, can constitute an Event of Default."  (DB-BR Complaint ¶ 293.)  Yet, with the exception of allegations relating to one Indenture Trust identified in the *Phoenix Light* Complaint (PL Compl. ¶¶ 301-305),[15] Plaintiffs do not allege any breach of an Issuer's obligations under an Indenture Trust GA.  Thus, as to all Indenture Trusts, Plaintiffs' claims based on alleged breaches of post-EOD duties should be dismissed.  Decls. Ex. R.

---

[15] The *Phoenix Light* Plaintiffs attempt to address this fatal defect by claiming that the Issuers had an obligation to preserve collateral and police Servicers.  *See* PL Compl. ¶¶ 321-325.  However, Phoenix Light's reading of the Issuers' obligation is tortured, and its conclusory allegations fail to raise any plausible inference that any Issuer EOD occurred.  *Id.*  None has been properly declared.  More fundamentally, the *Phoenix Light* Plaintiffs, as well as the *NCUA* and *Royal Park* Plaintiffs lack standing as investors.  This will be the subject of future briefing.

## 2. **Plaintiffs fail to plead Master Servicer breaches for 198 Trusts.**

Plaintiffs' claims based on alleged breaches of post-EOD Servicer duties should be dismissed as to 198 Trusts. Under those Trusts' GAs, only Master Servicer breaches can lead to an EOD. Decls. Ex. S. Servicers and Master Servicers are not interchangeable: where applicable, Master Servicers duties are to "monitor the performance of each Servicer," while the Servicers are responsible for actually servicing the mortgage loans. *See, e.g.*, F. Decl. Ex. 191 § 10.01. None of the *BlackRock* Complaints alleges that a Master Servicer failed to properly oversee a Servicer or otherwise breached its obligations under a GA that would lead to an EOD under the terms of that GA.

## 3. **Plaintiffs fail to plead *Servicer* breaches.**

For the PSA Trusts identified in Decls. Exhibit T, an EOD occurs only after, among other things, a Servicer or Master Servicer materially breaches its obligations under the applicable GA. Yet, ***not one*** of the 2,287 paragraphs in Plaintiffs' five Complaints identifies a single alleged servicing failure that impacted any specific loan at issue. Plaintiffs fail to allege ***any*** Servicer conduct whatsoever for 78 Trusts. Decls. Ex. U. For example, Carrington Mortgage Services ("Carrington") serviced fourteen Trusts with alleged servicing-related EODs, but Plaintiffs make no Carrington-specific allegations and allege no specific breach, much less a material breach.

The Complaints contain certain allegations (albeit vague and generalized) regarding purported Servicer conduct, but they do not tie that conduct to any Trust or any breach of a GA provision. *See, e.g.*, DB-BR Compl. ¶¶ 442-48, 454. The Complaints' allegations about investigations and lawsuits relating to certain Servicers, *see, e.g., id.* ¶¶ 455-83, are legally insufficient to support an inference that a Servicer materially breached a GA for the Trusts at issue here. *See PABF*, 775 F.3d at 162.

### 4. **Plaintiffs fail to allege satisfaction of the notice and cure requirements for EODs under either PSA or Indenture Trusts.**

Plaintiffs' claims for breach of post-EOD duties also fail as to 539 for DB Trusts, because the Complaints do not allege that a Master Servicer or Servicer (in the case of PSAs) or an Issuer received written notice of a material breach that it failed to timely cure. Decls. Ex. V. Here, Plaintiffs admit that the requisite notices were never sent. *See* DB-BR Compl. ¶ 535. And while Plaintiffs make conclusory allegations that Servicer defaults were not timely cured, the cure period could not have started until written notice was given. *See id*. ¶ 533.

