**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLACKROCK BALANCED CAPITAL PORTFOLIO (FI), et al., | Case No. 14-cv-09367-RMB |
| Plaintiffs, | |
| -against- | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY; and DEUTSCHE BANK TRUST COMPANY AMERICAS, | |
| Defendants, | |
| -and- | |
| the Trusts Identified in Exhibit 1, | |
| Nominal Defendants. | |
| BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al., | Case No. 14-cv-09371-RMB |
| Plaintiffs, | |
| -against- | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | |
| Defendant, | |
| -and- | |
| the Trusts Identified in Exhibit 1, | |
| Nominal Defendants. | |
| ROYAL PARK INVESTMENTS SA/NV, Individually and on Behalf of All Others Similarly Situated, | Case No. 14-cv-09764-RMB-SN |
| Plaintiffs, | |
| -against- | |
| WELLS FARGO BANK, N.A., as Trustee | |
| Defendant. | |

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union, in its own right, and on behalf of NCUA GUARANTEED NOTES TRUST 2010-R1, NCUA GUARANTEED NOTES TRUST 2010-R2, NCUA GUARANTEED NOTES TRUST 2010-R3, NCUA GUARANTEED NOTES TRUST 2011-R1, NCUA GUARANTEED NOTES TRUST 2011-R2, NCUA GUARANTEED NOTES TRUST 2011-R3, NCUA GUARANTEED NOTES TRUST 2011-R4, NCUA GUARANTEED NOTES TRUST 2011-R5, NCUA GUARANTEED NOTES TRUST 2011-R6, NCUA GUARANTEED NOTES TRUST 2011-M1, | Case No. 14-cv-10067-RMB |
| Plaintiffs, | |
| -against- | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | |
| Defendant. | |
| PHOENIX LIGHT SF LIMITED, in its own right and the right of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., C-BASS CBO XIV LTD., C-BASS CBO XVII LTD., KLEROS PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED; and each of BLUE HERON FUNDING II LTD., BLUE HERON FUNDING V LTD., BLUE HERON FUNDING VI LTD., BLUE HERON FUNDING VII LTD., BLUE HERON FUNDING IX LTD., KLEROS | Case No. 14-cv-10102-RMB |

| PREFERRED FUNDING V PLC, SILVER ELMS CDO PLC and SILVER ELMS CDO II LIMITED, in their own right, |
| --- |
| Plaintiffs, |
| -against- |
| WELLS FARGO BANK, N.A., |
| Defendant. |

**PLAINTIFFS' JOINT MEMORANDUM OF LAW
<u>IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY OF DEFINED TERMS ..............................................................

I.     INTRODUCTION ........................................................................... 1

II.    THE COURT HAS JURISIDCTION OVER ALL OF THE BP TRUSTS ...................... 2

       A.     The Court Has Supplemental Jurisdiction Over The PSA Claims ........................ 2

       B.     There Is No Reason To Decline Supplemental Jurisdiction ................................. 6

III.   BP AND RP PROPERLY PLEAD DERIVATIVE CLAIMS ......................................... 7

       A.     BP And RP Have Derivative Standing ............................................................. 7

       B.     BP's And RP's Claims Satisfy The *Tooley* Test .............................................. 10

       C.     BP And RP Satisfy The Contemporaneous Ownership
              Requirement ............................................................................................ 12

IV.    THE COMPLAINTS STATE CLAIMS FOR BREACH OF CONTRACT ..................... 13

       A.     Contractual Standing Is Adequately Alleged ................................................. 13

       B.     Loans In The Trusts Breached Seller R&Ws ................................................... 17

              1.     The Governing Agreements Require Defendants To
                     Enforce Repurchase Obligations ......................................................... 18

              2.     Plaintiffs Have Alleged That Defendants' Knew Of R&W
                     Breaches ......................................................................................... 19

       C.     Defendants Breached Their Post-Default Obligations ...................................... 21

              1.     Plaintiffs Allege Master Servicer Events Of Default .............................. 22

       D.     Plaintiffs Allege Plausible And Sufficient Facts To Infer The
              Trustees' Knowledge Of Events Of Default .................................................... 25

       E.     The No-Action Clauses Do Not Bar Plaintiffs' Breach Of Contract
              Claims ..................................................................................................... 26

V.     PLAINTIFFS ADEQUATELY ALLEGE TIA VIOLATIONS .................................... 27

       A.     The TIA Creates An Implied Private Right Of Action ....................................... 27

       B.     Plaintiffs Properly Allege Defendants Violated TIA Section 315(b) ..................... 29

      C.      Plaintiffs Properly Allege Defendants Violated TIA Section 315(c) ................... 29

VI.     PLAINTIFFS ALLEGE STREIT ACT VIOLATIONS .................................................... 30

VII.    PLAINTIFFS ADEQUATELY ALLEGE TORT CLAIMS ........................................... 33

VIII.   CONCLUSION ............................................................................................................. 35

## TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Abrams v. Donati*,
   66 N.Y.2d 951 (1985) ...................................................................................................10

*AG Capital Funding Partner, L.P. v. State St. Bank & Trust Co.*,
   11 N.Y.3d 146 (2008) .................................................................................................33

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)...................................................................................................28

*Ambac Assur. Corp. v. EMC Mortg. LLC*,
   995 N.Y.S.2d 545 (1st Dep't 2014) ...........................................................................17

*Anwar v. Fairfield Greenwich, Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) ......................................................................16

*Applestein v. The Province of Buenos Aires*,
   415 F.3d 242 (2d Cir. 2005).......................................................................................16

*Arrowgrass Master Fund Ltd. v. The Bank of N.Y. Mellon*,
   2012 WL 8700416 (N.Y. Sup. Ct. Feb. 24, 2012)..............................................20, 21

*Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*,
   No. 10 Civ. 6322 RJH (S.D.N.Y.) .............................................................................17

*In re Bank of N.Y. Derivative Litig.*,
   320 F.3d 291 (2d Cir. 2003).......................................................................................12

*Bank of N.Y. v. Tyco Int'l Grp., S.A.*,
   545 F. Supp. 2d 312 (S.D.N.Y. 2008)........................................................................23

*Bankers Ins. Co. v. Countrywide Fin. Corp.*,
   2012 WL 2594341 (M.D. Fla. July 5, 2012) ..............................................................8

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*,
   2010 WL 4867533 (M.D. Fla. Oct. 8, 2010) .............................................................7

*Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*,
   2011 WL 2470226 (M.D. Fla. Mar. 17, 2011) ....................................................8, 27

*In re Bankers Trust Co.*,
   450 F.3d 121 (2d Cir. 2006).................................................................................23, 24

*Beck v. Mfrs. Hanover Trust Co.*,
   218 A.D.2d 1 (1st Dep't 1995) ..................................................................................32

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
  97 N.Y.2d 456 (N.Y. App. 2002) .................................................12, 14, 28

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  778 F. Supp. 2d 375 (S.D.N.Y. 2011)................................24, 25, 26, 33

*Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*,
  2010 WL 3283541 (D.N.J. Aug. 18, 2010) ..........................................4

*Burns v. Del. Charter Guarantee & Trust Co.*,
  805 F. Supp. 2d 12 (S.D.N.Y. 2011)....................................................34

*Campbell v. Hudson & Manhattan R.R. Co.*,
  277 A.D. 731 (1st Dep't 1951) .............................................................9

*Caplin v. The Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972)...........................................................................27

*Caprer v. Nussbaum*,
  825 N.Y.S.2d 55 (2d Dep't 2006).........................................................8

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  70 N.Y.2d 382 (1987) .........................................................................33

*In re Colonial Trust Co.*,
  67 N.Y.S.2d 534 (N.Y. Sup. Ct. 1946) ...............................................32

*In re Color Tile Inc.*,
  475 F.3d 508 (3d Cir. 2007).................................................................14

*Commerce Bank v. U.S. Bank Nat'l Ass'n*,
  2013 WL 8338105 (W.D. Mo. Nov. 18, 2013)....................................34

*Cortlandt Street Recovery Corp. v. Hellas Tellcommunications S.a.r.l.*,
  2014 WL 4650231 (N.Y. Sup. Ct. Sept. 16, 2014)..............................15

*Cruden v. The Bank of N.Y.*,
  957 F.2d 961 (2d Cir. 1992)...........................................................26, 27

*Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust*,
  1996 WL 601705 (S.D.N.Y. Oct. 19, 1996) ...........................7, 8, 9, 10

*Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*,
  918 N.Y.S.2d 73 (1st Dep't 2011) .......................................................15

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011)............................................26, 33

*Elliott Associates v. J. Henry Schroder Bank & Trust Co.*,
838 F.2d 66 (2d Cir. 1988)....................................................................................35

*In Re Equity Funding Corp. of Am. Sec. Litig.*,
416 F. Supp. 161 (C.D. Cal. 1976), *aff'd*, 603 F.2d 1353 (9th Cir. 1979)..............27

*Excimer Assocs., Inc. v. LCA Vision, Inc.*,
292 F.3d 134 (2d Cir. 2002)...................................................................................7

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005)................................................................................................2

*Fed. Hous. Fin. Agency v. WMC Mortg., LLC*,
2013 WL 5996530 (S.D.N.Y. June 12, 2013) .......................................................10

*Feldman v. Cutaia*,
951 A.2d 727 (Del. 2008) ......................................................................................11

*Fontana v. The Republic of Argentina*,
415 F.3d 238 (2d Cir. 2005)...................................................................................16

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
66 N.Y.2d 38 (1985) ..............................................................................................15

*Gentile v. Rossette*,
906 A.2d 91 (Del. 2006) ..........................................................................................8

*Gordillo v. The Bank of N.Y. Mellon Corp.*,
2014 WL 3507300 (S.D.N.Y. July 14, 2014) .........................................................5

*Gould v. J. Henry Schroder Bank & Trust Co.*,
78 A.D.2d 870 (2d Dep't 1980) ..............................................................................9

*Groseclose v. The Merchs. Nat'l Bank & Trust Co. of Syracuse*,
71 Misc.2d 111, 355 N.Y.S.2d 652 (N.Y. Sup. Ct. 1972) .....................................32

*Gulf Ins. Co. v. Transatlantic Reinsurance Co.*,
886 N.Y.S.2d 133 (1st Dep't 2009) .......................................................................14

*Harper v. Larchmont Yacht Club*,
38 N.Y.S.2d 505 (N.Y. Sup. Ct. 1942) ..................................................................32

*Harvey v. McDonnell*,
113 N.Y. 526 (1889) ................................................................................................9

*Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012) .......................................................10

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ........................................................23

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
 227 F.3d 8 (2d Cir. 2000) ...............................................................................33, 34

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
 759 F. Supp. 2d 363 (S.D.N.Y. 2010) (Preska, J.)...............................................15

*Int'l Ry. Co. v. Rann*,
 120 N.E. 153 (1918)................................................................................................15

*Jones v. Ford Motor Credit Co.*,
 358 F.3d 205 (2d Cir. 2004)......................................................................................4

*LNC Invs., Inc. v. First Fid. Bank, N.A., N.J.*,
 173 F.3d 454 (2d Cir. 1999).........................................................................8, 28, 30

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*,
 935 F. Supp. 1333 (S.D.N.Y. 1996)..................................................................27, 28

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992)................................................................................................15

*MASTR Asset Backed Sec. Trust 2006–HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC
  Mortg. Corp.*,
 2012 WL 4511065 (D. Minn. Oct. 1, 2012) ..........................................................21

*Mastrobuono* v. *Shearson Lehman Hutton, Inc.*,
 514 U.S. 52 (1995)..................................................................................................14

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
 510 F. Supp. 2d 299 (S.D.N.Y. 2007)........................................................................4

*In re MF Global Holdings Ltd. Inv. Litig.*,
 998 F. Supp. 2d 157 (S.D.N.Y. 2014)......................................................................34

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013)..........................................................24

*Montefiore Med. Ctr. v. Teamsters Local 272*,
 642 F.3d 321 (2d Cir. 2011)...................................................................................4, 5

*Morris v. Cantor*,
 390 F. Supp. 817 (S.D.N.Y. 1975)......................................................................27, 29

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
 693 F.3d 145 (2d Cir. 2012)....................................................................................35

*Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n,*
 986 F. Supp. 2d 412 (S.D.N.Y. 2013) ................................................................9, 12

*Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n,*
 291 F.R.D. 47 (S.D.N.Y. 2013) ............................................................... passim

*Peak Partners, L.P. v. Republic Bank,*
 191 Fed. App'x 118 (3d Cir. 2006).................................................................26, 27

*Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of Am., N.A.,*
 943 F. Supp. 2d at 442 ..................................................................................19, 20, 29

*Polymeric Res. Corp. v. Estate of Dumouchelle,*
 2014 WL 2815681 (E.D. Mich. June 23, 2014).........................................................5

*Prudence Realization Corp. v. Atwell,*
 35 N.Y.S.2d 1001 (1st Dep't 1942) ....................................................................31

*Puricelli v. CNA Ins. Co.,*
 185 F.R.D. 139 (N.D.N.Y. 1999)...........................................................................6

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. The
 Bank of N.Y. Mellon ("BNY I"),*
 914 F. Supp. 2d 422 (S.D.N.Y. 2012)..................................................1, 5, 11, 25

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. The
 Bank of N.Y. Mellon ("Policeman's BNY Appeal"),*
 775 F.3d 154 (2d Cir. 2014).........................................................................5, 30, 31

*Riviera Cong. Assocs. v. Yassky,*
 18 N.Y.2d 540 (1966) ................................................................................................8

*SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.,*
 934 F. Supp. 2d 516 (E.D.N.Y. 2013) *aff'd* 598 Fed. App'x 741 (2d Cir. 2014)
 ................................................................................................................9, 10, 11, 12

*Seaver v. Ransom,*
 224 N.Y. 233 (1918) ...............................................................................................15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.,*
 659 F.3d 234 (2d Cir. 2011)...............................................................................3, 4, 5, 6

*Smith v. Cont'l Bank and Trust Co.,*
 292 N.Y. 275 (1944) .................................................................................................8

*Spanos v. Skouras Theatres Corp.,*
 364 F.2d 161 (2d Cir. 1966)...................................................................................24

*Springwell Navigation Corp. v. Sanluis Corporación, S.A.*,
    46 A.D. 3d 377 (1st Dep't 2007) ...................................................................15

*Springwell Navigation Corp. v. Sanluis Corporación, S.A.*,
    849 N.Y.S.2d 34 (1st Dep't 2007) ................................................................16

*Springwell Navigation Corp. v. Sanluis Corporación, S.A.*,
    917 N.Y.S.2d 560, 561 (1st Dep't 2011) ......................................................16

*Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*,
    2012 WL 2368821 (N.D. Ill. June 21, 2012) .................................................8

*Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*,
    2010 WL 3324705 (N.D. Ill. Aug. 20, 2010) ....................................7, 8, 26

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir. 1992) ...........................................................................35

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008) .....................................................................................28

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) ..............................................................10, 11, 12

*Tricontinental Indus. Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ........................................................................35

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) .......................................................................................6

*Velez v. Feinstein*,
    87 A.D.2d 309 (1982) (New York trust).......................................................8, 9

*VNB Realty, Inc. v. U.S. Bank, N.A.*,
    2014 WL 1628441 (D.N.J. Apr. 23, 2014) ...............................................29, 34

*Webster's Red Seal Publs. v. Gilberton World-Wide Publs.*,
    415 N.Y.S.2d 229 (1st Dep't 1979), *aff'd*, 53 N.Y.2d 643 (1981) .........14

*Yudell v. Gilbert*,
    949 N.Y.S.2d 380 (1st Dep't 2012) .......................................................8, 10, 11

*Zeffiro v. First Pa. Banking & Trust Co.*,
    623 F.2d 290 (3d Cir. 1980).............................................................27, 28, 29

STATUTES, RULES & REGULATIONS

15 U.S.C.
    § 77ooo(a)(1) ..................................................................................................9

§ 77ooo(a)(2) ............................................................................9

§ 77ooo(b) ...............................................................21, 27, 29

§ 77ooo(c) .......................................................................27, 30

28 U.S.C.

§ 1331 ........................................................................................2

§ 1367(a) ...................................................................................2

17 C.F.R.

§ 229.1122(d)(4)(i) ...............................................................33

§ 229.1122(d)(4)ii) ...............................................................33

Federal Rules of Civil Procedure

Rule 8(a) .................................................................................35

N.Y. Gen. Oblig. Law § 13-107 ...............................................12

N.Y. Real Prop. Law § 125 .......................................................31

SECONDARY AUTHORITIES

Black's Law Dictionary (10th Ed.) ...........................................31

S. Rep. No. 101-155 (1989) ......................................................29

# GLOSSARY OF DEFINED TERMS

Defendants ........................... Deutsche Bank and Wells Fargo, collectively

Deutsche Bank ..................... Deutsche Bank National Trust Company ("DBNTC") and Deutsche Bank Trust Company Americas ("DBTCA")

DeLange Decl........................ Declaration Of Timothy A. DeLange In Support Of Plaintiffs' Joint Opposition To Defendants' Joint Motion To Dismiss

Frohlich Decl........................ Declaration Of Elizabeth A. Frohlich In Support Of Defendants' Joint Motion To Dismiss

EOD ..................................... Event of Default

GAs ...................................... Governing Agreements

HSBC Order ......................... *BlackRock Balanced Capital Portfolio, et al. v. HSBC Bank USA, Nat'l Ass'n*, __ F. Supp. 3d __, 2015 WL 1501283 (S.D.N.Y. Mar. 31, 2015) (Scheindlin, J.)

BP ........................................ The Bondholder Plaintiffs identified in Deutsche Bank Complaint [ECF No. 1] at ¶¶21-219 and Wells Fargo Complaint [ECF No. 1] at ¶¶20-201, collectively

BP-DB ¶__ ........................... Refers to paragraphs in BP's Deutsche Bank Complaint [ECF No. 1]

BP-WF ¶__ ........................... Refers to paragraphs in BP's Wells Fargo Complaint [ECF No. 1]

Mot. ..................................... Joint Memorandum Of Law In Support Of Defendants' Joint Motion To Dismiss

NCUA .................................. Plaintiff National Credit Union Administration Board, as Liquidating Agent of U.S. Central Federal Credit Union, Western Corporate Federal Credit Union, Members United Corporate Federal Credit Union, Southwest Corporate Federal Credit Union, and Constitution Corporate Federal Credit Union

NCUA ¶__. ........................... Refers to paragraphs in the NCUA Wells Fargo Amended Complaint [ECF No. 27]

Oklahoma Police I ................. *Oklahoma Police Pension & Retirement System v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47 (S.D.N.Y. 2013)

PL ........................................ Phoenix Light SF Limited plaintiffs.

PL ¶__ .................................. Refers to paragraphs in the PL Wells Fargo Amended Complaint [ECF No. 25]

Plaintiffs .............................. Refers to BP, NCUA, PL and RP, collectively

Policemen's/BofA I ............... *Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of America, N.A.*, 907 F. Supp. 2d 536 (S.D.N.Y. 2012)

Policemen's/BofA II ............. *Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of America, N.A.*, 943 F. Supp. 2d 428 (S.D.N.Y. 2013)

Policemen's/BNY I ............... *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, 914 F. Supp. 2d 422 (S.D.N.Y. 2012)

Policemen's/BNY Appeal ..... *Retirement Board of the Policemen's Annuity & Benefit Fund of the City of Chicago v. The Bank of New York Mellon*, 775 F.3d 154 (2d Cir. 2014)

PSA ...................................... Pooling and Servicing Agreement

PSLRA ................................ Private Securities Litigation Reform Act of 1995, 28 U.S.C. § 77cc

Quinn Decl. .......................... Supplemental Declaration Of William P. Quinn, Jr. In Support Of Defendants' Joint Motion To Dismiss

RMBS .................................. Residential Mortgage-Backed Securities

RP ........................................ Plaintiff Royal Park Investments SA/NV

RP ¶__ ................................. Refers to paragraphs in the RP Wells Fargo Complaint [ECF No. 24]

R&Ws .................................. Representations and Warranties

Sidman Decl. ........................ Declaration Of Howard F. Sidman In Support Of Defendant Wells Fargo, N.A.'s Motion To Dismiss

SSA ...................................... Sale Servicing Agreement

Trusts ................................... Trusts at issue in the actions

U.S. Bank Order ................... *BlackRock Allocation Target Shares: Series S Portfolio, et al. v. U.S. Bank National Association*, 2015 WL 2359319 (S.D.N.Y. May 18, 2015) (Forrest, J.)

Wells Fargo .......................... Wells Fargo Bank, N.A.

## I.      __INTRODUCTION__

These cases center on Defendants' failure to discharge their essential duties as RMBS trustees. In this role, Defendants were obligated to: (i) ensure that title to the underlying mortgage loans was properly transferred to the Trusts; (ii) enforce the Trusts' repurchase rights for loans that did not comply with R&Ws; and (iii) remedy servicing violations. In the face of overwhelming evidence of defective loans, seller R&W breaches, and servicing violations associated with the Trusts, Defendants failed to undertake these critical tasks, causing the Trusts and Holders to lose billions of dollars.

Defendants attempt to justify their inaction by claiming that the same GAs that charge them with protecting the Trusts somehow also immunize them from liability.[1] But Defendants have concrete legal obligations to the Trusts and Holders under the GAs, common law, the TIA, and the N.Y. Streit Act. Defendants also erroneously claim Plaintiffs have not identified seller and servicer defaults with respect to individual loans in each of the Trusts. Such specificity is not required at this stage. Indeed, Plaintiffs satisfied their pleading burden by alleging the Trusts' significant losses, the federal and state investigations finding widespread abuses by common mortgage loan sellers and servicers, and public reports and testimony about pervasive R&W breaches and

---

[1] Defendants needlessly buried the Court with over 1,500 exhibits totaling nearly 55,000 pages, including multiple supplemental filings, even as recently as forty-eight hours before Plaintiffs' opposition deadline. Numerous exhibits are not referenced in Defendants' moving papers (DeLange Decl., Ex. 1) and should be disregarded. More fundamentally, Defendants' exhibits largely excerpt the Trusts' substantially similar GAs, which impose similar duties on Defendants, and which are already quoted or cited in the Complaints. Defendants do not and cannot genuinely dispute these substantially similar duties, but instead point to slight variations in the GAs that have no bearing on Plaintiffs' claims. Thus, the Court need not waste resources wading through Defendants' voluminous and tardy submissions.

servicing violations by common sellers and servicers in connection with Trusts. These facts state a claim that is plausible on its face.

As detailed below, numerous courts in this District have already addressed and rejected similar challenges to the pleadings in cases against other RMBS trustees. This Court should do the same. The Court should also reject Defendants' suggestion that the Court lacks supplemental jurisdiction over the PSA claims. As Judge Scheindlin recently found in a well-reasoned opinion, the Indenture and PSA claims form part of the same case and controversy, and there is no reason to decline supplemental jurisdiction.

## II. THE COURT HAS JURISIDCTION OVER ALL OF THE BP TRUSTS

### A. The Court Has Supplemental Jurisdiction Over The PSA Claims

Under 28 U.S.C. § 1331, district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Here, the Court has original jurisdiction over the TIA claim for the BP Indentures. Defendants concede the Court's jurisdiction as to the state law claims for these Trusts. Accordingly, in terms of subject matter jurisdiction, the only question is whether the Court has supplemental jurisdiction under 28 U.S.C § 1367(a) over the same state law claims pertaining to the PSAs.

The Court has supplemental jurisdiction over the PSA claims because they form part of the "same case or controversy" as the Indenture claims. They derive from a common nucleus of operative fact and would ordinarily be expected to be tried in a single judicial proceeding. HSBC Order at *3. Here, Defendants breached five identical duties imposed under the PSAs and Indentures: (1) protect the trust; (2) ensure the trust took title to the mortgage loans; (3) enforce the sellers' repurchase obligations; (4) notify defaulting servicers and demand a cure; and (5) carry out heightened duties upon an EOD. Adjudicating these substantially similar contractual

provisions in a single forum will increase judicial efficiency, conserve resources, and avoid conflict among the federal and state courts. BP also will prove their claims with common forms of evidence under substantially the same burden of proof. Moreover, all of BP's claims arise from Defendants' common conduct in systematically failing to perform their duties as trustees. Courts have held that this common thread supports the exercise of supplemental jurisdiction. HSBC Order at *4; *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (claims "clearly derive from such a common nucleus of operative facts since they arise out of [defendant's] same compensation policies and practices").

