# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

Direct Number: (212) 326-3771
jjurgens@jonesday.com

April 20, 2016

**VIA ECF AND HAND DELIVERY**
Hon. Sarah Netburn
United States Magistrate Judge
U.S. District Court
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *BlackRock Allocation Target Shares: Series S Portfolio, et al. v. Wells Fargo Bank, N.A.*, 14-cv-9371

Dear Magistrate Judge Netburn:

We are attorneys for Wells Fargo Bank, N.A. ("Wells Fargo"), defendant in the above-referenced action. We write in accordance with the Court's instructions at the April 13 conference. In particular, we write to provide the Court with Wells Fargo's revised proposal for search terms and custodians reflecting the Court's guidance. We also write to update the Court on the status of Plaintiffs' compliance (or lack thereof) with the Court's directions.

Since the April 13 conference, the parties have met and conferred through email correspondence and a one-hour teleconference on April 19. The parties have been unable to reach an agreement on a search term proposal for various reasons, including Plaintiffs' inability to provide any hit information substantiating their ongoing burden objections. Despite being unable to tailor its search proposal based on information the Court ordered Plaintiffs to provide, Wells Fargo has included a significantly narrowed search proposal with this letter along with a revised custodian list. In light of Plaintiffs' conduct and the need to move forward with discovery, Wells Fargo respectfully requests an order requiring Plaintiffs to: (i) implement the attached search proposal using Wells Fargo's proposed custodians without delay; (ii) comply with the Court's direction to provide Wells Fargo with sample "core documents"; and (iii) provide witnesses for 30(b)(6) depositions to identify and locate "core documents" beyond ESI.

## Hit Reports

Plaintiffs have forfeited any burden argument based on the number of documents returned by Wells Fargo's search proposal. Plaintiffs have not provided *any hit information*, much less the plaintiff-by-plaintiff hit report that the Court instructed them to provide at the April 13 conference.[1]

---

[1] Tr. at 53 ("I appreciate Mr. Jurgens' comment that without the hit information, it's really hard to know. . . . try to review the proposal on the table. . . and see what that's producing. . . ."); 67 ("I'd like to see hit information. If there's going to be an argument that this is going to be burdensome what's the volume that we're talking about here");

ALKHOBAR • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DUBAI
DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PITTSBURGH • RIYADH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Without that information, Wells Fargo has been unable to properly evaluate Plaintiffs' burden arguments, or account for "hits" in modifying its searches.

After creating the impression at the April 13 conference that they already had hit reports in hand (*see, e.g.*, Tr. at 37-38 (referring to 3 million hits based on "analysis" delivered to them on April 12), Plaintiffs revealed on April 19 that they never had an actual hit report for Wells Fargo's prior search proposal. They stated further that it would take weeks to generate the court-ordered hit report. These revelations came after numerous requests by Wells Fargo for the hit report that Plaintiffs alluded to when they stood before the Court on April 13. Wells Fargo did not understand why Plaintiffs were refusing to turn over the hit report that they relied on at the April 13 conference. But it is now clear why. An actual hit report – as that term is commonly understood – did not exist. As Plaintiffs revealed to Wells Fargo on April 19, the numbers they quoted to the Court were based on extrapolations from samples. Instead of disclosing that information to the Court during the April 13 conference or otherwise qualifying their representations, Plaintiffs allowed everyone to believe that an actual hit report existed. On April 19, Wells Fargo also asked Plaintiffs if they had run hit reports on the proposal that Wells Fargo made on February 5 that Plaintiffs did not respond to until March 21. Plaintiffs refused to answer. All of this, we submit, speaks volumes about the "burden" arguments that Plaintiffs have made – they are baseless.

Moreover, after agreeing to provide hit reports at the April 13 conference, Plaintiffs now claim that it is burdensome to do so. In particular, Plaintiffs stated on April 19 that generating hit reports would be problematic for their e-discovery vendor because it would require the vendor to dedicate "too much machine time" to the court-ordered task.[2] Plaintiffs said nothing at the April 13 conference to suggest that providing hit reports would be difficult or impossible. To the contrary, Plaintiffs stated that they were "happy to provide hit reports." Tr. at 41.

