# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

ATTORNEYS AT LAW

NEW YORK • CALIFORNIA • LOUISIANA

BENJAMIN GALDSTON
beng@blbglaw.com
(858) 720-3188

April 28, 2016

**VIA ECF & HAND DELIVERY**

Honorable Sarah Netburn
United States District Court for the
 Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

      Re: *BlackRock Allocation Target Shares: Series S Portfolio, et al. v. Wells Fargo Bank, N.A.*, 14-cv-09371-RMB-SN

Dear Judge Netburn:

We write in response to Wells Fargo's April 25, 2016 letter motion, which is baseless and should be denied.

First, Wells Fargo omits to inform the Court that it failed to meet and confer prior to filing its motion, as required by your Honor's Individual Rules of Practice. Indeed, when Plaintiffs proposed to meet and confer and mutually exchange ESI-related information, Wells Fargo refused and filed its motion. *See* Exhibit 1. Wells Fargo's "futility" claim is thus false, and a thin excuse for its unreasonable refusal to provide the same information it seeks to compel from Plaintiffs.

Plaintiffs respectfully request the Court put an end to Wells Fargo's practice of demanding information from Plaintiffs while refusing to reciprocate, then needlessly filing motions when it does not immediately get its way.

Second, Wells Fargo's reply argument regarding its motion to compel the use of its search terms is both improper and meritless. Plaintiffs' representations to the Court accurately and transparently reported the "hit" results and enormous burdens caused by Wells Fargo's proposed search terms. Plaintiffs faithfully reported "hit" results both with and without "family" (i.e., associated) documents. While Wells Fargo is apparently disappointed with these results, its argument that "family" documents should be excluded from this analysis defies Rule 34, applicable case law, authoritative ESI literature, the parties' prior practices, and common sense. *See* Hon. Shira A. Scheindlin and Daniel J. Capra, Electronic Discovery and Digital Evidence In A Nutshell, 2d Ed., pp. 133-35 ("It is also now beyond dispute that e-mails must be produced together with their attachments.") (collecting cases); *PSEG Power New York, Inc. v. Alberici Constructors, Inc.*, 2007 WL 2687670, at *8 (S.D.N.Y. Sept. 7, 2007) (production of emails

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

Honorable Sarah Netburn
April 28, 2016
Page 2

---

"divorced" from family attachments violates Rule 34); April 4, 2016 Notice, Office of the Clerk, D. Md., p. 2 ("All family relationships should be preserved, and all attachments should sequentially follow the parent document/email"); Matthew Bender Practice Guide: California E-Discovery and Evidence, §1.26[11], Relationships Among E-Mail "Families" Should Be Preserved ("Family relationships are important because context is important. For example, it is important to consider family relationships when conducting a privilege review. It may be that only one document in a "family" group is privileged. If this item is privileged, counsel must decide whether to designate the entire "family" as privileged, or redact this specific item and produce the rest of the family.").[1]

In assessing search terms and related burden, the relevant query is the number of documents that "hit" on the search terms, as well as all related "family" documents. To do otherwise, would exclude potentially relevant, responsive information. As one ESI expert has explained, "[k]eywords are frequently used by parties to filter the set of collected ESI. When following such a process, any documents that contain a keyword (*and any document 'family members'*) are usually placed in a set for review, while the rest of the documents are set aside and not reviewed."[2]

Confirming this elementary principle, a leading ESI "Search Guide" manual advises:

> [T]he documentation of search results should also include document counts that are compound complete or including all family members. For example, one attachment may contain a search 'hit' but if the email family includes a parent email with 14 attachments including attached emails that also have attachments, then the search result including full families would be much larger than the one recorded 'hit.' *It is quite helpful . . . to know the total number of documents returned, including all parents and attachments* as all of the resulting items might then need to be reviewed.[3]

Similarly, Kroll Ontrack, defines "family" in the ESI context as "a group of documents that are related to each other" and cautions that "[b]reaking up families during collection or review can have consequences."[4] Finally, The Sedona Principles, considered one of the foremost authorities on e-discovery, cautions "[d]iscovery should not be permitted to continue indefinitely merely because a requesting party can point to undiscovered documents and electronically stored

---

[1] Moreover, Wells Fargo's insistence on excluding "family" documents raises grave questions about Wells Fargo's own ESI practices and the completeness of its productions under Rule 34, which Plaintiffs have separately challenged.

[2] Thomas J. Svoboda, *Search Strategy Advice From A Top E-Discovery Counsel*, The Metropolitan Corporate Counsel, April 2012.

[3] EDRM Search Guide, May 7, 2009, §8.1.1.

[4] www.ediscovery.com/resources/glossary.

Honorable Sarah Netburn
April 28, 2016
Page 3

_____

information when there is no indication that the documents or information are relevant to the case, or further discovery is disproportionate to the needs of the case." The Sedona Principles, 2d Ed., June 2007, Comment 6.b., p.38.

      For all of these reasons, Wells Fargo's motion, as well as its prior application, should be denied.

                              Respectfully submitted,

                              Benjamin Galdston