```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/9/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BLACKROCK ALLOCATION TARGET
SHARES: SERIES S PORTFOLIO, et al.,

                Plaintiffs,          14-CV-09371 (KPF)(SN)

    -against-                      **OPINION & ORDER**

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

                Defendant.

------------------------------------------------------------X
------------------------------------------------------------X

ROYAL PARK INVESTMENTS SA/NV,

                Plaintiff,          14-CV-09764 (KPF)(SN)

    -against-

WELLS FARGO BANK, N.A.,

                Defendant.

------------------------------------------------------------X
------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION
BOARD,

                Plaintiff,          14-CV-10067 (KPF)(SN)

    -against-

WELLS FARGO BANK, N.A.,

                Defendant.

------------------------------------------------------------X

```
-----------------------------------------------------------------X
```
**PHOENIX LIGHT SF LTD. et al.,**

                **Plaintiffs,**           14-CV-10102 (KPF)(SN)

        -against-

**WELLS FARGO BANK, N.A.,**

                **Defendant.**
```
-----------------------------------------------------------------X
-----------------------------------------------------------------X
```
**COMMERZBANK A.G.,**

                **Plaintiff,**            15-CV-10033 (KPF)(SN)

        -against-

**WELLS FARGO BANK, N.A.,**

                **Defendant.**
```
-----------------------------------------------------------------X
```

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiffs seek the non-privileged information associated with the loans and RMBS trusts at issue in Wells Fargo's Issue Management Module ("IMM") Database. On November 22, 2016, the Court denied plaintiffs' motion to compel production of the IMM Database. See ECF No. 258 at 3. The Court's decision was based on the declaration of Mary Sohlberg, Vice President of the Corporate Trust Services' Structured Products Group, stating that the information stored in the Database is "substantially derived from privileged attorney-client communications with external and internal counsel." Id. In their February 9, 2017 letter, however, plaintiffs contend that this representation is contradicted by Sohlberg's subsequent deposition testimony, which suggests that the Database actually contains factual information

2

regarding repurchase claims and servicer defaults recorded and monitored by the Default and Restructuring Group ("DRG"). See ECF No. 345. Essentially, plaintiffs argue, the Database is a factual repository "created and maintained by business personnel to track business issues," id. at 2, and that the bulk of the Database's contents was generated and used by non-lawyers in the ordinary administration of Wells Fargo's duties as trustee. Wells Fargo reaffirms that the information in the Database is privileged and not subject to production. To resolve this issue, the Court ordered the parties on February 13, 2017, to submit exemplars reflecting the information in the IMM Database.

    The Court has reviewed the following materials: (1) excerpts of the IMM Database reports for issues relating to five trusts selected by plaintiffs after a meet and confer with Wells Fargo on February 16, 2017 (Exhibit 1 of Wells Fargo's submission); (2) excerpts of the February 1, 2017 IMM Database report selected by Wells Fargo (Exhibit 2 of Wells Fargo's submission); and (3) secondary documents surrounding the creation and purpose of the Database, such as the CTS Watchlist Committee Charter, Wells Fargo's May 2013 Issue Management and Consulting Process Training presentation, and the DRG's Event of Default reporting guidelines (Exhibit 3 of Wells Fargo's submission and Exhibits 1 and 2 of plaintiffs' submission, respectively).

    Applying the attorney-client privilege depends on "whether the communication was generated for the purpose of obtaining or providing legal advice as opposed to business advice." In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007). Obtaining legal advice must be the "predominant purpose" of a privileged communication. Favors v. Cuomo, 285 F.R.D. 187, 198 (E.D.N.Y. 2012) (internal citation and quotation marks omitted). "Communications that principally involve the performance of nonlegal functions by an attorney are not protected."

3

Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011) ("Moreover, even if a business decision can be viewed as both business and legal evaluations, the business aspects of the decision are not protected simply because legal considerations are also involved." (internal citation and quotation marks omitted)). On the other hand, the fact that legal advice is contained in a business presentation "does not render it 'business' rather than 'legal' in nature. Business transactions inevitably involve legal matters on which privileged advice is sought." JA Apparel Corp. v. Abboud, et al., No. 07 Civ. 7787 (THK), 2008 WL 111006, at *1 (S.D.N.Y. Jan. 10, 2008).

At the outset, the Court addresses the plaintiffs' contention that the information in the IMM Database cannot be privileged because the contact person for an issue entry was almost always a member of the DRG (i.e., a business person), not internal or external counsel. But just because non-lawyers are responsible for maintaining and updating the information in the Database does not automatically qualify the contents of the issue entries as business advice. Plaintiffs' assertion overlooks the reality that a member of the DRG may consult with attorneys in recording and generating responses for the IMM Database.

Based on the Court's review, the IMM Database consists of both privileged legal advice and attorney impressions, and non-privileged factual descriptions of the issues. With regards to the former category, the "Updates," "Reserve Amount," and "Potential Exposure" sections of each entry reflect counsel's strategies, impressions, and opinions, and are therefore presumptively privileged. For instance, the "Updates" for a lawsuit by a municipal plaintiff references external counsel's ongoing research into case law. Other "Updates" include notifications from counsel on tolling agreements, deal document amendments, and evaluation of settlement agreements. These sections do not relate to ordinary business matters and constitute

predominantly legal advice. Therefore, they are appropriately withheld on the basis of privilege, and Wells Fargo is not required to conduct an independent privilege review.

The "Description of Issue," however, appears in large measure to be a recording of facts as they existed at the time the entry was created. In other words, much of this section contains raw factual data, such as the role of Wells Fargo for a particular trust, the date on which a lawsuit was commenced, the specific allegations, the identity of external counsel, etc. But the "Description of Issue" is not 100 percent factual. The section also includes legal impressions and attorney advice that will need to be redacted. For example, the Description of Issue for the Serve All Help All, Inc. Litigation contains counsel's characterization of the allegations ("Beyond the . . ."). Regarding the Natixis 07-HE2 Litigation, the Description of Issue includes discussion of the similarity in language between the claims against Wells Fargo and the claims asserted in a third-party complaint. To the extent portions of the Database are produced in accordance with the Court's instructions below, Wells Fargo is directed to review the Description of Issue sections for each of the relevant entries, to redact all attorney impressions and opinions, and to produce all underlying factual information.

Plaintiffs have represented that they are seeking all non-privileged information in the IMM Database associated with the Trusts and loans in the Trusts at issue in this consolidated action. Wells Fargo represents that the volume of issue entries for the Trusts would total approximately 980 issue entries. See ECF No. 372. Wells Fargo also represents that a custom report from the Database may be programmed to return a list of both active and inactive issues for the trusts at issue. See id.

Accordingly, Wells Fargo is ORDERED to complete production of the IMM Database entries associated with the Trusts and loans in those Trusts at issue in this consolidated action,

consistent with this Court's ruling, by March 27, 2017. Production shall be made on a rolling basis.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
              March 9, 2017