```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

BLACKROCK ALLOCATION TARGET
SHARES: SERIES S PORTFOLIO, et al.,

                Plaintiffs,       14-CV-09371 (KPF)(SN)

    -against-       **OPINION & ORDER**

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

                Defendant.

------------------------------------------------------------------X
------------------------------------------------------------------X

ROYAL PARK INVESTMENTS SA/NV,

                Plaintiff,      14-CV-09764 (KPF)(SN)

    -against-

WELLS FARGO BANK, N.A.,

                Defendant.

------------------------------------------------------------------X
------------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION
BOARD,

                Plaintiff,      14-CV-10067 (KPF)(SN)

    -against-

WELLS FARGO BANK, N.A.,

                Defendant.

------------------------------------------------------------------X

1

------------------------------------------------------------------X

**PHOENIX LIGHT SF LTD. et al.,**

       **Plaintiffs,**       **14-CV-10102 (KPF)(SN)**

    **-against-**

**WELLS FARGO BANK, N.A.,**

       **Defendant.**

------------------------------------------------------------------X
------------------------------------------------------------------X

**COMMERZBANK A.G.,**

       **Plaintiff,**       **15-CV-10033 (KPF)(SN)**

    **-against-**

**WELLS FARGO BANK, N.A.,**

       **Defendant.**

------------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

  In their January 26, 2017 letter to the Court, plaintiffs claim that Wells Fargo improperly asserted privilege with regard to documents (1) relating to the ordinary administration of its contractual duties; (2) containing factual trust-related information; and (3) containing legal advice provided for the benefit of the trust or certificate holders. Plaintiffs cite several exemplar documents reflecting Wells Fargo's purportedly improper privilege assertions. Wells Fargo responds that (1) communications relating to Wells Fargo's duties as trustee are privileged; (2) the withheld documents contain more than purely factual information; and (3) the fiduciary exception to the attorney-client privilege does not apply because Wells Fargo was seeking legal advice on its own behalf and not on behalf of the certificateholders. In disposing of these privilege issues, the Court presumes the parties' familiarity with the underlying facts.

I.  **Wells Fargo's Claw-Back Objection**

In addition to challenging the merits of plaintiffs' claim, Wells Fargo raises the procedural objection that plaintiffs failed to identify entries from Wells Fargo's privilege log and instead submitted under seal seven documents that Wells Fargo designated as privileged. Wells Fargo had previously clawed back all seven documents and argues that plaintiffs violated the Protective Order by refusing to destroy or sequester the documents. But the Court, at the January 17, 2016 teleconference, had asked that the parties submit exemplar documents. See Jan. 17, 2017 Tr. at 15:24-16:8 (ECF No. 324) ("And then my practice for reviewing privilege issues is to allow both sides to select a certain number of documents. Usually I allow five for each side to select documents for me to review, so that gives the party both who's asserting the privilege to select five that they think are representative of the type of documents that they have been seeking to protect and the plaintiff can select five that they think is representative of the overreach. And then those documents are submitted in camera for my review.").  Plaintiffs were free to select as their five exemplars those documents that were on Wells Fargo's privilege log and for which it has exercised its claw back rights. In addition, the Protective Order allows for a party to submit disputed material under seal for a privilege determination by the Court. See Royal Park Inv. SA/NV v. Wells Fargo Bank, N.A., No. 14 Civ. 9764 (KPF)(SN), Amended Stipulation and Agreed Protective Order, ¶ 14(d) (ECF No. 52). Accordingly, plaintiffs' conduct was proper.

II.  **Expectation of Confidentiality**

The Court addresses first plaintiffs' general assertion that Wells Fargo failed to establish the privilege because it lacked any expectation of confidentiality. Plaintiffs cite a books and records provision of an exemplar PSA that states, "The Trustee shall afford . . . each Certificateholder upon reasonable notice during normal business hours, access to all records maintained by the Trustee in respect of its duties hereunder." ABFC 2006-OPT1 PSA, § 8.12(b).

