UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al., | X : : | |
| Plaintiffs, | : : | Case No. 1:14-cv-9371 (KPF) (SN) |
| -against- | : : | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | : : : | |
| Defendant, | : : | |
| | X | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION, | X : | |
| Third-Party Plaintiff, | : : : | **THIRD-PARTY COMPLAINT** |
| -against- | : : | |
| PGIM, INC. (f/k/a PRUDENTIAL INVESTMENT MANAGEMENT, INC.), AND PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, | : : : : : | |
| Third-Party Defendants. | : X | |

Defendant and Third-Party Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned attorneys, and based upon the facts set forth below obtained through discovery to date, publicly available information, and upon information and belief, complains of Third-Party Defendants PGIM, Inc. ("PGIM") (formerly known as Prudential Investment Management, Inc. ("PIM")) and Pacific Investment Management Company LLC ("PIMCO") as follows:

## INTRODUCTION

1.      This Third-Party Complaint arises out of the investment advisory and management services provided by PGIM and PIMCO to the Prudential Plaintiffs.[1]  The Plaintiffs in the underlying suit, including the Prudential Plaintiffs, have sued Wells Fargo claiming it is responsible in tort for the alleged losses stemming from investments the Plaintiffs made as holders of certain non-agency residential mortgage-backed securities ("RMBS") at issue.

2.      Wells Fargo, in its capacity as indenture trustee for the RMBS trusts at issue, denies any wrongdoing or breaches of any duties, or that it caused any alleged damages incurred by the Prudential Plaintiffs.

3.      As detailed below, in the event that liability is determined and damages are awarded to the Prudential Plaintiffs in this matter, such damages should be incurred solely by PGIM and PIMCO, whose numerous and ongoing breaches and abandonment of duties owed to the Prudential Plaintiffs led directly to the Prudential Plaintiffs' investments in the RMBS at issue and caused such alleged damages.  Thus, PGIM and PIMCO are obligated to contribute to such judgment to the full extent that their conduct caused the alleged harm for which the Prudential Plaintiffs seek damages from Wells Fargo.

4.      The Prudential Plaintiffs engaged PGIM and PIMCO, not Wells Fargo, to advise, manage, and direct their investments, including investments in the RMBS trusts at issue for which Wells Fargo acted as indenture trustee.

---

[1] As for this Third-Party Complaint, "Prudential Plaintiffs" refers collectively to the Prudential Retirement Insurance and Annuity Company and to The Prudential Insurance Company of America.

5.      As investment advisers with the discretionary authority to act on behalf of the Prudential Plaintiffs, PGIM and PIMCO assumed and owed fiduciary duties to the Prudential Plaintiffs.

6.      It was PGIM and PIMCO, not the RMBS indenture trustee, Wells Fargo, that provided investment advisory and management services to the Prudential Plaintiffs on the very RMBS investments at issue at all relevant times.  Thus, this third-party action centers on the breaches of duties PGIM and PIMCO owed the Prudential Plaintiffs.  In the event the Prudential Plaintiffs prevail in their claims against Wells Fargo, then, under the Prudential Plaintiffs' theory of the case, PGIM and PIMCO must be held accountable for their abject failure to exercise the care required by their fiduciary obligations as investment advisers and managers to the Prudential Plaintiffs.

7.      On information and belief, PGIM and PIMCO invested the Prudential Plaintiffs' assets in RMBS for years, including during times when the Prudential Plaintiffs allege in the underlying action that Wells Fargo should have taken a variety of actions as indenture trustee that they contend could have avoided the losses they allege and seek to recover from Wells Fargo in this action.

8.      PGIM and PIMCO were responsible for directing the RMBS investments at issue despite having knowledge of or willfully and recklessly disregarding the very same widely available information that Plaintiffs in the underlying action allege was known by Wells Fargo and purportedly should have led Wells Fargo to unilaterally take action as indenture trustee to protect investors.