Citing the same defect, numerous courts have dismissed similar claims for breach of post-EOD duties. For example, in *Millennium Partners, L.P. v. U.S. Bank National Association*, the court dismissed claims relating to an EOD provision similar to those here, holding that plaintiffs failed to "plead that the requisite written notice was given to trigger an Event of Default." No. 12 Civ. 7581(HB), 2013 WL 1655990, at *4 (S.D.N.Y. Apr. 17, 2013); *see also Dresner Co. Profit Sharing Plan v. First Fidelity Nat'l Bank, N.A.*, No. 95 Civ. 1924(MBM), 1996 WL 694345, at *4-5 (S.D.N.Y. Dec. 4, 1996) (dismissing post-EOD duty claim for failure to plead EOD); *Peak Partners*, 191 F. App'x at 123-24 (same); *Magten Asset Mgmt. Corp. v. Bank of N.Y.*, 841 N.Y.S.2d 219 (Sup. Ct. 2007) (dismissing all claims because no EOD occurred). Courts regularly enforce written notice and cure requirements because they provide an objective, definitive answer for how and when an EOD occurs and when post-EOD remedies may be invoked, creating certainty. *Argonaut P'ship*, 2001 WL 585519, at *2.

Plaintiffs cannot claim frustration or impossibility as to the notice and cure requirements by alleging that Defendants prevented the EODs from occurring by failing to give notice of breaches that might have ripened into EODs. For the Trusts identified in Decls. Exhibit MM, Defendants had a right, but no duty, to provide such notice. *See Semi-Tech Litig., LLC v.*

*Bankers Trust Co.*, 450 F.3d 121, 128 (2d Cir. 2006) (discussing condition precedents and frustration). Moreover, for the Trusts listed in Decls. Exhibit OO, Defendants did not have a duty to give notice of underlying material breaches of the GAs that could have ripened into EODs unless they had "actual knowledge" of them. Decls. Ex. OO. As is set forth in the following section, Plaintiffs have not pled such "actual knowledge" and, therefore, cannot claim that Defendants improperly failed to give notice of underlying material breaches.

### D.     Plaintiffs Fail To Plead Defendants' Actual Knowledge Of EODs.

Defendants' ***post***-EOD duties do not arise unless they have "knowledge" of an EOD. Decls. Ex. NN. The GAs define "knowledge" of EODs in two ways: (i) actual knowledge of an EOD by a Responsible Officer of the Defendant; or (ii) the Responsible Officer's receipt of written notice of the EOD, sometimes at a specific address. Decls. Ex. NN. Plaintiffs fail to allege that Defendants had either of these requisite kinds of knowledge with respect to any Trust.

Plaintiffs merely assert that Defendants should have known of Servicer breaches from news reports and other publicly available information. *See, e.g.*, Wells-BR Compl. ¶¶436-474. That assertion is insufficient for several reasons. First, even under the GAs that tie an EOD to a Servicer breach, knowledge of a Servicer breach is not knowledge of an EOD. Again, the latter occurs only if the breaching Servicer receives notice of a material breach and fails to cure it within the cure period. Plaintiffs' theory that Defendants had a duty to give notice of a Servicer breach but failed to do so would be, at best, a breach of a pre-EOD duty, not an EOD. *See supra* § IV.C.4. Second, none of the generally reported servicer misconduct relates to the specific loans or Trusts at issue here. *See supra* § IV.C.3. Numerous courts have rejected attempts by plaintiffs to rely on news and other publicly-available reports as evidence of actual knowledge. *See Arrowgrass Master Fund Ltd. v. BNY Mellon*, No. 651497/2010, 2012 WL 8700416, at *9-10 (Sup. Ct. N.Y. Cty. Feb. 24, 2012); *see also FHFA v. UBS, Ams. Inc.*, No. 11-cv-5201, 2013

WL 3284118, at *15 (S.D.N.Y. June 28, 2013) (no authority for proposition that evidence of generalized knowledge necessarily qualifies as circumstantial evidence of particularized, actual knowledge); *cf. Gravatt v. City of New York*, 226 F.3d 108, 127 n.17 (2d Cir. 2000).

For example, in *Arrowgrass*, the court dismissed a breach of fiduciary duty claim, finding the plaintiff had not alleged the trustee's "knowledge" of EODs, which the GA defined as actual knowledge or written notice. *See* 2012 WL 8700416, at *9. The court called plaintiffs' reliance on news reports a "blatant[] attempt[] to excise … the 'actual knowledge' requirement and replace it with 'notice' as that term is defined in context outside of a trust indenture," and rejected that attempt. *Id.* at *23. To the extent Plaintiffs allege that general press reports triggered some investigatory duty, the argument is wrong for reasons previously discussed. *See, supra,* § IV.B.2. Defendants have no duty to investigate absent direction and indemnity from investors. Decls. Ex. CC.