The "two types of trusts also have many overlapping parties, making it simpler and more logical for the claims arising out of them to be adjudicated together." HSBC Order at *4.[2] BP believe that Defendants' corporate trust departments responsible for administrating the Trusts had limited numbers of employees and did not have separate divisions for PSAs and Indentures. Moreover, the Indentures and PSAs share common responsible parties: for Deustche Bank, 22 of the 26 (85%) Indenture responsible parties are also PSA responsible parties; for Wells Fargo, it is 10 of 13 (77%). *See* DeLange Decl., Ex. 3, Charts 2-3. Complete identity among responsible parties is not required. "Rather, it is the overlap amongst the ***parties*** which establishes the common thread." HSBC Order at *4.

---

[2] BP, NCUA, and PL seek to adjudicate claims involving Defendants' duties under both Indentures and PSAs together in a single proceeding. In fact, Defendants and other RMBS trustees have repeatedly sought to adjudicate their compliance with PSAs and Indentures together in a single action. *In re the Application of The Bank of New York Mellon*, Index No. 651786/2011 (N.Y. Sup. Ct.); *In re the Application of Citibank Nat'l Ass'n, et al.*, Index No. 652382/2014 (N.Y. Sup. Ct.); *In re the Application of Citibank Nat'l Ass'n, et al.*, Index No. 653902/2014 (N.Y. Sup. Ct.).

Defendants contend the same case or controversy test is not met where the federal and state claims arise from different contracts and involve different parties. Mot. 14.[3] Not so. The salient inquiry is whether the claims arise from the defendant's breach of the same contractual obligation. *Montefiore Med. Ctr. v. Teamsters Local 272,* 642 F.3d 321, 332-33 (2d Cir. 2011); *see also Brunswick Surgical Ctr., LLC v. CIGNA Healthcare*, 2010 WL 3283541, at *1 (D.N.J. Aug. 18, 2010) (cited with approval in *Montefiore*, 642 F.3d at 332-33).

Next, Defendants contend the Court should not exercise supplemental jurisdiction because evidence of default in an Indenture does not prove the same in a PSA. But the same case or controversy test is not so rigorous. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (no overlapping evidence for defendants' debt collection counterclaims and plaintiffs' federal lending discrimination claims); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 325 (S.D.N.Y. 2007) (finding state and federal claims arise from same case or controversy despite differences in facts and evidence). Only a common **nucleus** of operative fact is required. *Shahriar*, 659 F.3d at 245. Here, all of Plaintiffs' claims clearly derive from Defendants' common failure to discharge the same duties. HSBC Order at *4.

Further, Defendants emphasize slight variations in certain provisions of the GAs but fail to identify their significance (because there is none). For example, the fact that under the PSAs only the conduct of the Servicer triggers an EOD, while an EOD under the Indentures is tied to the conduct of the issuer is a red herring. Under the Indentures, the issuer (*i.e.*, the Trust) is obligated to "enforce any rights to the mortgage loans" and is required to "preserve and defend title to the

---

[3] Defendants also attempt to heighten the case or controversy test by citing inapt cases dealing with class standing, the commonality inquiry at class certification, intervention and the relation-back doctrine. These cases have nothing to do with supplemental jurisdiction.

Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties." Consequently, Servicer defaults constitute an EOD under Indentures and PSAs alike. HSBC Order at *2 ("While an Event of Default is abstractly different in the PSA and Indenture Trust, in both cases HSBC's duties are triggered upon learning that a servicer has breached its obligations."); *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. The Bank of N.Y. Mellon*, 914 F. Supp. 2d 422, 432 (S.D.N.Y. 2012) ("*BNY I*"), *reh'g denied*, 775 F.3d 154 (2d Cir. 2014) ("*Policemen's BNY Appeal*").[4]

Plaintiffs acknowledge that in a similar case against a RMBS trustee, Judge Katherine B. Forrest recently declined to exercise supplemental jurisdiction over state law claims, in conflict with the HSBC Order. Relying on *Policemen's/BNY Appeal*, 775 F.3d at 162, Judge Forrest held that "a general failure to act cannot justify supplemental jurisdiction because the question of whether that failure constitutes an actionable breach is a trust-specific inquiry." U.S. Bank Order at *4. However, *Policemen's/BNY Appeal* concerns class standing – not supplemental jurisdiction. The U.S. Bank Order ignores binding Second Circuit authority holding that a general failure to act supports supplemental jurisdiction. *See Montefiore*, 642 F.3d at 332 ("all of the claims asserted by Montefiore involve the Fund's alleged failure to reimburse Montefiore for medical services provided to Plan beneficiaries"); *Shahriar*, 659 F.3d at 237 (claims shared common nucleus of operative fact because they were predicated on employer's general failure to pay overtime to employees). The better-reasoned HSBC Order follows these authorities.

---

[4] None of Defendants' cited cases is availing. In *Gordillo v. The Bank of N.Y. Mellon Corp.*, 2014 WL 3507300 (S.D.N.Y. July 14, 2014) and *Polymeric Res. Corp. v. Estate of Dumouchelle*, 2014 WL 2815681 (E.D. Mich. June 23, 2014), the courts declined supplemental jurisdiction because the cross-claims were based on contracts of an entirely different nature between different parties than those in the underlying federal dispute.

B.    **There Is No Reason To Decline Supplemental Jurisdiction**

Defendants assert that the PSA claims substantially predominate over the TIA claim because the PSAs outnumber the Indentures. Mot. 10-11. But the predominance inquiry focuses on the *type* of claims, not the number or damages involved. *Shahriar*, 659 F.3d at 246-47; HSBC Order at *4-5.[5] The PSA claims "do not raise 'factual and legal issues' that are 'wholly distinct' and 'more complex[,] require more judicial resources to adjudicate [, or] are more salient in the case as a whole than the federal law claims.[6] Moreover, concerns of judicial economy, convenience, fairness, and comity provide compelling reasons for exercising jurisdiction over all claims. "Declining to exercise supplemental jurisdiction would actually increase the complexity of the action by creating parallel proceedings regarding one subject matter." *Id*. at *5.

Contrary to Defendants' assertion (Mot. 13), joinder of certain BP's PSA claims is proper because their claims arise out of the same transaction or occurrence and share a common question of law or fact. *Puricelli v. CNA Ins. Co.*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999). The "same transaction or occurrence" prong encompasses "all logically related claims" and is satisfied where plaintiffs allege a common pattern of conduct (*id*. at 142), and the "common question" prong is satisfied "if there is any question of law or fact common to all parties." BP readily satisfy this standard. *Supra*. at II.A.; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("joinder of claims, parties and remedies is strongly encouraged" to include "the broadest possible scope of action"). "Furthermore, the fact that plaintiffs originally filed the action in state court is

---

[5] Defendants' own cases (Mot. 10-11) support this point, as the courts declined to exercise supplemental jurisdiction ***not*** because the state claims outnumbered the federal claims but because the unrelated federal claims did not concern the conduct at the heart of the parties' dispute.

[6] HSBC Order at *5. The U.S. Bank Order erroneously concluded that state law claims substantially predominated given that the PSA Trusts outnumbered the Indenture Trusts, which is contrary to the Second Circuit's direction in *Shahriar*, 659 F.3d at 246-47.

no reason to decline supplemental jurisdiction." HSBC Order, at *5. Thus, there is no compelling reason to decline jurisdiction over the PSA claims.

## III.    BP AND RP PROPERLY PLEAD DERIVATIVE CLAIMS

### A.    BP And RP Have Derivative Standing

BP and RP have standing to sue Defendants derivatively in the right of the trustee and on behalf of the Trusts.[7] In *Dallas Cowboys*, the court analyzed decades of New York trust law and held that a claim brought by a trust beneficiary against a trustee may be brought derivatively where: (i) the claim is predicated on a breach of a duty owed equally to all trust beneficiaries and (ii) seeks redress for an injury affecting the trust beneficiaries as a whole. *Dallas Cowboys Football Club, Ltd. v. Nat'l Football League Trust*, 1996 WL 601705, at *2-4 (S.D.N.Y. Oct. 19, 1996). Here, BP's and RP's claims stem from Defendants' mismanagement of the Trusts' mortgage pools, and relate to the breach of duties owed to the Trusts and all Trust beneficiaries, including enforcing the Trusts' rights against those who have harmed the Trusts. Defendants' mismanagement of Trust assets is a concern common to ***all*** Holders of interest in the Trusts, not just BP and RP, because all of the Holders are paid from the cash flow generated by the loan pools held by the Trusts. *Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc.*, 2010 WL 3324705, at *5 (N.D. Ill. Aug. 20, 2010) (applying *Dallas Cowboys*); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2010 WL 4867533, at *4 (M.D. Fla. Oct. 8, 2010) (same). Accordingly, BP's and RP's claims concern an injury to the Trusts as a whole, and any injury sustained by the Holders may be remedied in a derivative claim.[8] *Dallas Cowboys*, 1996 WL 601705, at *4.

---

[7] NCUA and PL assert only direct claims and, thus, do not join in the derivative arguments. RP's claims are asserted first as direct class claims, and only alternatively as derivative claims.

[8] It is well-settled that the same set of operative facts can give rise to both direct and derivative claims. *See, e.g., Excimer Assocs., Inc. v. LCA Vision, Inc.*, 292 F.3d 134, 139-40 (2d Cir. 2002)

Again without supporting authority, Defendants claim that derivative suits cannot be brought on behalf of New York trusts because they are not "juridical entities." Mot. 13.[9] But courts routinely find that owners in unincorporated entities, including trust beneficiaries, may bring derivative suits. *Riviera Cong. Assocs. v. Yassky*, 18 N.Y.2d 540, 547 (1966) (limited partnership); *Velez v. Feinstein*, 87 A.D.2d 309 (1982) (New York trust); *Caprer v. Nussbaum*, 825 N.Y.S.2d 55, 68 (2d Dep't 2006) (condominium).

Defendants assert that it is the trustees on behalf of the Trusts (not the Trusts) that are the parties to the GAs and hold Trust claims, and therefore a Holder's derivative suit is impermissible here because it would amount to the trustees suing themselves. Mot. 14. The well-established principle of *Cestuis que trustent* makes clear that a beneficiary may step into the shoes of its trustee

---

("a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action"); *Gentile v. Rossette*, 906 A.2d 91, 103 & n.29 (Del. 2006); *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 383-84 (1st Dep't 2012) (adopting Delaware standard). NCUA's and PL's standing to assert direct claims is beyond dispute. Indeed, for the past 70 years the New York Court of Appeals and the Second Circuit have regularly sustained direct claims against indenture trustees. *See, e.g.*, *LNC Invs., Inc. v. First Fid. Bank, N.A., N.J.*, 173 F.3d 454, 462 (2d Cir. 1999) (breach of contract, breach of fiduciary duty, and TIA claims); *Smith v. Cont'l Bank and Trust Co.*, 292 N.Y. 275, 278 (1944) (breach of fiduciary duty claim).