In sum, Plaintiffs have waived any burden arguments based on hit reports. Plaintiffs should be compelled to run searches, review documents, and make productions without regard to any "hit information" that they intend to put before the Court. In any event, any burden arguments that Plaintiffs may have had are addressed and mooted by Wells Fargo's current search proposal even if

---

(continued…)

68-69 (running Wells Fargo's searches across ESI of custodians being used in HSBC Action "is a fair proposal" and the "most pure information" should be included in hit reports); *see also* Tr. at 38 ("[dedicate] the next week of time to running some searches because I think part of the helpful information is hit results"), 52 ("do some searches and give some hit results").

[2] Plaintiffs offered, instead, to generate hit reports of some kind for just two custodians – one from PIMCO and one from BlackRock. While that might reveal some information about those two Plaintiffs, it would say nothing about the burden arguments of the three plaintiffs for whom burden might be a legitimate issue – DZ Bank, Kore and Sealink.

Plaintiffs – despite their actions – have not forfeited the right to make any further burden arguments based on hit information.

**Search Terms**

By way of background, after months of negotiations and one-sided compromises, Wells Fargo moved to compel Plaintiffs to run the ESI searches reflected in Amended Exhibit 1 (Dkt. 111-1) to its April 1 motion to compel (Dkt. 110). Plaintiffs submitted a counterproposal. (Dkt. 113). The competing proposal reflected only three material disputes. First, Plaintiffs refused to run any of the "Other Targeted Searches" that Wells Fargo proposed. Second, Plaintiffs refused to run any of the "Plaintiffs-Specific Searches" that Wells Fargo proposed. Third, with respect to "Search 3," Wells Fargo wanted Plaintiffs' search to capture any documents that included one of the entity names on the "Entity List" *and* one of the "Core Terms" *and* one of the words on the "Term List." Plaintiffs wanted the "Core Terms" to appear within 25 words of the words on the "Term List".[3]

As Wells Fargo explained during the April 13 conference, the "Other Targeted Searches" and "Plaintiff-Specific Searches" are tied to particular topics and document requests, including requests that Plaintiffs agreed to months ago. Excluding those searches would be tantamount to forcing Wells Fargo to abandon its document requests and allowing Plaintiffs to walk away from their commitments. At the April 13 conference, the Court provided guidance to Wells Fargo with respect to the "Other Targeted Searches" and the "Plaintiff-Specific Searches." In particular, the Court suggested that Wells Fargo consider limiting the time period for certain of those searches. Tr. at 44-45. The Court also suggested that Wells Fargo forego using certain searches for certain Plaintiffs who hold bonds issued from only one trust. Tr. at 44 ("With respect to the other targeted searches, I think as well that parties should be treated differently. If you have a party that really has one transaction, I think that should be treated differently. . . ."). The Court also raised concerns about the lack of any proximity connector being used in proposed Search 3. Tr. at 52 ("I'm less troubled by the list [of 300+ terms] and more troubled by the lack of any sort of relevancy connector").

Wells Fargo's current ESI search term proposal is attached as Exhibit A. This revised search proposal reflects yet another significant compromise by Wells Fargo that adopts each and every aspect of the guidance the Court provided at the April 13 conference:

- 28 of the 43 "Other Targeted Searches" are now limited to particular time periods;
- 14 of the 43 "Other Targeted Searches" are now limited to particular Plaintiffs;
- 31 of the 34 "Plaintiff-Specific Searches" are now limited to particular time periods;

---

[3] There also were a handful of words or phrases on the Term List that Plaintiffs refused to include.

- Search 3 now includes a limiting connector that captures documents that contain the name of one of the relevant entities on the "Entity List" only if it also contains a "Core Term" that appears within 250 words of the words and phrases on the "Term List";[4]

- Search 3 now is limited to PIMCO, BlackRock, TIAA and Prudential;

- In connection with removing DZ Bank, Kore and Sealink from Search 3, we created New Search 8, which is derived from Search 3, but drastically reduces any burden by requiring those three plaintiffs to use only *two* of the 37 entities from the Entity List as part of the search; and

- We eliminated certain words and phrases from the "Term List," including words and phrases that Plaintiffs' last "Term List" proposal did not include.

We respectfully submit that Wells Fargo has addressed the issues raised during the April 13 conference in a satisfactory manner that substantially reduces any burden imposed on the Plaintiffs, particularly DZ Bank, Kore and Sealink. Consequently, Plaintiffs should be compelled to run the attached searches and begin making rolling productions without further delay.