According to plaintiffs, this provision placed Wells Fargo on notice that all of its records and documents relating to its duties as trustee are available for inspection, including documents of a legal nature.

It is implausible that a sophisticated entity like Wells Fargo would allow a boilerplate books and records provision providing for inspection to serve as a generalized waiver of attorney-client privilege. See Gulf Ins. Co. v. Transatlantic Reinsurance Co., 13 A.D.3d 278, 278 (1st Dep't 2004) (declining to rule that "a standard access to records clause in a contract waives any claim of privilege with respect to those documents"). Indeed, plaintiffs have cited no authority for such a proposition. Accordingly, Wells Fargo has not waived privilege by dint of a standard provision in the PSAs allowing for inspection.

### III. Analysis of Privilege

The attorney-client privilege protects communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance." Brennan Ctr. for Justice at NYU School of Law v. U.S. Dep't of Justice, 697 F.3d 184, 207 (2d Cir. 2012) (internal citation omitted). With regards to asserting the privilege, the "burden of establishing any right to protection is on the party asserting it." Vector Capital Corp. v. Ness Techn., Inc., No. 11 Civ. 6259 (PKC), 2014 WL 171160, at *1 (S.D.N.Y. Jan. 9, 2014) (citing Spectrum Sys. Internat'l Corp. v. ChemicalBank, 78 N.Y.2d 371, 377 (1991). Therefore, the burden is on Wells Fargo to demonstrate why the disputed documents should not be produced.

#### A. Category 1: Communications Relating to Ordinary Administration of Wells Fargo's Duties

Plaintiffs assert that Wells Fargo categorically withheld documents regarding the ordinary administration of its trustee duties any time an attorney was involved in or appeared on a communication. For example, members of the Default and Restructuring Group ("DRG")

4

reviewed repurchase demands and notices of default and regularly sought the input of external and internal counsel in doing so. Wells Fargo responds that communications regarding its obligations under the governing agreements, including how to interpret provisions, constitute privileged legal advice.

The Court's review of privilege is complicated by the particular context in which these allegedly privileged conversations occurred. By 2007 and 2008, all the players in the residential mortgage-backed securities sector knew that the industry was under stress and that litigation was highly likely. The Court is sensitive to the possibility that, to mitigate exposure and liability as a result of its business practices, entities such as Wells Fargo may have engaged counsel in decisions that were previously made by business people without the advice of counsel. Accordingly, the Court's review centers on whether the documents at issue were created primarily for a business purpose or for the purpose of obtaining legal counsel. See, e.g., In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984) (attorney-client privilege attaches only where legal advice, not business advice, is sought and given); Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962); Strategem Dev. Corp. v. Heron Internat'l, N.V., 153 F.R.D. 535, 543 (S.D.N.Y. 1994). Advice relating to "ordinary business functions," such as whether or not a loan should be repurchased, is not privileged simply by virtue of "outsourcing those business functions to counsel, or to third-parties, with counsel serving as an intermediary." U.S. Bank Nat'l Ass'n v. Citigroup Global Mkts. Realty Corp., No. 13 Civ. 6989 (GBD)(DCF), Dec. 7, 2016 Order at 4 (ECF No. 167). Legal advice, on the other hand, "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct" and is therefore not subject to disclosure. In re Cnty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007); see also JA Apparel Corp. v. Abboud, No. 07 Civ. 7787 (THK), 2008 WL 111006, at *1 (S.D.N.Y. Jan. 10, 2008) (communications regarding "the

parameters of the client's rights and obligations" under a contract are generally privileged); Upjohn Co. v. United States, 449 U.S. 383, 392 (1981) ("In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law. . . ." (internal citation and quotation marks omitted)).

Going forward, the Court sets forth the following guidance for the parties with regards to this category of privilege assertions. Documents, including emails, created in connection with a request for advice from in-house counsel regarding courses of action in connection with loan repurchase requests or requests for compliance documents may be withheld. See Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc., No. 11 Civ. 6189 (DLC), 2014 WL 1327952, at *3 (S.D.N.Y. Apr. 3, 2014) ("FHFA"). But to the extent business records created in the ordinary course of business are attached to requests for legal advice, those business records do not become privileged simply because they were sent to counsel unless they were created solely for the purpose of obtaining legal advice.