9.      In other words, PGIM and PIMCO knew or should have known of the generalized facts that form the foundation of the Prudential Plaintiffs' baseless claims against Wells Fargo,

including the contentions regarding: (a) breaches of representations and warranties ("R&Ws")

made by Sellers; (b) breaches of Servicer obligations; and (c) indenture Events of Default

("EODs").

10.     Notwithstanding their own knowledge, PGIM and PIMCO caused the Prudential

Plaintiffs to make and maintain investments in the RMBS at issue and otherwise failed to act in a

manner consistent with their fiduciary and other obligations.  In so doing, PGIM and PIMCO

failed to exercise the requisite level of care demanded of them as fiduciaries, which in turn

caused the harm that the Prudential Plaintiffs allegedly suffered.

11.     Further, given the Prudential Plaintiffs' contention that Wells Fargo should have

taken action given the generalized market information described above, any finding of liability

against Wells Fargo means that, under the Prudential Plaintiffs' theory of the case, PGIM and

PIMCO breached their duties by failing to do the minimal sufficient due diligence on RMBS

investments, making no serious efforts to investigate R&W breaches or EODs in the issuing

trusts or otherwise take steps to protect the Prudential Plaintiffs from the harm they now

(incorrectly) allege Wells Fargo caused with respect to the RMBS at issue.

12.     PGIM's and PIMCO's failures with respect to the RMBS at issue represent

departures from the standards of care that they owed their clients as fiduciaries, and directly

caused the Prudential Plaintiffs' alleged harm to the full extent of any cognizable harm

associated with the trusts at issue for which Wells Fargo serves as trustee.

13.     That PGIM and PIMCO failed to take action to protect the Prudential Plaintiffs

with respect to the RMBS at issue was both imprudent and inexplicable particularly since they

knew or should have known that they had the obligation to investigate and pursue R&W-related

claims for the RMBS at issue, not RMBS indenture trustees like Wells Fargo.  Indeed, in

connection with securing highly publicized settlements from RMBS sponsors over R&W-related claims, numerous institutional investors, including the affiliates of PGIM and PIMCO, submitted briefs to courts that made clear that they fully understood that RMBS indenture trustees, like Wells Fargo, were not obligated to investigate R&W-related matters without a direction (and reasonable indemnity) from a requisite percentage of investors as dictated by the relevant governing agreements.  But PGIM and PIMCO did not do so with respect to the RMBS at issue, in breach of their fiduciary obligations to the Prudential Plaintiffs.

14.     For the foregoing reasons and those further alleged below, in the event that tort liability is determined and damages are awarded to the Prudential Plaintiffs in this matter, responsibility for such damages should be borne by PGIM and PIMCO, whose breaches and abandonment of duties owed to the Prudential Plaintiffs with respect to the RMBS at issue led directly to the Prudential Plaintiffs' investments in the RMBS at issue and caused such alleged damages.  PGIM and PIMCO are obligated to contribute to such judgment to the full extent of any cognizable harm associated with the trusts at issue for which Wells Fargo serves as trustee.

## THE PARTIES

15.     Defendant and Third-Party Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo") is a national banking association with its main office in Sioux Falls, South Dakota.  Wells Fargo acted as indenture trustee for certain RMBS trusts in which the Prudential Plaintiffs allegedly invested and hold.

16.     Third-Party Defendant PGIM, Inc. ("PGIM") (formerly known as Prudential Investment Management, Inc. ("PIM")), a corporation incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey, is engaged in the business of rendering investment advisory and management services as a registered investment adviser under the Investment Advisers Act of 1940.

17.     Third-Party Defendant Pacific Investment Management Company LLC ("PIMCO"), a Delaware limited liability company with its principal place of business in Newport Beach, California, is engaged in the business of rendering investment advisory and management services as a registered investment adviser under the Investment Advisers Act of 1940.  Upon information and belief, none of PIMCO's member(s) and none of the parents or owners of PIMCO's members are domiciled in, have their principal place of business in, or are organized under the laws of South Dakota.

18.     During the relevant time periods, PGIM and PIMCO have provided investment advisory and management services to the Prudential Plaintiffs.