For the Trusts listed in Exhibit PP that require the Responsible Officer's receipt of written notice, Plaintiffs have not pled such receipt. Thus, Defendants' post-EOD duties were never triggered. *See UBS Capital Americas II, LLC v. Highpoint Telecommunications Inc.*, No. 01-CV-8133, 2002 WL 377537, at *4 (S.D.N.Y. Mar. 8, 2002); *Putman High Yield Trust v. Bank of N.Y.*, 776 N.Y.S.2d 796 (1st Dep't 2004).

E.    **Plaintiffs' Contract Claims Are Barred By No-Action Clauses.**

Plaintiffs' breach of contract claims are separately barred by the relevant GAs' "no-action clauses," Decls. Ex. QQ, which establish prerequisites for suits by Certificateholders. Among other things, the Certificateholder must: (i) prove the support of 25% of the Trust's Voting Rights; (ii) provide RMBS trustees with written notice of an EOD; and (iii) make a written request to the RMBS trustee to institute such a suit, indemnify the Trustee, and allow the Trustee time to act. Decls. Ex. QQ. Plaintiffs do not allege these facts, and their claims are thus barred.

The first two requirements are essential to avoid a multiplicity of lawsuits, and to achieve the clauses' "major purpose" of discouraging "unworthy" or "unjustifiable" suits that cannot garner support of 25% of Trusts' voting rights, "causing expense to the [Trust] and diminishing its assets." Lawsuits American Bar Foundation, *Commentaries on Model Debenture Indenture Provisions*, § 5-7, at 232 (1971); *Murray v. U.S. Bank Trust Nat'l Ass'n, N.A.*, 365 F.3d 1284, 1289 n. 9 (11th Cir. 2004). Defendants are currently defending numerous lawsuits involving the same theories and alleged losses for many of the Trusts at issue here. Accordingly, this suit gives rise to the very multiplicity the clauses seek to avoid.

Plaintiffs' claims are an attempt to seek redress for perceived misconduct by Warrantors and Servicers that Plaintiffs themselves cannot bring for standing or other reasons. *Ellington Credit Fund*, 837 F. Supp. 2d at 186 (no-action clause bars claims against third parties even where investor alleges the trustee was involved in the purported wrongdoing). Investors should not be permitted to use a lawsuit against a trustee as a means of achieving indirectly what they could not directly: a suit by a minority investor (expending trust assets) that could result in Warrantors or Servicers being joined as third-parties because of the trustee's PSA indemnification rights. In *Cruden*, the court addressed the propriety of using a suit against an indenture trustee as a vehicle to join the equivalent of a Depositor as a third-party defendant. *Cruden v. Bank of N.Y.*, 957 F.2d 961, 969 (2d Cir. 1992). The court held that allowing that result would be "unwise" and would "circumvent" the No-Action clause, "upsetting settled indenture law and the expectations of countless parties." *Id.* The Complaints are thus an end-run around this clear contractual prohibition. The requirements of written notice of an "Event of Default" and consensus among at least 25% Certificateholders should be applied to this action.

Courts holding No-Action clauses inapplicable in cases against trustees have reasoned that the clauses should not be read to require trustees to make pre-suit demands on themselves. *See Cruden*, 957 F.2d at 968. Defendants are not seeking enforcement of the pre-suit demand requirement, but that does not excuse Plaintiffs from satisfying the other two requirements. In this context, if the pre-suit demand requirement does not make sense, it should be deemed severed, which "shall in no way affect the validity or enforceability of the other provisions of this Agreement . . . ." F. Decl. Exs. 120 § 11.06, 240 § 10.09.