[9] Defendants' suggestion that the *Dallas Cowboys* trust "must have been a 'juridical entity'" fails. Mot. 14, n.8. The trust in *Dallas Cowboys*, like the Trusts, was a "New York trust." *Dallas Cowboys*, 1996 WL 601705, at *2, n.3. For this reason, district courts have applied *Dallas Cowboys* to post-financial crisis era actions against RMBS trustees for New York common law trusts for breach of similar duties. *See, e.g.*, *Sterling Fed. Bank*, 2010 WL 3324705, at *6, 2011 WL 1792710, at *2 (N.D. Ill. May 11, 2011) (denying RMBS trustee's motion to dismiss in its entirety and allowing derivative claims to proceed); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2011 WL 2470226, at *3-4 (M.D. Fla. Mar. 17, 2011) (upholding derivative common law breach of duty claims against RMBS trustee); *Sterling Fed. Bank, F.S.B. v. Countrywide Fin. Corp.*, 2012 WL 2368821 (N.D. Ill. June 21, 2012) (sustaining derivatively pled breach of contract claim against RMBS trustee); *Bankers Ins. Co. v. Countrywide Fin. Corp.*, 2012 WL 2594341 (M.D. Fla. July 5, 2012) (same); *BNY I*, 914 F. Supp. 2d 422 (sustaining investors' derivative breach of fiduciary claim against RMBS trustee). In fact, relying on *Dallas Cowboys*, Wells Fargo argued to the Second Circuit that a certificateholder suit on behalf of a RMBS trust is derivative. DeLange Decl., Ex 3, Chart 4, p.1.

in cases such as this where the trustee is incapable of acting to enforce the trust's rights. *Harvey v. McDonnell*, 113 N.Y. 526, 531 (1889) (where the "trustee unreasonably refuses to sue, the creditors or other persons interested may themselves bring an action for, or reclaim the property fraudulently transferred, making the transferees and the trustee parties. In such a case the creditor stands in the place of the trustee . . ."); *Velez v. Feinstein*, 87 A.D.2d 309, 313-14 (1st Dept. 1982).[10]

Finally, contrary to Defendants' argument, BP's and RP's derivative standing is consistent with their TIA claims and N.Y.G.O.L. 13-107 allegations. Mot. 14. BP's and RP's TIA claim applies only to the Indentures, the notes of which are debt. Courts have consistently permitted indenture noteholders to bring derivative actions, despite the fact they are not equity holders. *See, e.g., Campbell v. Hudson & Manhattan R.R. Co.*, 277 A.D. 731, 734-35 (1st Dep't 1951); *Gould v. J. Henry Schroder Bank & Trust Co.*, 78 A.D.2d 870, 870-71 (2d Dep't 1980). Like their other claims, the TIA claim is predicated on violations of the TIA establishing the indenture trustees' post-default duties that apply equally to all noteholders (15 U.S.C. §§ 77ooo(a)(1), (2)), and seeks the same relief as their other common law claims. *SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F. Supp. 2d 516, 528 (E.D.N.Y. 2013) *aff'd* 598 Fed. App'x 741 (2d Cir. 2014) (derivative inquiry focuses on the injury alleged and the relief sought, not the denomination of the claim). Moreover, Defendants mistakenly suggest that N.Y.G.O.L. 13-107 does not apply to PSA Trusts.[11] *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 986 F. Supp. 2d 412 (S.D.N.Y. 2013) (N.Y.G.O.L. 13-107 applies to both RMBS notes and certificates).

---

[10] Any attempt to distinguish this long line of cases by arguing these were actions brought against third parties fails. *Dallas Cowboys* squarely rejected this distinction. 1996 WL 601705, at *3, n.4.

[11] With respect to RP, even if standing was not conferred by N.Y.G.O.L. 13-107, which it was, RP would nevertheless have standing by operation of Belgian law, including Articles 1165 and 1690 § 1 of the Belgian Civil Code.

## B. BP's And RP's Claims Satisfy The *Tooley* Test

The New York Appellate Division's decision in *Yudell v. Gilbert*, 949 N.Y.S.2d 380 (2012), where it adopted the test developed by the Supreme Court of Delaware in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004), does not abrogate *Dallas Cowboys*. The *Tooley* test, which instructs that "a court should look to [1] the nature of the wrong and [2] to whom the relief should go," is nearly identical to the *Dallas Cowboys* doctrine. *Id.* at 1039. Indeed, similar to *Dallas Cowboys*, *Yudell* recognizes that claims (such as the ones here) predicated on "allegations of mismanagement" have always been recognized as derivative. *Yudell*, 949 N.Y.S. 2d at 383, citing *Abrams v. Donati*, 66 N.Y.2d 951, 952 (1985).[12]

Application of the two-prong *Tooley* test yields the same result as *Dallas Cowboys*. First, the alleged wrong is to the Trusts, which in turn harmed Holders like Plaintiffs. It is only through the loss to the Trusts that Plaintiffs have suffered a loss, and all Holders in the Trusts suffered an injury from Defendants' failure to enforce the Trusts' rights as against responsible parties. Accordingly, Plaintiffs' injury is not independent of any injury to the Trusts, and Plaintiffs will prevail on their breach of duty claims by initially showing an injury to the Trusts' estates. *Yudell*, 949 N.Y.S.2d at 384.

Next, any recovery would represent the injury to the Trusts, which would inure to the benefit of the Trusts' estates. Thus, only if and when the Trusts' estates receive any compensation

---

[12] Since *Yudell*, courts (and Wells Fargo) have continued to apply *Dallas Cowboys* in the mortgage-backed securities context. *See, e.g.*, *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 WL 3542196, at *2 (S.D.N.Y. Aug. 15, 2012); *SC Note Acquisitions*, 934 F. Supp. 2d at 530; *Fed. Hous. Fin. Agency v. WMC Mortg., LLC*, 2013 WL 5996530, at *1 (S.D.N.Y. June 12, 2013); *see also* DeLange Decl., Ex. 3, Chart 4.

would Plaintiffs be entitled to receive their proportionate share, as set forth under the Trusts' cash flow waterfall. *Yudell*, 949 N.Y.S.2d at 384.

Defendants confound the first prong of the *Tooley* test by contending that the claims are direct because they are predicated on duties extending to investors. Mot. 15. But the first prong of the *Tooley* test is who suffered the harm. The harm underlying each cause of action is the reduction in Trust assets caused by Defendants' deficient management or administration of the Trusts: a paradigmatic derivative claim. *Yudell*, 949 N.Y.S.2d at 383. BP and RP do not allege an independent injury or breach specific to them, but rather a general breach applicable to the Trusts at large. Thus, they could not demonstrate their own injury without first demonstrating an injury to the Trusts.

Defendants falsely claim BP and RP seek compensatory damages for their own losses. The derivative claims seek the Trusts' losses. Indeed, as Wells Fargo repeatedly argued in other courts, the GAs prohibit a Holder from suing for its own unique losses within the Trust's waterfall. DeLange Decl., Ex 3, Chart 4, pp. 1, 3, 4. Rather, the GAs state that Holders may only enforce contractual rights "***for the equal, ratable and common benefit of all Holders***." *SC Note Acquisitions*, 934 F. Supp. 2d at 530 (recognizing that identical provision in PSA for commercial MBS confirmed derivative nature of claim).

That a monetary judgment would eventually flow to Holders through the Trusts' cash flow waterfall does not render the claims direct under *Tooley*. BP and RP will not recover their individual out-of-pocket losses, but rather their *pro rata* share, which is a derivative recovery. *See Feldman v. Cutaia*, 951 A.2d 727, 753 (Del. 2008) ("Where all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock

solely because they are stockholders, then the claim is derivative in nature."). Furthermore, BP seek equitable relief in the form of corrective actions. BP-WF & BP-DB at Prayer for Relief, (c).[13]

### C. BP And RP Satisfy The Contemporaneous Ownership Requirement

BP and RP allege that they have been beneficial owners of the RMBS in each of the Trusts during *all* or a large portion of Defendants' wrongful course of conduct alleged herein and that they continue to own herein. BP-WF ¶216; BP-DB ¶238; RP ¶¶30, 163; *see also In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) (a derivative plaintiff need only have acquired the shares before the core of the allegedly wrongful conduct transpired).[14] Under New York law, "a transfer of any bond shall vest in the transferee **all** claims or demands of the transferrer [sic] . . . for damages against the trustee." N.Y. Gen. Oblig. Law § 13-107 (emphasis added); *see also Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 97 N.Y.2d 456, 461 (N.Y. App. 2002). Section 13-107 applies to both the notes and RMBS certificates (*Okla. Police*, 986 F. Supp. 2d 412) and, therefore, invalidates the contemporaneous ownership rule for the claims asserted here. *See SC Note Acquisitions*, 934 F. Supp. 2d at 530-31 (dismissing RMBS certificateholder derivative suit against special servicer but suggesting that the contemporaneous ownership rule would apply where the defendant was an indenture trustee).[15]

---

[13] The U.S. Bank Order also misapplied *Tooley* by observing that the fact the trustee owes duties to certificateholders and that certificateholders may ultimately receive their *pro rata* distributions of the trusts' recovery (not out-of-pocket losses) through the waterfall suggests a "direct" injury. Importantly, however, the U.S. Bank Order grants plaintiffs leave to amend. U.S. Bank Order at *6-7.

[14] Defendants do not – and cannot – challenge that the "core" of their alleged wrongdoing occurred after BP acquired their interests in the Trusts.

[15] Defendants' assertion that "Section 13–107 deals with the transfer of claims, not the transfer of shares or interests" is non-sequitur. Mot. 16. The right to bring a claim, including derivatively, is a property right associated with a bond and is freely transferable. *Bluebird Partners*, 97 N.Y.2d at 461.

## IV. THE COMPLAINTS STATE CLAIMS FOR BREACH OF CONTRACT

"A breach of contract claim under New York law requires: (i) the existence of a contract; (ii) performance by the party seeking recovery; (iii) nonperformance by the other party; and (iv) damages attributable to the breach." *Oklahoma Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, 291 F.R.D. 47, 67 (S.D.N.Y. 2013) ("*Oklahoma Police I*") (collecting New York law). Here, the Complaints adequately allege these elements.

### A. Contractual Standing Is Adequately Alleged

Plaintiffs invested (and lost) hundreds of millions of dollars in securities issued by the Trusts. Nevertheless, Defendants contend Plaintiffs lack contractual standing to sue for 275 Trusts that contain "negating clauses."[16] Mot. 20-22. Specifically, Defendants assert that Plaintiffs do not fit within the definition of the parties who may enforce the terms of the GAs, including defined "Holders." *Id.* at 21.[17]

Contrary to Defendants' contention, Plaintiffs are "Holders" under the GAs, as "Holder" was clearly intended to include the beneficial Holders of the RMBS (*i.e.*, "Owners"). For example, each of the GAs provides that Defendants as Trustees hold the trust assets *(i.e.,* the Mortgage Loans and the rights attendant thereto) for the benefit of the "Holders." BP-WF ¶¶242, 244; BP-DB ¶¶260, 264; NCUA ¶75; PL ¶¶51-52; RP ¶¶46, 50. Likewise, the GAs refer to adverse events and R&Ws breaches that would "materially and adversely affect . . . the *[]holders*." BP-WF ¶¶3, 232; BP-DB ¶¶3, 254-55; NCUA ¶92; PL ¶63; RP ¶¶46, 50.

---

[16] Defendants do not challenge Plaintiffs' standing to assert claims as to 571 Trusts that do not contain "Negating Clauses." Thus, Defendants' argument is inapplicable to *nearly 70%* of the Trusts.

[17] Defendants' standing argument has no impact on BP's and RP's standing to sue derivatively because, as discussed in § III, BP and RP sue in the right of the Trustee, which has standing to sue on behalf of the Trusts.

Defendants mistakenly imply that the only "Holder" is the "Certificateholder" of record in the Certificate Register, Cede & Co. – the Depository Trust Company's ("DTC") nominee which nominally "holds" the certificates or notes for administrative purposes and to ensure payment of the principal and interest amounts to Plaintiffs and all other beneficial Holders. Mot. 21. But because Cede & Co. has no financial interest in the Notes or Certificates, no adverse events or R&Ws breaches would ***adversely*** affect Cede & Co. The only reasonable conclusion is that "Holders" includes beneficial Holders such as Plaintiffs, *i.e.,* the Owners.[18] To read the GAs otherwise would effectively nullify key provisions of these agreements. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 (1995) ("cardinal principle of contract construction: that a document should be read to give effect to all its provisions and to render them consistent with each other"). Moreover, Defendants have referred to the Plaintiffs as "Holders,"[19] and repeatedly referred to other RMBS investors as "Holders" in at least 17 actions. DeLange Decl., Ex. 4, Charts 6-7.

But even assuming the term "Holder" means something other than the "Holder" of a beneficial interest, Cede & Co. is a subagent ultimately acting on behalf of the principal, the RMBS investors. *In re Color Tile Inc.*, 475 F.3d 508, 511 (3d Cir. 2007). Here, Plaintiffs are the

---

[18] The Indentures expressly incorporate the TIA, including the obligations imposed on indenture trustees by Section 315(b)-(c), which (i) cannot be modified by contractual terms; (ii) refers to "holders," not registered holders; and (iii) are meant to protect investors like Plaintiffs. *Bluebird Partners*, 85 F.3d at 974. Accordingly, regardless of the Indenture's definition of "Holder," Plaintiffs as beneficial Holders are entitled to sue to vindicate a breach of the Indenture.