**Custodians**

As discussed in Wells Fargo's motion to compel, Wells Fargo seeks to have Plaintiffs include additional custodians above and beyond those custodians who Plaintiffs have volunteered and those custodians Plaintiffs were ordered to include in the HSBC Action. PIMCO, for example, proposes using only 5 custodians, which is an unreasonably small number, especially in a case of this scope and magnitude. The Court compelled PIMCO to add an additional 10 custodians in the HSBC Action. We respectfully submit that Wells Fargo is entitled to those 10 custodians, as well as additional PIMCO custodians so that the number of PIMCO custodians reflects the scope and nature of its involvement and stake in this action, and so that PIMCO is treated the same way TIAA, BlackRock and Prudential, each of which has volunteered to use many more custodians than PIMCO. Wells Fargo also submits that it is entitled to a limited number of additional custodians from the other Plaintiffs.

During the April 13 conference, the Court expressed concern regarding the number of additional custodians that Wells Fargo had requested in its April 1 motion to compel. To address the Court's concerns and balance its discovery needs with the Plaintiffs' respective claims, Wells Fargo pared down its proposed custodian list substantially. *See* Exhibit B (chart comparing number of custodians). A detailed justification for each of the additional custodians sought by Wells Fargo, including those that Plaintiffs were ordered to use in the HSBC Action, is included in Exhibit C

---

[4] Plaintiffs argued in the HSBC Action that using a proximity connector of "NEAR 500" was appropriate and reasonable. Wells Fargo's proposal here is more precise than what Plaintiffs advocated in the HSBC Action. Moreover, because the universe of potentially responsive documents targeted by Search 3 is already limited by the "Entity List," using NEAR250 is not unduly burdensome.

JONES DAY

Hon. Sarah Netburn
April 20, 2016
Page 5

hereto. Wells Fargo has limited its custodian list to those individuals who played key roles with respect to the Plaintiffs' respective RMBS investment decisions, research, surveillance, modeling, and other key issues. *See* Ex. C. The summary descriptions that Wells Fargo has provided for each custodian make this clear. *Id.* These summaries are supported by materials produced by Plaintiffs that have been designated confidential (and are not included as exhibits to this letter), as well as publicly available information that justifies each proposed custodian being included in Plaintiffs' ESI searches. *See*, *e.g.*, Exs. D, E & F.[5]

Wells Fargo's revised custodian list includes each of the additional custodians that PIMCO (10), Kore (4) and DZ Bank (6) were ordered to include in the HSBC Action, as well as 12 additional custodians for PIMCO, 6 additional custodians for BlackRock, 3 additional custodians for TIAA, 4 additional custodians for Prudential, 1 additional custodian for Kore and 2 additional custodians for DZ Bank (for very limited time periods). We also have provided the relevant time period for which each custodian's ESI (*e.g.*, emails, IMs, Bloomberg messages, electronic files on networks and shared drives) should be searched. For certain other proposed PIMCO and BlackRock custodians, Wells Fargo proposes that their ESI to be searched on a limited basis solely for CUSIP numbers and Trust names, and only for certain time periods.

**30(b)(6) Depositions**

While the ESI issues discussed herein are critical, resolving those issues still does not address Plaintiffs' obligation to search for, identify and produce responsive documents beyond ESI. As Wells Fargo explained on April 13, there are categories of "core documents" that have not been produced. Tr. at 15-22, 45; Motion to Compel, Ex. 5 (Dkt. 110-5, Apr. 1, 2016).[6] Plaintiffs cannot simply rely on ESI productions. That will not satisfy their discovery obligations. During the April 13 conference, the Court suggested that 30(b)(6) depositions might be an appropriate way to help locate and identify the "core documents" that exist outside of emails. Tr. at 49. Wells Fargo requests that the Court order such depositions of each Plaintiff to take place within the next 30 days.

Respectfully submitted,

*/s/ Jason Jurgens*
Jason Jurgens

cc: All Counsel of Record (via ECF)

---

[5] In the past, Plaintiffs have baldly asserted that several of the custodians on Wells Fargo's custodian list had nothing to do with RMBS. The attached materials demonstrate that those representations were inaccurate.

[6] The Court ordered Plaintiffs to provide Wells Fargo with sample documents, including sample Investment Committee reports and meeting minutes. Tr. at 53. Plaintiffs have not provided the sample documents. Plaintiffs represented on April 19 that they were still working to identify the documents, and would eventually start producing samples on a rolling basis at some point, perhaps later this week.