### 1. SOC / CTS Watchlist / DRG Materials

Before discussing plaintiffs' exemplar documents, the Court first addresses plaintiffs' contention that Wells Fargo should produce all documents regarding the Servicer Oversight Committee ("SOC"), the Corporate Trust Services ("CTS") Watchlist, and DRG meetings and activities. According to plaintiffs, these groups monitored servicer performance, reviewed repurchase demands, and examined escalated issues—in other words, they focused exclusively on the ordinary administration of Wells Fargo's duties as trustee, and the groups' documents, therefore, can only be classified as non-privileged business material. In rebuttal, Wells Fargo raises Exhibits D, E, and F of their February 7, 2017 submission as exemplars of privileged documents to demonstrate that counsel was routinely involved in the activities of the

aforementioned groups and the focus of the groups was on litigation and pre-litigation matters requiring legal advice.

Based on the Court's review of Wells Fargo's exemplars, plaintiffs' application for broad-based discovery of *all* documents regarding the SOC, the CTS Watchlist, and DRG meetings is DENIED as overly broad. Wells Fargo, however, is directed to produce Exhibits D and E in redacted form, in accordance with the guidance set out below.

### 2. Exemplar Documents

#### a) Wells Fargo's Exhibit D

Exhibit D includes a CTS Watchlist Meeting Agenda for a March 6, 2008 meeting and the memoranda for the "Issue Updates" discussed at the meeting. Consistent with the Court's Order regarding Wells Fargo's IMM Database, Wells Fargo is directed to produce the "Issue Updates" memoranda but to redact the "Estimated Financial Impact" and "Update" sections. The Agenda cover sheet should be produced in its entirety as it does not contain any legal advice or requests for legal advice and appears to have been created in the ordinary course of business.

#### b) Wells Fargo's Exhibit E

Exhibit E contains a DRC and SPS Watchlist Meeting Agenda for a February 4, 2014 meeting, which lists the names of all employees involved, and the memoranda for the issues discussed at the meeting. Again, the four-page Agenda cover sheet should be produced in its entirety, while the memoranda should be produced but with the "Updates SPS" sections redacted. Where appropriate to protect privileged information, Wells Fargo may also redact additional information, including that contained under the columns "Expense Amt," "Litigation Stage," and "Lit Status."

#### c) Wells Fargo's Exhibit F

Exhibit F features the Meeting Minutes of a March 3, 2015 SOC meeting. Wells Fargo has produced this document in redacted form. This document has been appropriately redacted.

### 3. Email Communications between Wells Fargo Employees and Counsel

Plaintiffs cite two exemplars to demonstrate that communications between Wells Fargo employees and counsel hinged primarily on soliciting and providing business, not legal, advice in Wells Fargo's ordinary course of business.

#### a) Plaintiffs' Exhibit 10

Exhibit 10 is an email chain involving missing document exceptions and possible corrective actions. The chain begins with a discussion among Wells Fargo business people regarding this issue and a summary of the exceptions is shared. The second half of the chain, however, engages counsel. A Wells Fargo employee asks internal counsel to consider the issues presented and to provide an opinion based on the employee's recommendations. That employee then discusses with other employees topics for discussion with in-house counsel. Accordingly, the March 18, 2011 email to in-house counsel, among others, and the March 25, 2011 email discussing certain topics to address with in-house counsel are privileged. The remainder of the email, which discusses the underlying facts, is something that Wells Fargo would prepare in the ordinary course of its business and is not privileged. Wells Fargo is directed to redact the March 18, 2011 and March 25, 2011 emails, and produce the rest of the email chain.