19.     The Prudential Plaintiffs have asserted claims against Wells Fargo in the underlying action, *BlackRock Allocation Target Shares: Series S Portfolio, et al. v. Wells Fargo Bank, National Association*, Case No. 1:14-cv-9371 (S.D.N.Y.) (KPF) (SN).

## JURISDICTION AND VENUE

20.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Wells Fargo's third-party claim against PGIM and PIMCO because they form part of the same case or controversy out of which the claims in the underlying action arose.

21.     Subject matter jurisdiction is further predicated on 28 U.S.C. § 1332, because: (a) there is complete diversity between Wells Fargo and each of PGIM and PIMCO, and (b) the amount in controversy exceeds $75,000 excluding interest and costs.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim, and a substantial amount of the property that is the subject of the action, is situated in this district.

23.     This Court has personal jurisdiction over PGIM and PIMCO pursuant to New York C.P.L.R. § 301 and § 302.  Jurisdiction is proper as to PGIM and PIMCO because:

(a) they each have transacted business within the State of New York relating to the subject matter

of this action; and/or (b) they each have committed tortious acts within and without the State of

New York causing injury within the State of New York.  Among other things: (a) PIMCO

maintains offices in this District to facilitate trading RMBS and other investment products,

(b) PGIM and PIMCO communicate with investors in this District, (c) PGIM and PIMCO

solicited investments in the various funds they manage in this District, (d) PGIM and PIMCO

trade RMBS, including the RMBS at issue, with and through entities located in this District,

(e) PGIM and PIMCO directed, pursued, and participated in R&W-related enforcement actions

in this District, (f) PGIM and PIMCO provided testimony concerning R&Ws and RMBS in

this District, and (g) PGIM and PIMCO caused the Plaintiffs to bring the underlying claims in

this District.

## FACTUAL ALLEGATIONS COMMON TO THE THIRD-PARTY CLAIMS AGAINST PGIM AND PIMCO

### The Prudential Plaintiffs' Claims Against Wells Fargo

24.     Plaintiffs in the underlying action, including the Prudential Plaintiffs, originally

sued Wells Fargo in June 2014 in an action filed in the Supreme Court of the State of New York,

New York County.  Plaintiffs voluntarily dismissed that complaint and then filed their action in

this Court on November 24, 2014.

25.     On February 23, 2016, the Plaintiffs in the underlying action, including the

Prudential Plaintiffs, filed the Amended Class Action Complaint (the "Amended Complaint"), on

their own behalf and on behalf of a purported class of all current owners of certificates issued by

certain trusts, against Wells Fargo, as indenture trustee for the RMBS trusts at issue, to recover

for alleged "losses Wells Fargo's wrongful conduct has and is continuing to cause the Trusts and

the Class."

26.     Plaintiffs' Amended Complaint claims Wells Fargo breached contractual and tort duties allegedly owed them in connection with the RMBS investments at issue and that Wells Fargo is solely responsible for their alleged losses.

27.     Plaintiffs base their allegations on unfounded assertions that Wells Fargo failed: (a) to provide RMBS investors with notice of third-party breaches of R&Ws; (b) to enforce RMBS investors' repurchase rights with respect to breaches of sellers' R&Ws; (c) to provide notice to servicers of servicer-related EODs; (d) to act against servicers in connection with EODs; (e) to act as a "prudent person" after the EODs; and (f) to avoid conflicts of interest.

28.     On March 30, 2017, this Court ruled on Wells Fargo's motion to dismiss, dismissing certain of Plaintiffs' causes of action.  Among the surviving claims are Plaintiffs' claims that Wells Fargo breached certain tort duties owed them as noteholders of the RMBS trusts at issue.

29.     On May 12, 2017, Wells Fargo answered Plaintiffs' Amended Complaint, materially denying all allegations of actionable conduct and asserting numerous defenses to Plaintiffs' claims.  Among these are defenses that: (a) the Plaintiffs have not suffered any damages and, if they did, Wells Fargo is not the proximate cause of the alleged damages; (b) any alleged loss was the result of the Plaintiffs' actions or omissions or those acting or failing to act on Plaintiffs' behalf; and (c) any alleged damages are the result of the actions of others.