## V.      PLAINTIFFS' STREIT ACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Streit Act claims should be dismissed in their entirety for three reasons. *See* S. Decl. Ex. SS. *First*, the Streit Act "does not apply to collateral trusts," but applies only to "direct[]" investment in real estate mortgages. *See Prudence Realization Corp. v. Atwell*, 35 N.Y.S.2d 1001, 1005 (1st Dep't 1942), aff'd 290 N.Y. 597 (1943) (per curiam). The RMBS issued by the Trusts are not "mortgage investments," which the Streit Act defines as indebtedness "secured by a mortgage or mortgages upon real property, or by a deed or deeds of trust, trust indenture or indentures or other evidence of [an] interest in real property." N.Y. Real Property Law § 125(1). Investors hold no interest in real property; they are entitled only to receive trust income, *i.e.*, principal and interest payments on mortgages. *See BlackRock Fin. Mgmt. Inc.*, 673 F.3d at 173.

*Second*, Plaintiffs' claims are predicated on non-Streit Act duties. Defendants allegedly violated Streit Act §§ 124 and 126. *See* PL Compl. ¶¶ 424, 427; NCUA Compl. ¶¶ 470, 473; RP Compl. ¶¶ 194; 198. Section 124, however, is devoid of any language imposing affirmative duties on trustees. Thus, Plaintiffs cite no § 124 language that Defendants' purportedly violated, and Defendants are aware of no case holding that § 124 imposes trustee duties. Similarly, § 126

-32-

requires only that trust agreements "shall contain" certain provisions. *See* N.Y. Real Prop. Law § 126. Plaintiffs do not, and cannot, allege that those provisions are absent.

*Third*, the Streit Act does not give rise to a private right of action. The Streit Act is similar in form and function to the TIA. Like the TIA, the Streit Act contains no statutory language authorizing a private right of action, and none is implied by its text. In New York, "a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen . . . or with some other aspect of the over-all statutory scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 543 N.Y.2d 629, 634–35 (1989). Thus, implying a private remedy is contrary to New York law and the Streit Act's plain language. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

## VI.   PLAINTIFFS' TORT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' tort claims should be dismissed in their entirety on myriad grounds. All arise out of Defendants' asserted contractual obligations under the GAs, rendering the tort and contract claims impermissibly duplicative. Decls. Ex. Y; *see Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389 (1987); *see also Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (no good faith and fair dealing claim when breach of contract claim is based on same facts). Plaintiffs cannot use tort law to impose extra-contractual duties on Defendants. *See Clark-Fitzpatrick*, 70 N.Y.2d 382, 388 (1987). In all events, Plaintiffs damages are barred by New York's economic loss rule, which precludes recovery of economic losses in tort to "keep contract law from drown[ing] in a sea of tort." Decls. Ex. Z; *Manhattan Motorcars, Inc. v. Automobil Lamborghini, S.p.A.*, 244 F.R.D. 204, 220 (S.D.N.Y. 2007); *Cnty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62-63 (2d Cir. 1984).

With respect to their conflict of interest and breach of trust claims, Plaintiffs fail to allege that Defendants personally benefitted at the investors' expense. *See Ellington Credit Fund*, 837

F. Supp. 2d at 193. Plaintiffs, instead, challenge the trust fee arrangements, but "the fact that Defendants received fees for their services as indenture trustees does not yield a plausible inference of a conflict of interest." *Abbate v. Wells Fargo Bank, N.A.*, No. CV 10-6561 DOC (RNBx), 2011 U.S. Dist. LEXIS 148206, at *11 (C.D. Cal. Apr. 25, 2011). Defendants' relationships in the financial sector are also insufficient. *See Page Mill Asset v. Credit Suisse First Boston Corp.*, 98CIV. 6907 MBM, 2000 WL 335557, at *10 (S.D.N.Y. June 30, 2000).

In addition, for at least 112 Trusts, Wells Fargo has filed Petitions for Instructions in the Administration of a Trust, pursuant to Minn. Stat. § 501B.16. *See* S. Decl. RR. Those Petitions seek confirmation of Law Debenture Trust Company of New York's ("Law Deb's") appointment as separate trustee to evaluate and potentially institute "put-back" suits against loan sellers and originators. *See* WF-BR Compl. ¶ 516. So while the *BlackRock* Plaintiffs chastise Wells Fargo for having initiated only "**_one_**** action . . . to protect a financial crisis-era RMBS trust," *see* WF-BR Compl. ¶ 12 (emphasis in original), Wells Fargo is diligently and consistently seeking separate trustee appointments for such suits to avoid any perceived conflicts of interest. *See* PL Compl. ¶ 164 (discussing put-back suit instituted by Law Deb following its appointment).