[19] *See In the Matter of the Application of U.S. Bank Nat'l Ass'n, et al.*, Index No. 652382/2014 (N.Y. Sup. Ct.), Petition at ¶12. "[T]he parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties'" *Gulf Ins. Co. v. Transatlantic Reinsurance Co.*, 886 N.Y.S.2d 133, 143-44 (1st Dep't 2009) (quoting *Webster's Red Seal Publs. v. Gilberton World-Wide Publs.*, 415 N.Y.S.2d 229 (1st Dep't 1979), *aff'd*, 53 N.Y.2d 643 (1981).

undisputed beneficial owners and, therefore, have standing to bring this suit as Cede & Co.'s principals. *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp. 2d 363, 375 (S.D.N.Y. 2010) (Preska, J.) (the "principal [had] standing to sue . . . because a principal can sue on a contract entered into by his agent on his behalf").

At bottom, Defendants claim no one has standing to bring the contract claims against them as Cede & Co. has no financial or beneficial interest in the certificates, has suffered no injury, and likely lacks Article III standing to bring any claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (Article III standing requires ***"injury in fact"*** that must be "concrete and particularized" as well as "actual or imminent").[20] Such a result is untenable. Under New York law, a third party may enforce a contract when "no one other than the third party can recover if the promisor breaches the contract." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985); *Seaver v. Ransom*, 224 N.Y. 233 (1918); *Int'l Ry. Co. v. Rann*, 120 N.E. 153 (1918).

The negating clause does not alter this conclusion. In *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp.*, 918 N.Y.S.2d 73, 75 (1st Dep't 2011), the plaintiff formed an acquisition company to purchase a corporation from the defendant. When the plaintiff subsequently sued for breach of the agreement, the defendant argued that the plaintiff lacked standing as an excluded third party beneficiary under the negating clause of the agreement. The

---

[20] Defendants' reliance on *Cortlandt Street Recovery Corp. v. Hellas Tellcommunications S.a.r.l.*, 2014 WL 4650231, at *4 (N.Y. Sup. Ct. Sept. 16, 2014) and *Springwell Navigation Corp. v. Sanluis Corporación, S.A.*, 46 A.D. 3d 377 (1st Dep't 2007), is misplaced. These decisions do not analyze or discuss the contract language or the parties' contractual intent. Likewise, these courts did not determine whether investors had standing as the principal of the nominal "holder" or as a third-party beneficiary of last resort.

court rejected this argument, holding that enforcement of the negating clause would render the contract meaningless and leave the plaintiff without a remedy.[21]

Finally, if Plaintiffs lack standing (they do not), it can be cured. The Second Circuit has twice found that a beneficial owner who may lack standing to sue on a bond may receive authorization or ratification from the registered Holder, and that such authorization – which is routinely granted – may be granted subsequent to the filing of the lawsuit. *See Applestein v. The Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005); *Fontana v. The Republic of Argentina*, 415 F.3d 238 (2d Cir. 2005).[22]

Here, plaintiff Sealink Funding Ltd. ("Sealink") has negotiated a form of consent with Cede & Co. to initiate the present litigation as Cede & Co.'s authorized proxy. DeLange Decl. Ex. 5. Cede & Co. concedes that it is "only a nominal party," and "has no interest in this matter other than to take those steps which are necessary to ensure that Sealink is not denied its rights as the beneficial owner[s] of the Notes." *Id*. Cede & Co., however, requires payment of $400 in administrative fees per letter, per Note. Thus, obtaining the necessary authorizations from Cede & Co. would cost nearly $600,000 for BP, alone.[23] As Judge Griesa suggested in *Republic of Argentina*, 415 F.3d at 240, Defendants should be required to pay these costs.[24]

---

[21] *See also Anwar v. Fairfield Greenwich, Ltd.,* 728 F. Supp. 2d 372, 430 (S.D.N.Y. 2010) (court found the contract clearly made plaintiff the intended beneficiary and thus the inurement clause would not be literally enforced).

[22] In addition, Defendants' own authority, *Springwell Navigation Corp. v. Sanluis Corporación, S.A.*, 849 N.Y.S.2d 34 (1st Dep't 2007), supports this contention. In a subsequent opinion, the Appellate Division found that by obtaining "the registered holder's authorization to sue in its stead, plaintiff's status has changed, and its prior lack of capacity has been cured." 917 N.Y.S.2d 560, 561 (1st Dep't 2011).

[23] BP's 1,453 securities multiplied by $400 equals $581,200.

[24] Alternatively, Plaintiffs could join Cede & Co. as a nominal defendant. In that case Cede & Co. would invariably file an answer disclaiming any interest in the covered securities and advising that

## B.    Loans In The Trusts Breached Seller R&Ws

Defendants suggest that RMBS trustees have only limited "ministerial" duties and, instead, *investors* are charged with enforcing contractual breaches.[25] Defendants also mischaracterize Plaintiffs' breach of contract claim as based on a generalized duty to monitor and oversee the Sellers and Servicers. Mot. 4, 23, 25. In truth, Plaintiffs' breach of contract claim arises from Defendants' failure to (i) give prompt notice to all parties to the GAs and related responsible parties of known Seller R&Ws breaches and Servicer failures (BP-WF ¶¶247-50, 485-88; BP-DB ¶¶269-72, 495-98; NCUA ¶¶88-93; PL ¶¶151-66; RP ¶¶54, 145-48); (ii) enforce the responsible parties' repurchase or cure obligations (BP-WF ¶¶485-86; BP-DB ¶¶495-96; NCUA ¶¶88-93; PL ¶¶312-13; RP ¶¶53, 145-50); and (iii) carry out its heightened post-EOD obligations, including acting as "prudent person" and providing notice of all EODs to Holders (BP-WF ¶¶489-91; BP-DB ¶¶499-501; NCUA ¶¶377-78, 411; PL ¶¶312-14, 320; RP ¶¶149-150). Plaintiffs further allege that Wells Fargo breached its duties to ensure that complete mortgage files were delivered to the trusts. BP-WF ¶¶244-45; BP-DB ¶¶266-67; NCUA ¶¶370-82; PL ¶¶88-93. Wells Fargo does not contest the adequacy of these allegations in its motion. These duties are explicitly enumerated in the GAs, and Plaintiffs have sufficiently alleged that Defendants breached them.

---

it did not intend to take an active role in the litigation of these cases, as it has repeatedly done in RMBS actions in this District. *See, e.g., Wells Fargo Bank, Nat'l Ass'n v. Davidson Kempner Capital Mgmt. LLC*, No. 13 Civ. 5981 SAS, (S.D.N.Y.), Answer of Cede & Co. to the Amended Interpleader Complaint (ECF No. 20) at pp. 2-3; *Bank of Am., N.A. v. Morgan Stanley & Co. Inc.*, No. 10 Civ. 6322 RJH (S.D.N.Y.), Answer of Cede & Co. to the Interpleader Complaint (ECF No. 7) at ¶¶6-8.

[25] Such contention has been squarely rejected by the First Department. *See, e.g., Ambac Assur. Corp. v. EMC Mortg. LLC*, 995 N.Y.S.2d 545, 549 (1st Dep't 2014) ("the trust confers upon ***the trustee the full responsibility*** for enforcing [breach of representation and warranty claims] on behalf of the certificateholders," and that "the ***trustee is responsible*** for pursuing claims for [R&Ws breaches]") (emphasis added).

Defendants largely ignore the specific breaches alleged by Plaintiffs. For example, Defendants ignore that the GAs require the trustee to provide written notice to certain parties upon the discovery of a breach of R&Ws, which Plaintiffs allege Defendants failed to do. BP-WF ¶248; BP-DB ¶270; NCUA ¶¶84-87; RP ¶¶95-103. Defendants also ignore that the Complaints plead EODs, which trigger their heightened duties to act "prudently." BP-WF ¶¶489-91; BP-DB ¶¶499-501; NCUA ¶¶313-21, 383-89, 408; RP ¶¶104-36. Plaintiffs allege that a prudent trustee under these circumstances would have taken action to enforce the Sellers' repurchase obligations, but Defendants did not. BP-WF ¶490; BP-DB ¶500; NCUA ¶408; PL ¶74; RP ¶149. Instead, Defendants attempt to cabin the numerous breaches alleged as "Two R&W Related Contract Claims." Defendants' arguments with respect to the two claims they purport to address are unavailing for the reasons set forth below.

1.    The Governing Agreements Require
      Defendants To Enforce Repurchase Obligations

Defendants claim that for 301 DB Trusts and 108 WF Trusts, the "GAs either do not obligate Defendants to enforce repurchase obligations at all, or only obligate them to enforce under specific circumstances not pled here." Mot. 23. Defendants also claim that for 75 DB Trusts and 12 WF Trusts, the GAs require that the Trustee "receive written notice of a breach or [] satisfaction of other conditions precedent" before the Trustee has an obligation to enforce Seller repurchase obligations. Mot. 23. These arguments fail for multiple reasons.[26] First, for 22 of the 301 DB Trusts cited in Ex. FF, the GAs state specifically that the Trustee, or an entity on the Trustee's behalf, "shall enforce" the Seller's repurchase obligations. *See* DeLange Decl., Ex. 6, Chart 8. Second, for

---

[26] Defendants admit that for the 188 DB Trusts and 153 WF Trusts not identified on the Frolich Decl. Ex. FF or Ex. GG, the GAs provide that the trustee "shall enforce" Seller repurchase obligations without conditions.

the Trusts that do not contain specific language stating that the trustee "shall enforce" R&Ws breaches, the GAs include provisions that clearly implicate the trustee's duty to enforce Seller repurchase obligations.[27]

### 2.    Plaintiffs Have Alleged That Defendants' Knew Of R&W Breaches

Repeating arguments other courts in this District have rejected, Defendants contend the Complaints do not sufficiently allege their "discovery" of R&Ws breaches, claiming the Complaints must also identify which R&Ws were breached, the mortgage loans in which the breaches occurred and the trusts to which those loans applied. Mot. 23-25. This argument has been uniformly rejected. In *Policemen's/BofA II*, 943 F. Supp. 2d at 442, Judge Forrest concluded:

> At the pleading stage, plaintiffs cannot be required to identify breaches of representations and warranties with respect to individual loans in the specific trusts – such information, at this stage, is uniquely in the possession of defendants. Rather, plaintiffs satisfy their burden where their allegations "raise a reasonable expectation that discovery will reveal evidence" proving their claim.

In *Oklahoma Police I,* Judge Koeltl agreed, recognizing that an investor "cannot be expected to detail the defects in specific loans before it has had discovery."[28] 291 F.R.D. at 70. Instead, Judge Koeltl found allegations of significant losses in the trusts, mortgage files riddled with document deficiencies, widespread abuses in such files uncovered by federal and state investigators, numerous document deficiencies found in the public records of the foreclosures on

---

[27] These provisions include the following: (1) "[t]he Seller shall promptly reimburse the Master Servicer and the Trustee for any expenses reasonably incurred by the Master Servicer or the Trust in respect of enforcing the remedies for the breach" (Quinn Decl. Ex. 300, INDX 2004-AR7 § 2.03(c)); and (2) "[t]he obligation under this Agreement of any Person to cure, repurchase, or replace any Mortgage Loan as to which a breach has occurred and is continuing shall constitute the sole remedy against the Person respecting the breach available to Certificateholders, the Depositor, or the Trustee on their behalf." Quinn Decl. Ex. 349, INDX 2007-AR15 § 2.03(c).

[28] Although not required, the RP complaint alleges specific R&Ws breaches. RP ¶¶92-97.

two of the covered trusts, and the public reports and testimony provided sufficient factual basis to plausibly allege Seller R&Ws breaches. *Id.* at 69-70.