#### b) Plaintiffs' Exhibit 12

Exhibit 12 is an email chain discussing an investor's request for servicer compliance certificates of certain trusts for which Wells Fargo served as the trustee. In responding to the investor's request, Wells Fargo employees discussed how best to interpret a section of the governing agreements that allowed for the trustee to provide periodic or special servicing reports to certificateholders, and referenced and cited advice from internal counsel on how to construe

the agreements' language. Based on the counsel's advice, the Wells Fargo employees formulated a response to the investor's request.

As with Exhibit 10, Exhibit 12 should be produced in redacted form. Much of the email chain consists of communications among Wells Fargo personnel as to the facts of the investor's request and should be produced. The March 3, 2009 email sent at 5:58 PM, however, references in-house counsel's advice as to whether the compliance documents should be provided to the investor, based on counsel's interpretation of the servicing agreement, and is therefore privileged. See Stratagem Dev. Corp. v. Heron Internat'l N.V., No. 90 Civ. 6328 (SWK), 1991 WL 274328, at *2 (S.D.N.Y. Dec. 6, 1991) (advice from counsel regarding "legal rights, obligations, and tactics" is privileged). Also privileged are the two emails sent after the 5:58 PM email, in which the Wells Fargo employees discuss how to proceed in light of in-house counsel's interpretation. Accordingly, Wells Fargo should redact the March 3, 2009 email sent at 5:58 pm and the two subsequent emails, and produce the rest of the email chain.

### B. Category 2: Communications Containing Factual Information

Plaintiffs also argue that Wells Fargo improperly designated as confidential documents containing only factual information. Plaintiffs cite as exemplars three charts (Exhibits 11, 15, and 16) to demonstrate that many of the allegedly privileged documents are spreadsheets summarizing trust data and are therefore factual business documents that should be disclosed.

The relevant inquiry with respect to Exhibits 11 (and the related chart in Exhibit 14), 15, and 16 is whether these charts were created for the purpose of obtaining legal advice or whether they were otherwise created in the ordinary course of Wells Fargo's business. See In re Grand Jury Subpoena Duces Tecum, 731 F.2d at 1037. Based on the current record, Wells Fargo has not met its burden of establishing that these charts should be withheld. Exhibit 11 (and Exhibit 14) appears to be a chart that was prepared in the ordinary course of Wells Fargo's business.

Indeed, the Court suspects that this document (at least in large part) was generated by Wells Fargo as part of its management of the trusts, not by counsel. It would be surprising that a lawyer would have been responsible for inputting this sheer volume of data into a spreadsheet. Similarly, Exhibit 15 is a compilation of repurchase and loan file review information that appears to have been extracted from a database. In its February 7, 2017 submission, Wells Fargo represented that it has already produced the non-privileged portions of Exhibit 15 but does not indicate what those portions were. Regarding Exhibit 16, Wells Fargo asserts that it consists of documents and communications shared between Wells Fargo and its attorneys in order for counsel to determine whether and EOD had occurred. But it is not clear what the role of counsel was in preparing Exhibit 16.

"The mere fact that attorneys are involved in a communication does not cloak it with privilege." FHFA, 2014 WL 1327952, at *1. Moreover, documents that were routinely prepared by business personnel for use by business personnel in connection with the duties and obligations of the trustee would not be privileged simply because the task of preparing the documents was transferred to personnel within the legal department or outside counsel. On the record before it, however, the Court cannot determine the purpose for which these documents were created. Accordingly, the Court will reserve decision pending further submission by Wells Fargo.

Wells Fargo shall submit a declaration of a person with knowledge to show that these charts were created for the purpose of obtaining legal advice, not for the purpose of conducting its ordinary business. The declarant should describe, in detail, each column in each of the charts and explain whether the information in each column reflected attorney advice or was compiled for the purpose of obtaining legal advice. To the extent an attorney is making judgment about Wells Fargo's duties as trustee, the affiant must explain why the exercise of that judgment constitutes legal advice. Wells Fargo should also indicate what portions of Exhibit 15 were

already produced to plaintiffs. Wells Fargo may file this declaration with respect to Exhibits 11, 15, and 16 by no later than Friday, March 17, 2017.