30.     In support of their remaining claims, Plaintiffs maintain that Wells Fargo and "other players" in the RMBS industry have known, for many years, about a "steady stream" of public disclosures of systematic and industry wide servicing violations, systematic and industry wide abandonment of underwriting guidelines, as well as widespread deficient and fraudulent securitization practices concerning RMBS.

31.     In their Amended Complaint, Plaintiffs allege that, starting in 2004, originators of residential mortgage loans sold loans securitized in RMBS that violated the sellers' stated underwriting guidelines and otherwise breached the R&Ws made to the purchasers of the loan pools organized within RMBS trusts.

32.     Plaintiffs further allege that, during the relevant period, there was a pervasive and systematic disregard of prudent underwriting and securitization standards.  They claim that, starting in 2004, it was "well documented that . . . the sponsors that securitized residential mortgages and transferred them into the RMBS trusts failed to conduct adequate due diligence reviews of the mortgage loans . . . ."

33.     Plaintiffs also allege that the mortgage loans underlying the RMBS at issue "were originated by some of the worst lenders during the relevant time period, including Impac . . . , [who] have been shown to have systematically abandoned their own underwriting guidelines . . . ."

34.     Plaintiffs further allege that, "since 2009 there has been a steady stream of public disclosures regarding the originators' systematic underwriting abuses and the sponsors' faulty securitization practices."   For example, Plaintiffs allege that numerous federal and state government investigations and published reports, well publicized news reports, and public and private enforcement actions described "rampant underwriting failures" during the relevant period, including "by the same originators" whose mortgage loans were sold to the trusts that issued the RMBS at issue.

35.     Plaintiffs further claim that "landmark settlements between the government and major financial institutions have further detailed the systematic and pervasive disregard of

underwriting standards by lenders during the relevant time period, and have confirmed that these practices infiltrated" the trusts that issued the RMBS at issue.

36.     Plaintiffs allege that "by 2011, it was apparent to all players in the United States mortgage and securitization industry . . . that the mortgage loans deposited in RMBS trusts issued between 2004 and 2008 materially breached the sponsors' representations and warranties."

37.     In addition, Plaintiffs claim that "all players" in the United States mortgage and securitization industry knew of "rampant industry wide servicer violations," including "by the same Servicers" for the trusts that issued the RMBS at issue.

38.     Plaintiffs describe how "public enforcement actions and private litigation highlighting the servicers' improper servicing practices were well known throughout the RMBS industry" for many years before the Plaintiffs first sued Wells Fargo.

39.     The Prudential Plaintiffs also allege that various performance metrics for the RMBS at issue, including performance statistics and figures that *pre-dated* the Prudential Plaintiffs' acquisition of many of the RMBS at issue, indicated that R&W breaches had likely occurred, and that servicing breaches had likely occurred or were occurring.

40.     Thus, Plaintiffs are suing Wells Fargo for conduct they claim occurred well after public information about practices in the RMBS market was prevalent.

## PGIM And PIMCO Were Aware Of Pervasive R&W And Servicing Issues Impacting RMBS

41.     In sum, the Prudential Plaintiffs allege that essentially everyone in the RMBS industry knew or should have known that the RMBS at issue were backed by loans evidencing pervasive R&W breaches that were being serviced improperly.  This, of course, would have included PGIM and PIMCO.

42.     The aforementioned conduct and public disclosures took place before and during the times PGIM and PIMCO advised, managed and directed the Prudential Plaintiffs' investments, including investments in the RMBS at issue.

43.     PGIM and PIMCO were among the "players" in the RMBS industry during the relevant time period, as alleged in Plaintiffs' Amended Complaint.

44.     PGIM and PIMCO knew or should have known of all such aforementioned conduct, disclosures and information alleged by Plaintiffs to have been known by and "apparent to all players in the United States mortgage and securitization industry . . . ."