Similarly, the *BlackRock* Plaintiffs wrongly allege that the DB Defendants were "economically beholden to the sponsors" and, as a result, refused to take action against IndyMac, Long Beach/WaMu, and GMAC because it "did not want to risk losing significant business from these sponsors." DB-BR Compl. ¶ 511. However, the Court may take judicial notice of the fact that the DB Defendants sued to enforce R&W claims and servicing claims with respect to certain IndyMac, Long Beach, and WaMu trusts and has been actively litigating those cases for years. *See* Complaint, *Deutsche Bank Nat'l Trust Co. v. FDIC*, No. 1:09-cv-01656-RMC (D.C. Aug. 26, 2009), ECF No. 1; Complaint, *Deutsche Bank Nat'l Trust Co. v. FDIC*, No. CV09-3852 (C.D.

Cal. May 29, 2009), ECF No. 1.  As for GMAC, the DB Defendants also recovered for alleged

R&W and servicing breaches in connection with the bankruptcy of GMAC affiliates that

sponsored the affected Trusts' securitizations.[16]  *See* Order Confirming Plan, *In re Residential*

*Capital, LLC*, No. 12-12020-MG (S.D.N.Y. Dec. 11, 2013), ECF No. 6065-1.  These

indisputable facts not only refute any allegation that the DB Defendants were paralyzed by a so-

called conflict of interest, but renders the theory that the DB Defendants failed to act based on an

allegiance to sponsors patently false.

Finally, Plaintiffs' negligent misrepresentation claims are not pled with particularity.

There is no identification of the allegedly false or fraudulent statements or reason for their falsity.

*See BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d at 508.  And where, as here, a trustee

relationship is defined by a contract that disclaims any special relationship, a negligent

misrepresentation claim cannot lie.  *Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,

478 F. App'x 679, 682 (2d Cir. 2012).  Accordingly, Plaintiffs cannot assert a valid tort claim.

## CONCLUSION

For all of the foregoing reasons, Defendants' Joint Motion to Dismiss should be granted

in its entirety with prejudice.

Dated:  April 30, 2015

MORGAN, LEWIS & BOCKIUS LLP                    JONES DAY

By: */s/ Elizabeth A. Frohlich*                       By: */s/ Howard F. Sidman*

William P. Quinn, Jr., Esq.                            Jayant W. Tambe, Esq.
  (admitted pro hac vice)                            Howard F. Sidman, Esq.
MORGAN, LEWIS & BOCKIUS LLP                    Jason Jurgens, Esq.
1701 Market St.                                       JONES DAY
Philadelphia, PA 19103-2921                          222 East 41st Street

---

[16] Similarly, Wells Fargo filed proofs of claim in the Lehman, New Century and Residential
Capital LLC bankruptcies with respect to 45 trusts.

Tel:    (215) 963-5000
Fax:    (215) 963-5001
wquinn@morganlewis.com

Elizabeth A. Frohlich, Esq.
 *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    (415) 442.1000
Fax:    (415) 442.1001
efrohlich@morganlewis.com

Bernard J. Garbutt III, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Tel:    (212) 309-6000
Fax:    (212) 309-6001
bgarbutt@morganlewis.com

Attorneys for Defendants
Deutsche Bank National Trust Company and
Deutsche Bank Trust Company Americas

New York, NY 10017
Tel:    (212) 326-3939
Fax:    (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
jjurgens@jonesday.com

Traci L. Lovitt, Esq.
JONES DAY
100 High Street, 21st Floor
Boston, MA 02110
Tel:    (617) 449-6900
Fax:    (617) 449-6999
tlovitt@jonesday.com

Attorneys for Defendant
Wells Fargo Bank, N.A.