Defendants further assert that Plaintiffs' allegations fail to show that Defendants discovered any loan-specific breaches required to trigger their notice and enforcement obligations. Mot. 24. Again, courts have uniformly rejected this argument, finding this level of factual detail is not required at the pleading stage. *See, e.g.*, *Policemen's Annuity II*, 943 F. Supp. 2d at 442; *Oklahoma Police I*, 291 F.R.D. at 70. Here, as in *Policemen's/BofA II* and *Oklahoma Police I*, the Complaints allege that Defendants discovered and knew of Sellers' R&Ws breaches by, among other things, (1) the high number of borrower defaults (BP-WF ¶¶403-04; BP-DB ¶¶394, 396; NCUA ¶¶272-76; RP ¶¶74, 93; PL ¶165); (2) the enormous losses to the Trusts (BP-WF ¶¶5, 404-06; BP-DB ¶¶5, 397-99; NCUA ¶¶277-80; RP ¶¶74, 86, 93, 118, 128, 136; PL ¶165); (3) the collapse of the certificates' and notes' credit ratings (BP-WF ¶¶408-09; BP-DB ¶¶402-03; NCUA ¶¶281-87; PL ¶165); (4) reports and litigation concerning common originators' systemic abandonment of underwriting standards, as well as common Sponsors' pervasive disregard of prudent securitization standards (BP-WF ¶¶287-402, 412-29; BP-DB ¶¶298-393, 404-30; NCUA ¶¶139-269; RP ¶¶72-94; PL ¶¶163-311); (5) litigation contending the specific loans in some of the specific Trusts had been misrepresented (BP-WF ¶¶412-33; BP-DB ¶¶404-30); and (6) Defendants' involvement in litigation involving the same Sellers (BP-WF ¶¶434-35, 476-78; BP-DB ¶¶431-41; NCUA ¶¶301-06; RP ¶¶98-103; ¶¶330-32). These allegations raise a plausible inference that Defendants' actually knew about of R&W breaches.[29] Moreover, it would be

---

[29] *Arrowgrass Master Fund Ltd. v. The Bank of N.Y. Mellon*, 2012 WL 8700416 (N.Y. Sup. Ct. Feb. 24, 2012) is unavailing, as the plaintiffs' complaint in that action had nowhere near the level of factual detail supporting the inference the defendant had knowledge of wrongdoing. *Id.* at *9 (rejecting plaintiffs' claim that the trustee had knowledge of a servicer default because it was

premature to dismiss Plaintiffs' claims before any discovery of Defendants' knowledge of R&W breaches has taken place.

Defendants claim that they were entitled to ignore this wealth of information and take no further action. Mot. 23. But as Judge Forrest held, to accept that Defendants were unaware of this information would require the Court to find that Defendants' responsible officers had been "living under a rock," which Defendants were not entitled to do. *Policemen's/BofA I*, 907 F. Supp. 2d at 553-54, citing *MASTR Asset Backed Sec. Trust 2006–HE3 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. Corp.*, 2012 WL 4511065, at *7 (D. Minn. Oct. 1, 2012).

### C.    Defendants Breached Their Post-Default Obligations

Upon an EOD, the GAs and the TIA require Defendants to (i) notify Holders of its occurrence and (ii) act as a prudent person in the exercise of its rights and powers under the GAs. 15 U.S.C. § 77ooo(b); BP-WF ¶530; BP-DB ¶531; NCUA ¶¶108-111; PL ¶¶61-62, 68-74; RP ¶¶44-57. Defendants claim that "with respect to 7 PSA Trusts, the GAs do not impose prudent person duties on Defendants following Events of Default." Mot. 26. This mischaracterizes these GAs. Although the prudent person standard is not specifically identified, all of the GAs state that "[n]o provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct." DeLange Decl., Ex. 7, Chart 9. Moreover, all of the GAs require the Trustee to: (1) notify the Servicer or Master Servicer of any material breaches of their obligations in the GAs; and/or (2) provide written notice to Certificateholders of EODs known to the Trustee, which Defendants failed to do.[30] *Id.*

---

entirely predicated on two conclusory paragraphs referencing news reports and documents relevant to the transaction).

[30] Defendants contend their inaction was justified because they were not paid enough. Mot. 2. Defendants, however, earned substantial income as Trustees. BP-WF ¶519; BP-DB ¶520; PL ¶14;

### 1.      Plaintiffs Allege Master Servicer Events Of Default

Defendants claim that for 135 DB Trusts and 63 WF Trusts, Plaintiffs have failed to allege EODs because "only Master Servicer breaches can lead to an EOD" and "Master Servicers duties are to 'monitor the performance of each Servicer,' while the Servicers are responsible for actually servicing the mortgage loans." Mot. 27. This argument fails for two reasons. First, for 30 WF Trusts and 1 DB Trust, the Master Servicer acts as a servicer and breached the same servicing obligations alleged in the Complaints. DeLange Decl., Ex. 8, Chart 10. Second, for the 165 Trusts that define an EOD by the Master Servicer's conduct, Plaintiffs' Complaints detail servicing failures that encompass and sufficiently allege that such EODs occurred. For instance, given that the Master Servicers in the Trusts did not act to terminate offending servicers, the allegations in the Complaints that servicers in all the Trusts (1) violated their prudent servicing obligations (BP-WF ¶¶444-53; BP-DB ¶¶454-63; NCUA ¶¶313-69; PL ¶¶338-42; RP ¶¶104-36, 147-48); (2) failed to provide notice of Seller R&Ws breaches (BP-WF ¶¶438-43; BP-DB ¶¶444-53; NCUA ¶31; PL ¶313; RP ¶147); (3) failed to use their best efforts to foreclose upon defaulted properties (BP-WF ¶¶454-63; BP-DB ¶¶464-72; NCUA ¶316; PL ¶13; RP ¶147); and (4) failed to perform prudent servicing advances (BP-WF ¶¶468-74; BP-DB ¶¶477-83; NCUA ¶313; PL ¶¶338-42), are sufficient to allege Master Servicer EOD. Moreover, courts have found this type of variance in the definition of an EOD to be largely insignificant when the underlying servicing defaults are properly alleged. *See Policemen's/BNYM I*, 914 F. Supp. 2d at 432 (plaintiffs' well-pled

---

RP ¶20. Moreover, Defendants' compensation is irrelevant as they were entitled to be reimbursed for costs incurred in enforcing the Trusts' rights. *See*, *e.g.*, Quinn Decl. [ECF No. 57-55], Ex. 300, INDX 2004-AR7 § 2.03(c).

allegations of servicer misconduct constituted both a Servicer EOD under the PSA and an Issuer

EOD under the Indenture); *Oklahoma Police I*, 291 F.R.D. at 66 (same).[31]

### a) Defendants Cannot Rely On Their Own Failure
### To Provide Notice To Servicers To Escape Liability

Defendants argue that Plaintiffs cannot "claim frustration or impossibility as to the notice

and cure requirements by alleging that Defendants prevented the Events of Default from occurring

by failing to give notice of breaches" because "Defendants had a right, but no duty, to provide

such notice." Mot. 28. Without citing any provision of the GAs to support this argument,

Defendants claim 540 DB Trusts and 165 WF Trusts lack this trustee duty. *Id*. This is incorrect.

The GAs require the Defendants "shall" provide notice of Servicing defaults, making any material

breach by the Servicer an EOD if such default continues unremedied for a period of 60 days after

the date on **which written notice of such failure shall have been given to the Servicer by the**

**Trustee** or 25% of certificateholders. Sidman Decl. Ex. 1, AABST 2004-1 PSA § 7.01(ii); Frohlich

Decl. Ex. 55, AMSI 2005-R10 PSA § 7.01(ii).

Defendants' position also cannot be reconciled with settled case law that a "trustee cannot

rely on its own failure to give notice to escape its own liability." *Oklahoma Police I*, 291 F.R.D.

at 70 (citing and quoting *In re Bankers Trust Co.*, 450 F.3d 121, 129 (2d Cir. 2006); *Bank of N.Y.*

*v. Tyco Int'l Grp., S.A.*, 545 F. Supp. 2d 312, 324 n.81 (S.D.N.Y. 2008)). Defendants cite no "case

in which the failure of the alleged wrongdoer to give notice was excused when the alleged

---

[31] Wells Fargo's motion should also be rejected because it does not address PL's allegation that an Event of Default occurred when the Master Servicers and Servicers provided certifications that Wells Fargo knew were false. *See* PL ¶¶326-28; *see also House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *6-8 (S.D.N.Y. Mar. 31, 2014) (Wells Fargo is not permitted to rely on certifications where it is "clear from the face of a certification" or where Wells Fargo otherwise knew that the representations could not be true).

wrongdoer's failures prevented at least one way of satisfying [a] precondition" to a EOD. *Oklahoma Police I*, 291 F.R.D. at 71.[32]

In *Bankers Trust*, the Second Circuit rejected the indenture trustee's attempt to rely on its own failure to prevent the occurrence of an EOD. The Second Circuit concluded that the indenture trustee's "failure to fulfill its affirmative duty to inspect the certificates 'unjustly prevent[ed] the performance' of its duty to give notice of the nonconformities. BT [the indenture trustee] *is 'not . . . permitted to take advantage of [its] own wrong.*'" *Bankers Trust*, 450 F.3d at 129 (quoting *Spanos* v. *Skouras Theatres Corp.,* 364 F.2d 161, 169 (2d Cir. 1966)) (emphasis added).[33]

The error in Defendants' position is evident from the provisions of the GAs, which state that no provision shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act or its own willful misconduct. BP-WF ¶219; BP-DB ¶¶241-42; NCUA ¶427; PL ¶86; RP ¶154. Defendants should not be allowed to "rely on [their] own failure to give notice [to the Servicers] to escape [their] own liability." *Oklahoma Police I*, 291 F.R.D. at 70; *accord BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 398 (S.D.N.Y. 2011).

### b)   Events Of Default Under The Indentures Are Alleged

Finally, Defendants contend that Plaintiffs fail to allege the occurrence of an Indenture EOD because they do not specifically allege a breach of the issuer's duties. Mot. 26. Once again,

---

[32] The GAs for all of the Trusts require Defendants to give notice to the offending Servicers, which Defendants never provided. Therefore, Defendants cannot escape liability by virtue of their own contractual breaches.

[33] *Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, 2013 WL 1655990 (S.D.N.Y. Apr. 17, 2013) and each of the other cases cited by Defendants for this proposition are inapt. Mot. 28. Unlike here, the plaintiff failed to sufficiently plead the occurrence of a servicer default and the RMBS trustee's knowledge thereof. Instead, the court found that the claims based on the trustee's and servicer's alleged wrongful conduct were inactionable.

courts in this District have considered and rejected this argument. *See Policemen's/BNY I*, 914 F. Supp. 2d at 432 ("After all, if Countrywide and Bank of America failed to cure or repurchase defective mortgages, the issuer similarly failed to 'enforce any rights with respect to any of the Collateral,' as the Indenture required it to do."); *Oklahoma Police I*, 291 F.R.D. at 66 (issuer EOD properly alleged in light of alleged failure by the seller and servicer to cure defects in the mortgage loans and/or to substitute conforming loans). Here, as in those cases, the issuer (*i.e.*, the Trust) is obligated to "enforce any rights to the mortgage loans" and must "preserve or defend title to the Trust Estate and the rights of the Indenture Trustee and the Noteholders in such Trust Estate against the claims of all persons and parties." BP-WF ¶269; BP-DB ¶291; NCUA ¶¶105, 408; PL ¶¶321-25; RP ¶49. Consequently, known and unremedied Seller and Servicer defaults constitute both a direct breach of the SSA and a violation of the issuer's duties under the Indenture.

### D. Plaintiffs Allege Plausible And Sufficient Facts To Infer The Trustees' Knowledge Of Events Of Default

Defendants assert that for 233 DB Trusts and 38 WF Trusts, the GAs "require the Responsible Officer's receipt of written notice" to allege knowledge. Mot. 30. The plain language of this provision – namely, that the "Trustee shall not be **deemed** to have knowledge" – does not require written notice to establish actual knowledge. In *BNP Paribas*, the court rejected the same argument made here noting the mere fact that a trustee is not "deemed" to have actual knowledge does not negate the trustee's duty to act if it, in fact, had actual knowledge of a default. 778 F. Supp. 2d at 395-98. The GAs, including those with a written notice requirement, require the trustee to act if it has actual knowledge of the occurrence of an EOD.[34] Defendants' interpretation of the

---

[34] *See, e.g.*, PL, Ex. C § VII, PPSI 2005-WLL1 PSA § 8.01; Quinn Decl., Ex. 505, RAST 2006-A6 PSA § 10.05; Sidman Decl., Ex. 168, MLMI 2004-HE2; Quinn Decl., Ex. 289, INDX 2004-AR1 PSA § 7.03(b); Sidman Decl., Ex. 177, MLMI 2006-HE1.

written notice language attempts to nullify these other provisions of the GAs and "read[ing] out the 'actual knowledge' language is contrary to well-established principles of contract construction." *BNP Paribas*, 778 F. Supp. 2d at 397.