**C. Category 3: Legal Advice Solicited For Benefit of Certificateholders**

Plaintiffs finally contend that the trusts are the parties-in-interest and that the fiduciary exception to the attorney-client privilege therefore waives Wells Fargo's privilege. The Court disagrees.

First, the fiduciary exception generally applies in the context of a traditional, common law fiduciary trustee. Anderson v. Sotheby's Inc. Severance Plan, No. 04 Civ. 8180, (SAS)(DAE), 2005 WL 6567123, at *9 (S.D.N.Y. May 13, 2015). Both sides agree that Wells Fargo is not a traditional fiduciary trustee. In its capacity as an indenture trustee, Wells Fargo does not serve as a fiduciary to trust beneficiaries before an Event of Default. Instead, Wells Fargo's obligations are strictly circumscribed by the governing agreements and its obligations prior to an Event of Default are ministerial in nature. See AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co., 866 N.Y.S.2d 578, 584–85 (2008) ("[F]iduciary obligations are wholly different from the [trustee's duty of] performance of ministerial functions with due care.").

Second, application of the fiduciary exception depends on the identity of the "real client" of the attorney, i.e., the beneficiary of the attorney's advice. See id. If counsel has advised the trustee fiduciary regarding his or her administration of the trust and is paid out of trust assets, then the trust beneficiary is the attorney's "real client," triggering the exception. See Riggs Nat'l Bank of Washington, D.C. v. Zimmer, 355 A.2d 709, 713–14 (Del. Ch. 1976). If the fiduciary consults with counsel to protect her own interests, however, then the real client is the fiduciary in her individual capacity. See id. Even assuming there does exist a fiduciary relationship between indenture trustees and trust beneficiaries, Wells Fargo has represented convincingly that the

advice solicited was intended to better inform its *own* obligations as trustee under the governing agreements and not to advance the interests of the certificateholders. Therefore, Wells Fargo is the "real client." See Anderson, 2005 WL 6567123, at *9 (The fiduciary exception reflects that "at least as to advice regarding plan administration, a trustee is not the real client, and thus never enjoyed the privilege in the first place."); compare Riggs, 355 A.2d at 713–14 ("The very intention of the communication is to aid the beneficiaries. The trustees here cannot subordinate the fiduciary obligations owed to the beneficiaries to their own private interests under the guise of attorney-client privilege.").

Plaintiffs maintain that Wells Fargo should have sought out legal advice for the trusts' benefit because its legal costs and expenses were paid by the trusts. But this is irrelevant. The fact that Wells Fargo's legal fees were paid by the trusts does not cut in favor of applying the fiduciary exception because the governing agreements vested in Wells Fargo a right of indemnification for legal fees. See, e.g., ABFC 2006-OPT1 PSA § 8.01(a) ("The Trustee shall not be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers . . .").

Plaintiffs cite Exhibit 17 in support of their argument that the trusts themselves were the named parties of lawsuits and were therefore the real beneficiaries of any legal advice solicited by Wells Fargo, thus triggering the fiduciary exception. Exhibit 17 is an internally generated document containing relevant case information, deal information (reflecting the loan number, the servicer, the property address, the unpaid balance, and Wells Fargo's role), and case summary. But it is not clear why, even if a trust was the named party, the trust itself was the beneficiary of legal advice solicited by Wells Fargo. Furthermore, as Wells Fargo points out, plaintiffs have not identified any allegedly privileged communications where they themselves were the beneficiaries

of legal advice or could otherwise be construed as the "real client." Accordingly, Exhibit 17 and any other such documents are protected from disclosure.

## IV. Conclusion

For the reasons stated above, Wells Fargo is ORDERED to produce Exhibits 10 and 12 in redacted form by no later than March 13, 2017. Wells Fargo is FURTHER ORDERED to review its privilege log and expeditiously produce any previously withheld documents that should be produced based on the Court's guidance as set forth herein. Wells Fargo is ORDERED to submit a declaration with regards to Exhibits 11, 14, 15, and 16 as set forth herein by no later than March 17, 2017.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         March 9, 2017