45.     For example, to the extent the Prudential Plaintiffs claim Wells Fargo was aware, PGIM and PIMCO also were aware at all relevant times of the "steady stream" of public disclosures of systematic and industry wide servicing violations, systematic and industry wide abandonment of underwriting guidelines, as well as widespread, deficient and fraudulent securitization practices regarding RMBS.

46.     Similarly, to the extent the Prudential Plaintiffs claim Wells Fargo became aware, PGIM and PIMCO also became aware of numerous and serious concerns facing the RMBS market generally and their RMBS investments at issue specifically while acting in their capacity as the Prudential Plaintiffs' investment advisers.  PGIM and PIMCO had specific knowledge of the origination and servicer practices that are at the core of the Prudential Plaintiffs' claims against Wells Fargo.

47.     For example, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

48.     Similarly, PIMCO was a sophisticated investment adviser with access to all publicly available information regarding the RMBS markets.  Undeterred, and notwithstanding its knowledge of the risks of investing in RMBS, PIMCO ███████████████████████████ ██████████████████████████████████████████████████████████ ██████████

49.     In addition to the general knowledge described above, PGIM and PIMCO knew of the origination and servicing issues lurking in the RMBS investments at issue they directed and managed on behalf of the Prudential Plaintiffs.

50.     By virtue of the "steady stream of public disclosures" and their deep knowledge of the pervasive issues impacting RMBS, and their own experience investing in RMBS, PGIM and PIMCO at all relevant times knew or should have known about risks related to the RMBS at issue in this action.  They should have taken actions to avoid these RMBS investments or otherwise protect the Prudential Plaintiffs' interests in such investments.  But PGIM and PIMCO failed to do so.

**<u>PGIM And PIMCO Owed Duties To The Prudential Plaintiffs</u>**

51.     This extensive knowledge of the risks associated with RMBS investments is important because PGIM and PIMCO have served as investment advisers and managers with the discretionary authority to act on behalf of the Prudential Plaintiffs.

52.     That discretionary authority creates a special relationship of trust and confidence that obligates PGIM and PIMCO to act prudently and in the best financial interest of the Prudential Plaintiffs at all times.

53.     As investment advisers, PGIM and PIMCO owed fiduciary duties to the Prudential Plaintiffs with respect to the RMBS at issue.  These fiduciary duties necessarily included, among other things, an obligation to exercise due care in their roles as investment

adviser and manager, including by: (a) conducting sufficient due diligence to make suitable investments on behalf of the Prudential Plaintiffs; (b) having a reasonable basis for their investment recommendations for the RMBS at issue; and (c) once those investments were made, adequately monitoring and taking appropriate actions with respect to the RMBS investments at issue held by the Prudential Plaintiffs.  In the event Wells Fargo were to be found liable to the Prudential Plaintiffs, then PGIM and PIMCO failed to exercise these obligations and breached their fiduciary duties to the Prudential Plaintiffs.

### If The Trustee Were Found To Have Breached Its Duties, PGIM And PIMCO Breached The Fiduciary Duties They Owed To The Prudential Plaintiffs

54.     If Wells Fargo as trustee is found to be liable on the basis of the generalized knowledge alleged by the Prudential Plaintiffs, it means that, under the Prudential Plaintiffs' theory of the case, even in the face of overwhelming and widely available information of pervasive seller, servicer and issuer breaches, PGIM and PIMCO failed to exercise the requisite level of care demanded by the fiduciary duties that they owed the Prudential Plaintiffs.  As detailed above, by the Prudential Plaintiffs' own account, PGIM and PIMCO knew or should have known that the RMBS industry was plagued by: (a) systematic and industry wide servicing violations; (b) systematic and industry wide abandonment of underwriting guidelines; and (c) widespread, deficient and fraudulent securitization practices regarding RMBS.