Moreover, for 93 DB Trusts and 22 WF Trusts, the PSAs expressly provide that the trustee is deemed to have knowledge of an EOD if a Responsible Officer has "actual knowledge" *or* if the trustee receives "written notice."[35] DeLange Decl. Ex. 9, Charts 11, 12. Plaintiffs' detailed allegations of Defendants' actual knowledge cited above are more than sufficient to establish notice of EODs triggering Defendants' duties to act prudently to protect the interests of Holders.[36]

### E.    The No-Action Clauses Do Not Bar Plaintiffs' Breach Of Contract Claims

It is well-settled that the pre-suit requirements of a No-Action Clause may not be construed to bar a Holder's claims against an indenture trustee, since it would be "absurd to require the debenture holders to ask the Trustee to sue itself." *Cruden v. The Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992); *see also Ellington Credit Fund, Ltd. v. Select Portfolio Servicing*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011); *Peak Partners, L.P. v. Republic Bank,* 191 Fed. App'x 118, 126 n.11 (3d Cir. 2006). Ignoring this authority, Defendants contend the "No-Action Clauses" prohibit these lawsuits because certain pre-suit conditions – which require written notice of default, a demand from 25% of the Holders, and an offer of reasonable indemnity to Defendants – were not met. Mot. 31-32. Defendants are wrong. *See*, *e.g.*, *Sterling Fed. Bank*, 2010 WL 3324705, at *4 (rejecting

---

[35] Defendants do not address Plaintiffs' allegations establishing that written notice triggering EODs had been provided. *See* BP-WF ¶¶249, 251-52; BP-DB ¶¶271, 273-74; NCUA ¶¶291-93, 383-84; PL ¶¶317, 329-32. Defendants' motion should be denied for this additional reason.

[36] The "prevention doctrine" also precludes Defendants' contention that written notice of an EOD is a condition precedent to its post-EOD duties. Under this interpretation, Defendants' own breach – its failure to give notice of an EOD of the Servicer under Section 7.01 – would relieve Defendants of their duties. *BNP Paribas*, 778 F. Supp. 2d at 398 (A trustee "may not insist on a written notice requirement where its own breaches caused the failure of this requirement to be met").

RMBS trustee's unsupported request to parse the no-action clause's requirements and holding that *Cruden* and *Peak Partners* impliedly rejected that approach); *Bankers Ins. Co. v. DLJ Mortg. Capital, Inc.*, 2011 WL 2470226, at *2 (M.D. Fla. Mar. 17, 2011) *report and recommendation adopted*, 2011 WL 2470615 (M.D. Fla. June 21, 2011) (rejecting RMBS trustee's unsupported request to sever the demand requirement and enforce the remaining pre-suit requirements of the no action clause).

## V.     PLAINTIFFS ADEQUATELY ALLEGE TIA VIOLATIONS

The TIA essentially codifies Defendants' post-default contractual duties, as it mandates that the trustee must provide notice within 90 days after a default to all indenture security holders. 15 U.S.C. § 77ooo(b). Further, the trustee is held to a "prudent person" standard. 15 U.S.C. § 77ooo(c). Without any supporting case law, and despite a mountain of contrary authority, Defendants argue that the TIA fails to provide a private right of action. Moreover, despite taking no action to protect the Indenture Trusts and their investors, Defendants claim they did not violate their duties under the TIA. Defendants' contentions are without merit.[37]

### A.     The TIA Creates An Implied Private Right Of Action

Courts have consistently recognized a private right of action under Section 315 of the TIA. *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1338 (S.D.N.Y. 1996); *Zeffiro v. First Pa. Banking & Trust Co.*, 623 F.2d 290, 295–99 (3d Cir. 1980) (collecting cases); *In Re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 203 (C.D. Cal. 1976), *aff'd*, 603 F.2d 1353 (9th Cir. 1979); *Morris v. Cantor*, 390 F. Supp. 817, 822 (S.D.N.Y. 1975); *see also Caplin*

---

[37] Defendants' challenge to Plaintiffs' TIA Section 315(a) claim is misplaced. Mot. 18-19, citing *Policemen's/BNYM I*, 914 F. Supp. 2d at 429. Plaintiffs' claim is predicated on Defendants' failure to provide notice of defaults (15 U.S.C. § 77ooo(b)) and failure to act prudently following an EOD (15 U.S.C. § 77ooo(c)) in violation of Sections 315(b) and (c).

*v. The Marine Midland Grace Trust Co.*, 406 U.S. 416, 426 n.17 (1972) (suggesting that the TIA creates a private right of action, but declining to decide the issue).

In *Zeffiro*, the Third Circuit set forth a full and persuasive analysis of why the right to sue under Section 315 of the TIA is inferred. 623 F.2d at 295-99. The Second Circuit has cited *Zeffiro* with approval, and acknowledged that it "established a private cause of action under the [TIA]." *Bluebird Partners*, 85 F.3d at 974. Thereafter, district courts within the Second Circuit have repeatedly followed *Bluebird* and upheld claims brought by private litigants under the TIA, including claims under the same sections Plaintiffs allege Defendants violated. *See, e.g.*, *LNC*, 935 F. Supp. at 1339 (holding that section 315(c) of the TIA, which requires an indenture trustee to act as "prudent man" in case of default, creates private right of action). These courts found that both the statutory text and legislative history of the TIA support the inference that Congress intended to permit a private right of action. *Id.* (collecting cases).

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 164 (2008), is inapt.[38] There, the Supreme Court held that the implied private right of action under Section 10(b) of the Exchange Act did not extend to aiding and abetting. The Supreme Court's analysis was driven by the fact that at the time of passing the PSLRA, Congress was prompted to create an express cause of action for aiding and abetting; however, Congress rebuffed these pleas when it passed Section 104 of the PSLRA directing the SEC (not private litigants) to prosecute aiders and abettors. Here, with the TIA, no such evidence of Congressional intent to overrule the implied right of action exists. To the contrary, when Congress amended the TIA in 1990, the Senate Report

---

[38] Defendants' reliance on *Alexander v. Sandoval*, 532 U.S. 275 (2001) is similarly misplaced. Like *Stoneridge*, the case merely holds that a private cause of action exists if there is Congressional intent to create one. *Id.* at 289. For the reasons articulated by the Second Circuit in *LNC* and the Third Circuit in *Zeffiro*, such Congressional intent exists.

stated that the amendment was intended to "codify the holdings of *Zeffiro v. First Pennsylvania Banking and Trust Co.*, 623 F. 2d 290 (3rd Cir. 1980), and *Morris v. Cantor*, 390 F. Supp. 817 (S.D.N.Y. 1975), finding private rights of action for enforcement of mandatory indenture terms." S. Rep. No. 101-155, at 31 (1989). Accordingly, there is an implied private right of action under the TIA.

### B.      Plaintiffs Properly Allege Defendants Violated TIA Section 315(b)

Defendants claim the Complaints do not state a claim under Section 315(b) because they do not adequately allege an Indenture EOD. Even if this were true (which it is not), this perceived deficiency would not dispose of the claim. Section 315(b)'s notice duty is triggered by a "default," not an "Indenture Event of Default." *See Policemen's/BofA II*, 943 F. Supp. 2d at 441 ("[Section 77ooo(b)] speaks of "defaults," without limiting that term to the defaults defined in the PSA."); *VNB Realty, Inc. v. U.S. Bank, N.A.*, 2014 WL 1628441, at *4 (D.N.J. Apr. 23, 2014). Under Section 315(b), a default is the "omission or failure of a legal or contractual duty." *Policeman's/BofA II*, 943 F. Supp. 2d at 441. As noted above, the Complaints detail myriad defaults in the Trusts, Defendants' knowledge thereof, and Defendants' violations of Section 315(b) when they repeatedly failed to provide Holders the required notice.[39] Accordingly, Plaintiffs' have sufficiently alleged that Defendants' violated of Section 315(b).

### C.      Plaintiffs Properly Allege Defendants Violated TIA Section 315(c)

Section 315(c) requires that "[t]he indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture,

---

[39] Additionally, Section 315(b) uses the term "known to the trustee." Because Plaintiffs plausibly allege Defendants' actual knowledge of defaults, the Court need not determine whether the term "known" means actual knowledge or constructive knowledge.

and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c). For 3 Trusts, the Indentures do not define the term "default."[40] Thus, for these Trusts, the term "default" should be given its ordinary meaning, similar to Section 315(b), and both an Issuer EOD and Seller and Servicer breaches will trigger Defendants' prudent person obligations.

For the remaining Indentures, "Default" means "[a]ny occurrence which is or with notice or the lapse of time or both would become an Event of Default." *See*, *e.g.*, BP-WF ¶271; BP-DB ¶293; PL ¶323. All of the Indentures incorporate the SSA. Under the SSAs for of the Trusts, an EOD occurs where the Servicer materially breaches the SSA. Again, either an Issuer EOD, or Servicer breaches trigger Defendants' prudent person obligations.

As detailed above, the Complaints include detailed allegations of both Issuer EODs and Servicer breaches for all of the Indentures. Accordingly, Plaintiffs' allegations sufficiently allege Defendants' violations of Section 315(c).

## VI.    PLAINTIFFS ALLEGE STREIT ACT VIOLATIONS

Defendants' motion to dismiss Plaintiffs' Streit Act claims is fundamentally flawed as to each of their three arguments. *First*, under the Second Circuit's analysis in *Policemen's/BNY Appeal*, RMBS are "direct" investments in the underlying mortgages and not "collateral trusts," as the Court held that RMBS are "'certificate[s] of interest or participation in two or more securities having substantially different rights and privileges,' namely, the numerous mortgage loans held by each trust." *Policemen's/BNY Appeal*, 775 F.3d at 165 (citation omitted). The Second Circuit reasoned, "payments on the certificates are contingent on the cash flows generated by the

---

[40] FBRSI 2005-5, RVMLT 2007-2A, TMTS 2006-8.

underlying mortgage loans." *Id.* RMBS are "mortgage investments"[41] as they are "bonds, notes or other evidence of indebtedness" that are "held by more than one person" and are secured by "mortgages." N.Y. Real Prop. Law § 125. Each mortgage underlying the Certificates was required to be endorsed "in blank" to the trustee "for the benefit of the Certificateholders." PL Ex. C, Section III. The trustee's right to foreclose on those mortgages was similarly for the benefit of Certificateholders and, thus, the Certificates are surely "secured by a mortgage or mortgages."[42] By definition, a collateral trust bond is an instrument "representing a debt secured by the deposit of another security with a trustee." *See* Black's Law Dictionary (10th Ed.).[43]  RMBS do not remotely resemble collateral trust bonds.

*Second*, citing no case law for the proposition, Defendants argue that Plaintiffs' claims are predicated on "non-Streit Act duties." Mot. at 32. The Streit Act was enacted to address

> the obvious injustice and futility countenanced by strict adherence to the common-law rule . . . . [T]he legislature almost 60 years ago enacted Real Property Law § 126 requiring indenture trustees appointed in connection with "mortgage investments" "[i]n the case of an event of default (as such term is defined in such instrument), to exercise such of the rights and powers vested in the trustee by such instrument, and to use the same degree of care and skill in their exercise as a prudent

---

[41] The Certificates identify themselves as "mortgage investment[s]." *See, e.g.*, DeLange Decl. Ex. 10 ("This Certificate represents ownership of a 'regular interest' in a 'real estate mortgage investment conduit.'").

[42] Alternatively, the PSAs also expressly create a security interest in real property providing that "the Depositor hereby grants to the Trustee for the benefit of the Holders of the Certificates a first priority security interest in . . . all property constituting the Trust Fund to secure payment of the Certificates."