55.     Given the known risks of investing in RMBS alleged by the Prudential Plaintiffs, PGIM and PIMCO were required to conduct sufficient due diligence prior to and after causing the Prudential Plaintiffs to invest in the securities at issue.  A finding of liability against Wells Fargo means that, under the Prudential Plaintiffs' theory of the case, despite the information available to them, PGIM and PIMCO willfully and recklessly breached their duties to the Prudential Plaintiffs by: (a) failing to conduct minimal sufficient due diligence on the Prudential

Plaintiffs' RMBS investments in this case; (b) directing the Prudential Plaintiffs to invest in such RMBS, which they knew or should have known suffered from R&W breaches and servicer violations, as alleged by the Prudential Plaintiffs; (c) maintaining investments in these RMBS even though they knew or should have known that such investments were not in the best financial interest of the Prudential Plaintiffs; and (d) failing to avoid and/or mitigate alleged losses suffered by the Prudential Plaintiffs by taking appropriate and timely steps.

56.     Under the Prudential Plaintiffs' theory of the case, PGIM and PIMCO also breached their fiduciary duties to the Prudential Plaintiffs by failing to devote adequate resources to the surveillance of the RMBS at issue in this case, and otherwise failing to adequately monitor RMBS investments once they were made.

57.     Not surprisingly, this resulted in a lack of awareness of critical but basic information relating to the Prudential Plaintiffs' RMBS investments.  Even after the Plaintiffs, including the Prudential Plaintiffs, sued Wells Fargo in 2014 alleging that there are rampant R&W breaches and EODs in RMBS, PIMCO allegedly ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

58.     When PGIM and PIMCO caused each of the purchases of the RMBS at issue to be made, they were among the most active "players" in the RMBS industry.  They therefore knew or should have known of all such aforementioned conduct, disclosures, and information alleged by the Prudential Plaintiffs to have been known by and "apparent to all players in the United States mortgage and securitization industry," as alleged by Plaintiffs in the Amended Complaint.

-14-

59.     For example, to the extent the Prudential Plaintiffs claim Wells Fargo was aware, PGIM and PIMCO also were aware at all relevant times of the "steady stream" of public disclosures of systematic and industry wide servicing violations, systematic and industry wide abandonment of underwriting guidelines, as well as widespread, deficient, and fraudulent securitization practices regarding RMBS.

60.     Yet, PGIM and PIMCO directed and maintained such RMBS investments for the Prudential Plaintiffs because they did not do the minimal review that would have uncovered their own clients' allegations.

61.     Despite the known risks associated with investing in RMBS, PGIM and PIMCO implemented an inadequate investment process regarding the RMBS investments at issue in this case, failing to protect the Prudential Plaintiffs from what they describe as risks that were or should have been known.

62.     PGIM and PIMCO were also aware or should have been aware that they could ask Wells Fargo and other RMBS trustees questions or request additional information on their RMBS investments at issue in this case. But, upon information and belief, they failed to do so.

63.     PGIM and PIMCO also were aware or should have been aware that they could have pursued inquiries regarding aspects of their RMBS investments at issue in this case with various other parties, such as relevant servicers. But, upon information and belief, they again did not do so.

64.     PGIM's and PIMCO's failure to take appropriate steps to protect the Prudential Plaintiffs' interest is striking in light of the fact that affiliates of both PGIM and PIMCO have specifically acknowledged that RMBS trustees were not in a position, and should not be

expected, to pursue claims with respect to poorly underwritten or serviced loans underlying the RMBS at issue.

65.     In litigation filings in separate litigation, lawyers acting for both Prudential and PIMCO affiliates (and other investors) acknowledged the limited duties of RMBS trustees with respect to potential R&W breaches and servicing EODs.  They argued that:

- "The PSAs significantly limit the Trustee's obligations to pursue these [RMBS related R&W] claims.  The term 'Trustee' is, in fact, something of a misnomer, at least as it describes [the Trustee's] roles under the PSAs." (*In the matter of the application of The Bank of New York Mellon against Walnut Place LLC*, Case No. 2011-cv-5988 (WHP), Institutional Investors' Statement in Support of Settlement and Consolidated Response to Settlement Objections, dated Oct. 31, 2011 [Dkt. No. 124], at 11.)