[43] *Prudence Realization Corp. v. Atwell*, 35 N.Y.S.2d 1001 (1st Dep't 1942), cited by Defendants (Mot. at 32), has no application here. *Prudence* involved a trust holding neither real estate nor mortgages, but rather "collateral security consist[ing] of various kinds of personal property" such as cash, government obligations, and bonds. *Id*. at 1003. The *Prudence* trust fits squarely within Black's Law Dictionary definition of a "collateral trusts" because it was merely a vehicle to hold collateral to secure corporate debt and would only be drawn down if the corporation failed to pay the debt.

man would exercise or use under the circumstances in the conduct of his own affairs."

*Beck v. Mfrs. Hanover Trust Co.*, 218 A.D.2d 1, 12-13 (1st Dep't 1995) (citations omitted).[44] Here, Plaintiffs allege that EODs occurred and that Defendants failed to act "with due diligence, prudence and care" to address the EODs and other defaults.

*Third*, Defendants argue that the Streit Act does not give rise to a private cause of action. New York courts consistently have recognized a private right of action under the Streit Act. *See, e.g.*, *Groseclose v. The Merchs. Nat'l Bank & Trust Co. of Syracuse*, 71 Misc.2d 111, 355 N.Y.S.2d 652 (N.Y. Sup. Ct. 1972) (plaintiffs holding 15% of outstanding mortgage-backed bonds brought claim under Streit Act and court ordered trustee to take actions to protect the rights of all the bondholders consistent with the Streit Act). In addition, in *Harper*, the court expressly recognized that a plaintiff may sue under the Streit Act to compel the trustee's performance or sue for damages "or both." 38 N.Y.S.2d at 510.[45]

Accordingly, Plaintiffs have stated a claim for violations of duties under the Streit Act.

---

[44] *See also In re Colonial Trust Co.*, 67 N.Y.S.2d 534, 539 (N.Y. Sup. Ct. 1946) (the Streit Act "made more definitive the authority and obligations of the indenture and voting trustees concerned with real property which constitutes the underlying security for mortgage investments."); *Harper v. Larchmont Yacht Club*, 38 N.Y.S.2d 505, 509 (N.Y. Sup. Ct. 1942) (Section 126(1) creates an "absolute requirement . . . that the trustee act 'with due diligence, prudence and care'" upon an EOD).

[45] The plaintiff in *Harper* had sued the issuer, not the trustee, and sought rescission or damages, but the court held that the plaintiff should rather enforce the trustee's dereliction of duties under the Streit Act. The fact that *Harper* contemplates a claim for money damages under the Streit Act is clear as the court noted the plaintiff could sue for "both" equitable relief and money damages for failure to pay interest.

## VII. PLAINTIFFS ADEQUATELY ALLEGE TORT CLAIMS

Defendants claim Plaintiffs' tort claims are duplicative of their contract claims.[46] Mot. 33. But Plaintiffs' tort claims are predicated upon Defendants' breach of its two unwaivable, "***extra-contractual***" duties to Holders: (i) the duty to avoid conflicts of interest; and (ii) the duty to "perform all basic, non-discretionary, ministerial tasks with due care." *Ellington*, 837 F. Supp. 2d at 191–92; *AG Capital Funding Partner, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 157 (2008) ("an indenture trustee owes a duty to perform its ministerial functions with due care, and if this duty is breached the trustee will be subjected to tort liability."). Although these duties may be connected with and dependent upon the indenture, an indenture trustee's breach of these duties gives rise to independent tort claims. *Id*. Moreover, if the breach occurs subsequent to an EOD, such conduct gives rise to claims for breach of fiduciary duty. *BNP Paribas*, 778 F. Supp. at 401.[47]

Defendants erroneously contend the economic loss doctrine bars Plaintiffs' tort claims. Mot. 33. However, Plaintiffs seek more than economic relief. BP-WF & BP-DB, Prayer for Relief at ¶(c); NCUA, Prayer for Relief at A, C; PL, Prayer for Relief at A, C. Additionally, the economic loss doctrine does not apply if a plaintiff can show that the legal duty underlying the tort claim is separate from the contract claim. *See, e.g., Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d

---

[46] NCUA and PL allege that Defendants failed to provide accurate annual certifications regarding servicing as required under SEC regulations. *See* SEC Regulation AB, 17 C.F.R. § 229.1122(d)(4)(i) and (ii). This is clearly an extracontractual obligation and Defendants do not contest the adequacy of these allegations. PL ¶¶334-37; NCUA ¶¶70, 443. Thus, Defendants motion should be denied as to NCUA and PL for this additional reason.

[47] Defendants' cases are readily distinguishable. In *Ellington*, the court dismissed the breach of fiduciary duty claim because it had not "adequately alleged the existence and breach of a fiduciary duty" not because it was duplicative of the breach of contract claim. 837 F. Supp. 2d at 193. Defendants ignore the complete reasoning in *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987), which states that the legal duty independent of the contract needed to establish a negligence claim "may be connected with and dependent upon the contract."

8, 18 (2d Cir. 2000); *In re MF Global Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014). Finally, the PSAs state that "[n]o provision of this Agreement shall be construed to relieve the Trustee from liability for its own negligent failure to act or its own willful misconduct." That the GAs expressly reserve tort claims against Defendants makes it "improper to apply the economic loss doctrine to dismiss Plaintiff's tort claims." *Burns v. Del. Charter Guarantee & Trust Co.*, 805 F. Supp. 2d 12, 26 (S.D.N.Y. 2011).

Defendants further argue that the breach of loyalty claims fail because Plaintiffs do not allege that Defendants personally benefitted at the investors' expense. But the Complaints detail Defendants' unreasonable refusal to take action against Sellers and Servicers at the Trusts' and certificateholders' expense because it would have exposed Defendants' own misconduct in their roles as Sellers and Servicers for other RMBS trusts in which these same entities served as either trustee or servicer. BP-WF ¶¶500-22; BP-DB ¶¶510-53; NCUA ¶¶13-14; PL ¶¶156-64; RP ¶¶58, 145-46. Courts have repeatedly upheld identical claims. *Commerce Bank v. U.S. Bank Nat'l Ass'n,* 2013 WL 8338105, at *5 (W.D. Mo. Nov. 18, 2013); *VNB Realty*, 2014 WL 1628441, at *6 (same).

Wells Fargo's recent appointment of a separate trustee to evaluate and potentially institute "put-back" suits against sellers does not diminish, but rather strengthens Plaintiffs' conflict of interest claims. Mot. 35. Despite knowing of the sellers' R&Ws breaches and EODs as early as 2009, when repurchase claims were timely, Wells Fargo waited until 2012-2013 to begin seeking their appointment, after the six-year statute of limitations for the Trusts' contractual put-back claims had arguably already run. Tellingly, under the terms of its appointment, the separate trustee is unable to investigate or pursue claims against Wells Fargo for its wrongful conduct. Similarly, that Deutsche Bank has pursued common sellers and servicers in limited instances does not weaken Plaintiffs' breach of contract claims. Deutsche Bank only pursued litigation after certificateholders

-34-

were able to cobble together the requisite voting right threshold and provide Deutsche Bank with binding directions. Significantly, after learning of the defective loans these sellers sold to the Trusts and their widespread abandonment of underwriting, Deutsche Bank inexplicably failed to pursue claims on behalf of the Trusts, or against other solvent responsible parties.

Finally, Wells Fargo's attempt to dismiss the negligent misrepresentation claims fails. (Mot. at 35.) Although alleging particularity is not required,[48] both PL and NCUA have identified false certifications provided by Wells Fargo in Form 10-Ks and remittance reports required under Regulation AB. *See* NCUA ¶¶70, 451-57; PL ¶¶334-37, 414-19. In addition, the Second Circuit has long described trustees and indenture trustees as having a "special relationship . . . with both the issuer and the debenture holdings under the indenture." *See, e.g., Elliott Associates v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992) (holding that a plaintiff may recover for negligent misrepresentation "where the defendant owes [plaintiff] a fiduciary duty").

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated:  May 29, 2015                                 Respectfully submitted,

                                                                    BERNSTEIN LITOWITZ BERGER
                                                                       & GROSSMANN LLP

                                                                    */s/ Timothy A. DeLange*
                                                                    TIMOTHY A. DeLANGE

                                                                    Blair A. Nicholas (admitted *pro hac vice*)

---

[48] *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 157 (2d Cir. 2012) ("claims not premised on allegations of fraud are 'ordinary notice pleading case[s], subject only to the 'short and plain' requirements of Federal Rule of Civil Procedure 8(a)"); *Tricontinental Indus. Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

Timothy A. DeLange (admitted *pro hac vice*)
Benjamin Galdston (admitted *pro hac vice*)
Lucas E. Gilmore (admitted *pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel: (858) 793-0070
Fax: (858) 793-0323

*Counsel for BlackRock Plaintiffs*


KOREIN TILLERY LLC

*/s/ John A. Libra*
JOHN A. LIBRA

George A. Zelcs
John A. Libra
Matthew C. Davies
Max C. Gibbons
205 North Michigan Plaza, Suite 1950
Chicago, Illinois 60601
Phone: (312) 641-9750
Fax: (312) 641-9760
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com

   -and-

Stephen M. Tillery
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, Missouri 63101-1625
Phone: (314) 241-4844
Fax: (314) 241-3525
stillery@koreintillery.com

*Attorneys for PL Plaintiffs*

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Steven S. Fitzgerald*
STEVEN S. FITZGERALD

David H. Wollmuth
Randall R. Rainer
Michael C. Ledley
Steven S. Fitzgerald
Niraj J. Parekh
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
Fax: (212) 382-0050
dwollmuth@wmd-law.com
rrainer@wmd-law.com
mledley@wmd-law.com
sfitzgerald@wmd-law.com
nparekh@wmd-law.com

*Attorneys for Plaintiffs for All Claims Except to the Extent they Relate to FFML 2006-FAA*


KOREIN TILLERY LLC

*/s/ John Libra*

GEORGE A. ZELCS
JOHN LIBRA
MATTHEW DAVIES
MAXIMILIAN C. GIBBONS
CHRISTOPHER J. STUART
CHAD E. BELL
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel: (312) 961-6112
Fax: (314) 241-3525
gzelcs@koreintillery.com
jlibra@koreintillery.com
mdavies@koreintillery.com
mgibbons@koreintillery.com
cstuart@koreintillery.com
cbell@koreintillery.com
   -and-

STEPHEN M. TILLERY
505 North Seventh Street, Suite 3600
St. Louis, MO 63101-1625
Tel: (314) 241-4844
Fax: (314) 241-3525
stillery@koreintillery.com


KELLOG, HUBER, HANSEN, TODD, EVANS
   & FIGEL, PLLC

DAVID C. FREDERICK
WAN J. KIM
GREGORY G. RAPAWY
SCOTT K. ATTAWAY
BENJAMIN P. TAIBLESON
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel: (202) 326-7951
Fax: (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
grapawy@khhte.com
btaibleson@khhte.com


WOLLMUTH MAHER & DEUTSCH LLP

DAVID H. WOLLMUTH
WILLIAM A. MAHER
NIRAJ J. PAREKH
RANDALL R. RAINER
STEVEN S. FITZGERALD
RYAN A. KANE
DANIEL A. D'AQUILA
500 Fifth Avenue
New York, NY 10110
Tel: (212) 382-3300
Fax: (212) 382-0050
DWollmuth@wmd-law.com
wmaher@wmd-law.com
nparekh@wmd-law.com
RRainer@wmd-law.com
sfitzgerald@wmd-law.com
rkane@wmd-law.com
ddaquila@wmd-law.com

Michael J. McKenna, General Counsel
John K. Ianno, Associate General Counsel
NATIONAL CREDIT UNION
ADMINISTRATION
1775 Duke Street
Alexandrai, VA 22314
mikem@ncua.gov
johni@ncua.gov

*Counsel for Plaintiffs National Credit Union*
*Administration Board, et al.*


ROBBINS GELLER RUDMAN
   & DOWD LLP

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

Christopher M. Wood
414 Union Street, Suite 900
Nashville, TN 37219
Tel: (615) 244-2203
Fax: (615) 252-3798

Steven W. Pepich
Jennifer N. Caringal
Arthur C. Leahy
Cody R. Lejeune
Ashley M. Robinson
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423

Samuel H. Rudman
58 South Service Road, Suite 200
Melville, NY 11747
Tel: (631) 367-7100
Fax: (631) 367-1173

*Counsel for Plaintiff Royal Park Investments*
*SA/NV*