- "Under the PSAs, the Trustee is not required to expend any of its own funds to pursue claims or perform its duties, . . . it is not required to assume any financial risk in the performance of its duties, . . . it is not obligated to investigate any fact unless instructed to do so by the holders of 25% of the Voting Rights[.]"  (*Id.* at 12 (citations omitted).)

- "Under the governing agreements, the Trustee does not have—and will never have—an obligation to expend its own funds to pursue years of contentious and difficult litigation on behalf of the Trusts. . . . The Trustee does not have, and will never have, an obligation to investigate facts to determine whether an Event of Default has occurred unless 25% of the Certificateholders instruct it to do so."  (*Id.* at 14 (citations omitted).)

66.     Notwithstanding that Prudential and PIMCO's affiliates expressly recognized that securitization trustees were not obligated to expend their own funds to pursue contentious litigation with respect to the RMBS at issue, on information and belief, neither PGIM nor PIMCO ever undertook their own investigation into the alleged R&W breaches or EODs in the RMBS at issue.

67.     Further, both PGIM and PIMCO were aware of ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ .

68.    PGIM and PIMCO were aware that, under specific circumstances identified in the governing agreements, investors may direct the trustee to take remedial action on behalf of the trust if the investors indemnify the trustee in that effort.  On information and belief, PGIM and PIMCO also never bothered to contact other investors in an effort to direct Wells Fargo as trustee to investigate or evaluate potential actions against the originators of the loans underlying the RMBS at issue.

69.    In light of the Prudential Plaintiffs' own allegations, PGIM's and PIMCO's failure to proactively take R&W-related enforcement steps in a timely manner related to the RMBS at issue was imprudent, particularly since PGIM and PIMCO (and numerous other investors now suing Wells Fargo and other RMBS trustees) fully understood that the RMBS trustees were not required to investigate R&W-related claims without a direction and adequate indemnity from the requisite percentage of investors.

70.    If, as Plaintiffs allege in the underlying action, PGIM and PIMCO were aware of the seller, servicer, and issuer violations pervading RMBS by virtue of their status as "players" in the RMBS space, they had a duty as fiduciaries to fully investigate the RMBS and underlying mortgage loans, evaluate the potential for losses, and, using the same degree of care and skill as a diligent investment adviser and manager under the circumstances, take action in the best interest of the Prudential Plaintiffs. But PGIM and PIMCO each systematically failed to do so.

71.    If Wells Fargo could be held liable for breaching its duties to the Prudential Plaintiffs, under the Prudential Plaintiffs' theory of the case it would also mean that PGIM and PIMCO willfully and recklessly ignored the issues pervading the RMBS investments and abandoned their duties to the Prudential Plaintiffs by directing and maintaining their investments in the RMBS at issue in this action.

72.     Finally, the Prudential Plaintiffs allege in their Amended Complaint that the trusts underlying their RMBS investments at issue in this action "will continue to incur substantial losses" in the future.  Yet, after causing the Prudential Plaintiffs to make these investments, PGIM and PIMCO failed to sell those positions to avoid or minimize the future losses allegedly anticipated by the Prudential Plaintiffs.

## CAUSE OF ACTION FOR CONTRIBUTION AGAINST PGIM AND PIMCO

73.     Wells Fargo incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs of this Third-Party Complaint as if fully set forth herein.

74.     This third-party claim is brought against PGIM and PIMCO for contribution in connection with their involvement in and direction of the decisions to invest in, sell, and/or hold the RMBS at issue.

75.     As set forth above, PGIM and PIMCO provided investment advisory and management services to the Prudential Plaintiffs in connection with the RMBS at issue.

76.     PGIM and PIMCO were aware that the Prudential Plaintiffs used and relied upon the advisory and management services provided by PGIM and PIMCO in connection with the RMBS investments at issue.

77.     The investment advisory and management services provided by PGIM and PIMCO were used and relied upon by the Prudential Plaintiffs to direct their RMBS investments.

78.     At all times relevant to this matter, PGIM and PIMCO owed fiduciary duties to the Prudential Plaintiffs to, among other things, act in good faith, with care, skill and diligence, and to advise the Prudential Plaintiffs of all relevant facts and circumstances known to them.

79.     Wells Fargo denies liability in the underlying action by the Prudential Plaintiffs against it.  In the event, however, Wells Fargo were to be found liable in tort under the Prudential

Plaintiffs' theory of the case, PGIM and PIMCO failed to exercise these obligations and willfully and recklessly breached their fiduciary duties to the Prudential Plaintiffs relating to the RMBS at issue in this case by, among other things: (a) failing to adequately investigate the RMBS at issue, the mortgage loans underlying the RMBS, and/or causing the Prudential Plaintiffs to invest in those RMBS despite specifically known facts and risks, as alleged by the Prudential Plaintiffs; (b) failing to conduct sufficient due diligence on the RMBS at issue; (c) failing to adequately monitor the RMBS investments at issue held by the Prudential Plaintiffs; (d) failing to further inquire about known facts and risks as alleged by the Prudential Plaintiffs, despite the tools and purported sophistication to do so; (e) failing to understand the relationships between, and the role and responsibilities of, the parties involved in an RMBS transaction; (f) abdicating to other parties PGIM and PIMCO's duty to protect the Prudential Plaintiffs' interests in the RMBS at issue; (g) failing to take appropriate action on behalf of the Prudential Plaintiffs to protect their investments in the RMBS at issue; (h) failing to ensure that RMBS investments at issue were in compliance with applicable investment management procedures; (i) remaining invested in the RMBS at issue notwithstanding their belief that the Prudential Plaintiffs would suffer losses on these investments, as alleged by the Prudential Plaintiffs; (j) failing to avoid and/or minimize potential losses by taking appropriate and timely steps.

80.     PGIM's and PIMCO's breach of their duties as enumerated above proximately caused the Prudential Plaintiffs' investments in the RMBS at issue, which allegedly suffered losses for which the Prudential Plaintiffs seek to recover from Wells Fargo.

81.     If the Prudential Plaintiffs were damaged through the fault of anyone other than themselves, it was as a result of the tortious misconduct of the PGIM and PIMCO in breaching their duties to the Prudential Plaintiffs.

82.     If some, or all, of the Prudential Plaintiffs were to recover a judgment in tort against Wells Fargo, then Wells Fargo would be entitled to contribution from PGIM and PIMCO in an amount representing all or part of such judgment, including costs and disbursements, together with the expenses incurred herein as the relative responsibilities of the parties may warrant.

83.     By reason of the foregoing, if any judgment is recovered in this action against Wells Fargo, PGIM and PIMCO will be obligated to contribute to such judgment to the full extent that their conduct caused the Prudential Plaintiffs' damages.

## **PRAYER FOR RELIEF**

84.     WHEREFORE, Wells Fargo prays for judgment as follows: against PGIM and PIMCO for the amount of any judgment entered on any tort claim in favor of any or all of the Prudential Plaintiffs, together with interest thereon, in such proportion as the relative responsibilities of the parties may warrant, including costs, fees and disbursements incurred in defending the underlying action, and such further and other relief as the Court deems just and proper.

## **JURY DEMAND**

85.     Wells Fargo demands a trial by jury on its third-party claims against PGIM and PIMCO.

Dated: New York, New York
       May 26, 2017

JONES DAY

By:    /s/ Jayant W. Tambe

Jayant W. Tambe
Harold K. Gordon
Jason Jurgens
Thomas E. Lynch
Sevan Ogulluk
Howard F. Sidman
JONES DAY
222 East 41st Street
New York, NY 10017
Tel:    (212) 326-3939
Fax:    (212) 755-7306
jtambe@jonesday.com
hkgordon@jonesday.com
jjurgens@jonesday.com
telynch@jonesday.com
sogulluk@jonesday.com
hfsidman@jonesday.com


*Attorneys for Third-Party
Plaintiff Wells Fargo Bank, N.A.*