UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                              :

BLACKROCK ALLOCATION TARGET SHARES:    :
SERIES S PORTFOLIO, *et al.*,                     :

                                              :

                                 Plaintiffs,     :

                                              :

                           v.                :    14 Civ. 9371 (KPF) (SN)

                                              :

WELLS FARGO BANK, NATIONAL          :
ASSOCIATION, *et al.*,                     :

                                              :

                                   Defendants.    :

                                              :

------------------------------------------------------------X   **OPINION AND ORDER**
                                              :

ROYAL PARK INVESTMENTS SA/NV,      :
*Individually and on Behalf of all Others*   :
*Similarly Situated,*                    :

                                              :

                                 Plaintiffs,     :

                                              :

                           v.                :    14 Civ. 9764 (KPF) (SN)

                                              :

WELLS FARGO BANK, N.A,            :
*as Trustee,*                         :

                                              :

                                 Defendant.     :

                                              :

------------------------------------------------------------X
                                              :

NATIONAL CREDIT UNION ADMINISTRATION :
BOARD, *as Liquidating Agent of U.S. Central* :
*Federal Credit Union, Western Corporate Federal* :
*Credit Union, Members United Corporate Federal* :
*Credit Union, Southwest Corporate Federal Credit* :
*Union, and Constitution Corporate Federal Credit* :
*Union,*                               :

                                              :

                                 Plaintiff,      :

                                              :

                           v.                :    14 Civ. 10067 (KPF) (SN)

                                              :

WELLS FARGO BANK, NATIONAL          :
ASSOCIATION,                        :

                                              :

                                 Defendant.     :

                                              :

and                                                   :
                                                      :
NCUA GUARANTEED NOTES TRUST 2010-R1,                  :
NCUA GUARANTEED NOTES TRUST 2010-R2,                  :
NCUA GUARANTEED NOTES TRUST 2010-R3,                  :
NCUA GUARANTEED NOTES TRUST 2011-R2,                  :
NCUA GUARANTEED NOTES TRUST 2011-R4,                  :
NCUA GUARANTEED NOTES TRUST 2011-R5,                  :
and NCUA GUARANTEED NOTES TRUST 2011-                 :
M1,                                                   :
                                                      :
                               Nominal                :
                               Defendants.            :
                                                      :
-------------------------------------------------------------X
                                                      :
PHOENIX LIGHT SF LIMITED, *et al.*,                   :
                                                      :
                               Plaintiffs,            :
                                                      :
                v.                                    ;    14 Civ. 10102 (KPF) (SN)
                                                      :
                                                      :
WELLS FARGO BANK, N.A.,                               :
                                                      :
                               Defendant.             :
                                                      :
-------------------------------------------------------------X
                                                      :
COMMERZBANK AG,                                       :
                                                      :
                               Plaintiffs,            :
                                                      :
                v.                                    :    15 Civ. 10033 (KPF) (SN)
                                                      ;
WELLS FARGO BANK N.A.,                                :
                                                      :
                               Defendant.             :
                                                      :
-------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Pending before the Court are multiple motions, several discovery-related

and others responsive to the Court's March 30, 2017 Opinion and Order (the

"March 30 Opinion").  The Court here resolves three of them, listed in the order

in which they were filed:

> (i) The Rule 72 Objections to and Motion to Vacate
> Magistrate Judge Netburn's Opinion and Order
> Concerning Sampling (the "Sampling Motion"), filed
> by Plaintiffs Blackrock Allocation Target Shares: Series S
> Portfolio (the "BlackRock Plaintiffs"), Royal Park
> Investments SA/NV, Phoenix Light SF Limited, National
> Credit Union Administration Board, as liquidating agent
> (the "NCUAB"), and Commerzbank AG (collectively with
> the other Plaintiffs, the "Coordinated Plaintiffs");
>
> (ii) The Motion of the NCUAB, as liquidating agent for
> five corporate credit unions, and Graeme W. Bush, as
> Separate Trustee of the NGN Trusts, for Leave to File a
> Supplemental Complaint and Substitute the Separate
> Trustee as Plaintiff for NGN-Related Claims (the "Motion
> to Supplement and Substitute"); and
>
> (iii) The Blackrock Plaintiffs' Rule 72 Objections to and
> Motion to Vacate Magistrate Judge Netburn's Order
> Concerning Topics for Defendant's Rule 30(b)(6)
> Depositions (the "30(b)(6) Motion").

For the reasons outlined in the remainder of this Opinion, the Coordinated

Plaintiffs' Sampling Motion is denied and their objections overruled; the

NCUAB's Motion to Supplement and Substitute is granted; and the BlackRock

Plaintiffs' 30(b)(6) Motion is denied and their objections overruled.

## BACKGROUND[1]

The Court presumes familiarity with the factual and procedural

background of these related cases, which background has been described in

---

[1]    Except where otherwise specified, the docket citations in this Opinion are to Case No.
14 Civ. 10067.  For clarity, the Court will not cite to duplicative entries on each of the
five relevant dockets.  (*See also* Dkt. #296, at 3 n.1 (Coordinated Plaintiffs adopting the
same practice in briefing related to the Sampling Motion)).

With regard to the Sampling Motion, the Court will refer to the parties' briefing in the
following manner: the Coordinated Plaintiffs' memorandum of law in support of the

detail in the March 30 Opinion (Dkt. #281) and in Judge Netburn's March 10, 2017 Opinion & Order (the "Sampling Opinion" (Dkt. #263)).  *See BlackRock Allocation Target Shares: Series S. Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 1194683, at *2-6 (S.D.N.Y. Mar. 30, 2017) ("*BlackRock DJ Opinion*"); *BlackRock Allocation Target Shares* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 953550, at *1-3 (S.D.N.Y. Mar. 10, 2017) ("*BlackRock MJ Opinion*").  The Court hereby incorporates those factual statements by reference, and will focus its attention in this section on the developments in these cases that are of particular relevance to the three motions resolved in this Opinion.  Because of the interrelationship of certain of the motions, the Court will set forth the relevant facts for all three motions before proceeding to its analysis.

---

Sampling Motion as "Pl. Sampling Br." (Dkt #296); Defendant's memorandum of law in opposition as "Def. Sampling Opp." (Dkt. #314); and the Coordinated Plaintiffs' reply memorandum as "Pl. Sampling Reply" (Dkt. #317).

With regard to the Motion to Supplement and Substitute, the Court will refer to the parties' briefing similarly: the NCUAB and Separate Trustee's memorandum of law in support of the Motion to Supplement and Substitute as "Pl. Supp. & Sub. Br." (Dkt. #309); Defendant's memorandum of law in opposition as "Def Supp. & Sub. Opp." (Dkt. #322); and the NCUAB and Separate Trustee's reply memorandum as "Pl. Supp. & Sub. Reply" (Dkt. #324).

The same with regard to the 30(b)(6) Motion:  the BlackRock Plaintiffs' memorandum of law in support of the 30(b)(6) Motion will be referred to as "Pl. 30(b)(6) Br." (14 Civ. 9371 Dkt. #433); Defendant's memorandum of law in opposition as "Def. 30(b)(6) Opp." (14 Civ. 9371 Dkt. #485); and the BlackRock Plaintiffs' reply memorandum as "Pl. 30(b)(6) Reply" (14 Civ. 9371 Dkt. #499).  Defendant's letter motion to strike the exhibits filed with the BlackRock Plaintiffs' 30(b)(6) reply will be referred to as "Def. Str. Letter" (Dkt. #504) and its sur-reply as "Def. 30(b)(6) Sur-Reply" (Dkt. #512).

The affidavits filed in support of the parties' briefing will be referred to by the name of the affiant, and, as needed, the name of the brief with which it is associated.  For example: "Attaway Sampling Decl." (Dkt. #297), "Lovitt Sampling Opp. Decl." (Dkt. #315), and "Attaway Sampling Reply Decl." (Dkt. #318).

**A.     The Sampling Motion**

On September 17, 2015, these related cases were referred to the Honorable Sarah Netburn, United States Magistrate Judge, for the purposes of managing discovery.  (Dkt. #53).  Judge Netburn instituted a schedule for expert discovery on July 22, 2016, that directed the parties to "work diligently and cooperatively in advance of the expert discovery period to develop a loan re-underwriting protocol," and to propose a joint proposed protocol to the Court.  (Dkt. #130).

Perhaps unsurprisingly, the parties could not agree on such a protocol. In a letter filed on August 11, 2016, Wells Fargo expressed its belief that "[r]equiring the parties to commence the re-underwriting process at [that] juncture of the litigation [was] inefficient and illogical."  (Dkt. #143, at 1).  Wells Fargo proposed that non-underwriting discovery continue to progress, but that "underwriting efforts be held in abeyance until a later stage of the case."  (*Id.* at 2).  The Coordinated Plaintiffs responded by letter filed on August 16, 2016, in which they urged the Court to reject Wells Fargo's bifurcated-discovery proposal.  (Dkt. #147).  Each side also proposed its own re-underwriting protocol.  (*Compare id.*, *with* Dkt. #143).

On October 28, 2016, the parties appeared before Judge Netburn for a discovery conference to discuss issues regarding the mortgage loan re-underwriting sampling process.  (*See* Dkt. #169).  Judge Netburn "ordered the parties to brief the issue of whether sampling, in the context of re-underwriting mortgage loans, can be used to support or challenge any claim or defense in

these related Actions." (*Id.*).  Subsequently, Judge Netburn set a briefing schedule by Order dated November 2, 2016, and also directed the parties to address five specific questions in their papers.  (*Id.*).  Briefing concluded on December 14, 2016.  (Dkt. #210).

By order dated February 24, 2017, Judge Netburn denied as disproportionate to the needs of the case the Coordinated Plaintiffs' motion for leave to re-underwrite a sample of loans to prove Wells Fargo's liability beyond the specific loans included in the sample pool.  (Dkt. #253).  Judge Netburn explained the reasoning for this decision in the Sampling Opinion issued on March 10, 2017.  (Dkt. #263).  *See BlackRock MJ Opinion*, 2017 WL 953550.

The Coordinated Plaintiffs filed the Sampling Motion on April 7, 2017.  (Dkt. #292-97).  Defendant filed its opposition thereto on April 28, 2017 (Dkt. #314-15), and the Coordinated Plaintiffs filed their reply on May 5, 2017 (Dkt. #317-19).

## B.    The Motion to Supplement and Substitute

The March 30 Opinion dismissed the NCUAB's derivative claims.  *See BlackRock DJ Opinion*, 2017 WL 1194683, at *21-30.  The Court found that through the NGN Indenture Agreement, Bank of New York Mellon ("BNYM") "was granted the right to take action against Defendant with respect to the certificates and the Trusts."  *BlackRock DJ Opinion*, 2017 WL 1194683, at *21-30 (internal quotation mark omitted) (quoting Dkt. #82, at ¶ 33; Dkt. #82-2).  Specifically, the Granting Clause of the Indenture Agreement gave BNYM, in its capacity as Indenture Trustee, "all of [the Trusts'] right, title and interest in

and to ... the Underlying Securities ... , and all distributions thereon, ... [and] all present and future claims, demands, causes, and choses in action in respect of the foregoing, including ... the rights of the [Trusts (as the Issuers)] under the Underlying Securities and Underlying Agreements." (Dkt. #82-2, at 5). "This language effected a broad grant of rights to BNYM. Any right to sue that the NCUAB had against Defendant with regard to the Trust Estate was transferred, along with that Estate, to BNYM." *BlackRock DJ Opinion*, 2017 WL 1194683, at *27. And BNYM declined to exercise that right and pursue the claims in the instant action. (Dkt. #82, at ¶ 34).

Crucially, however, the March 30 Opinion dismissed the NCUAB's derivative claims without prejudice. *See BlackRock DJ Opinion*, 2017 WL 1194683, at *30. The Court permitted the NCUAB to move the Court for leave to amend its pleading, but required that in doing so the NCUAB (i) identify the party who would replace it, (ii) explain how such a substitution would rectify the standing deficiencies identified in the March 30 Opinion, and (iii) address, in detail, the contemplated impact that a substitution (and, conversely, a failure to substitute) would have on this case, particularly its ongoing discovery schedule. *Id.*

"Effective April 27, 2017, BNYM appointed Mr. Graeme W. Bush as Separate Trustee of the NGN Trusts in order 'to add the Separate Trustee as a substituted or additional plaintiff, as the court may require, to assert any claims on behalf of the Indenture Trustee or the NGN Trusts (the Separate Trustee Claims).'" (Pl. Supp. & Sub. Br. 4-5 (quoting Hall Supp. & Sub. Decl.,

Ex. B (the "Separate Trustee Agreement"))).  BNYM made this appointment pursuant to its Indenture-Trustee authority under Section 5.13 of the Indenture Agreements.  *Id.* (quoting Hall Supp. & Sub. Decl., Ex. B, at § 1.1)).  BNYM "transfer[red] to the Separate Trustee, and the Separate Trustee ... assume[d] any and all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee, including pursuit of the Separate Trustee Claims."  *Id.* (internal quotation mark omitted) (quoting Hall Supp. & Sub. Decl., Ex. B, at § 1.1)).  The Separate Trustee was empowered to "pursue such claims or litigation in the name of the Separate Trustee pursuant to the appointment by the Indenture Trustee, except as may otherwise be required by law or applicable court order."  *Id.* (internal quotation mark omitted) (quoting Hall Supp. & Sub. Decl., Ex. B, at § 1.13).

The NCUAB filed the Motion to Supplement and Substitute on April 27, 2017.  (Dkt. #308-10).  Defendant filed its opposition thereto on May 19, 2017 (Dkt. #322-23), and the NCUAB its reply on May 26, 2017 (Dkt. #324-25).

## C. The 30(b)(6) Motion[2]

On December 19, 2016, Judge Netburn issued a Deposition Protocol Order Governing Fact Depositions, including the depositions of Rule 30(b)(6) witnesses.  (Dkt. #284).  The deadlines set therein were subsequently extended several times at the parties' request.  (Dkt. #337, 386, 402).  On April 5, 2017, Judge Netburn ordered the parties to file with the Court any resolved

---

[2]    The docket citations within this section are all citations to the docket of Case No. 14 Civ. 9731.

objections to the proposed scope of the Rule 30(b)(6) depositions by a date certain. (Dkt. #402).

However, on April 6, 2017, Defendant advised the Court that the parties were unable to "reach agreement on the proper scope of [the Consolidated] Plaintiffs' upcoming Rule 30(b)(6) deposition of [Defendant]." (Dkt. #403). For various reasons, Defendant believed Plaintiffs' demands to be unreasonably broad, "impractical[,] and outside the bounds of Rule 30(b)(6)." (*Id.*). The Consolidated Plaintiffs opposed Defendant's letter on April 11, 2017. (Dkt. #412). In turn, the Consolidated Plaintiffs argued that Defendant sought "duplicative Rule 30(b)(6) testimony on vast, open-ended topics that cover virtually the entire spectrum of Plaintiffs' businesses and the RMBS market in general." (Dkt. #404). The Consolidated Plaintiffs felt Defendant's requests were unduly burdensome and intended to harass them. (*Id.*).

Judge Netburn resolved these disputes in an order issued on April 27, 2017 (the "30(b)(6) Order" (Dkt. #422)). Each party's objections were sustained in part and overruled in part. (*Id.*). With respect to BlackRock's Objections to Defendant's 30(b)(6) Notices specifically, the 30(b)(6) Order held with regard to the Notice applicable to the BlackRock Plaintiffs:

- It is ORDERED that the BlackRock plaintiffs' objections to General Topics 3, 4, 5, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17 are OVERRULED, and the BlackRock plaintiffs must each produce a witness, pursuant to Rule 30(b)(6), to testify on these topics as set forth in Wells Fargo's Notice of Deposition (Ex. 1 to Wells Fargo's April 11, 2017 Letter).[3]

---

[3]    These topics are listed and their scope outlined in depth in Exhibit B to the Declaration of Benjamin Galdston filed in Support of the 30(b)(6) Motion. (Dkt. #434-2).

- It is FURTHER ORDERED that the BlackRock plaintiffs' objections to General Topics 1, 2, and 19 are SUSTAINED, and the BlackRock plaintiffs must each produce a witness, pursuant to Rule 30(b)(6), to testify on these topics as modified by the BlackRock plaintiffs' counter-proposal Notice of Deposition (Ex. B to BlackRock Plaintiffs' April 6, 2017 Letter).

- It is FURTHER ORDERED that the BlackRock plaintiffs' objections to General Topics 6 and 7 are SUSTAINED, and the BlackRock plaintiffs need not produce a witness, pursuant to Rule 30(b)(6), to testify as to these topics.

- It is FURTHER ORDERED that the BlackRock plaintiffs' objections to General Topic 18 are SUSTAINED, and the BlackRock plaintiffs must each produce a witness, pursuant to Rule 30(b)(6), to testify only to the plaintiffs' theory of damages, but not to the amount of any losses, the time of occurrence, quantification or cause of such damages.

(Dkt. #422). And with regard to the individual plaintiff groups comprising the

BlackRock Plaintiffs, the 30(b)(6) Order held:

- It is ORDERED that BlackRock must produce a witness, pursuant to Rule 30(b)(6), to testify on Topic (i) as set forth in Wells Fargo's Notice of Deposition.

- It is FURTHER ORDERED that DZ Bank must produce a witness, pursuant to Rule 30(b)(6), to testify on Topic (i) as set forth in Wells Fargo's Notice of Deposition.

- It is FURTHER ORDERED that Prudential's objections to Topic (i) are OVERRULED, and Prudential must produce a witness, pursuant to Rule 30(b)(6), to testify on the particular topic as set forth in Wells Fargo's Notice of Deposition.

- It is FURTHER ORDERED that TIAA's objections to Topic (i) are OVERRULED, and TIAA must produce a witness, pursuant to Rule 30(b)(6), to testify on the

particular topic as set forth in Wells Fargo's Notice of Deposition.

- It is FURTHER ORDERED that PIMCO's objections to Wells Fargo's Topics are OVERRULED in part and SUSTAINED in part, and PIMCO must produce a witness, pursuant to Rule 30(b)(6), to testify on only the following topics set forth in Wells Fargo's Notice of Deposition: all sub-sections of Topic (i) except for sub-section (a) regarding Mr. Gu's PIMCO investments; Topic (ii); only subsection (a) of Topic (iii) regarding budgets of RMBS-related surveillance; and Topic (iv).

- It is FURTHER ORDERED that Sealink's objections to Wells Fargo's Topics are OVERRULED in part and SUSTAINED in part, and Sealink must produce a witness, pursuant to Rule 30(b)(6), to testify on only the following topics set forth in Wells Fargo's Notice of Deposition: Topic (i); all sub-sections of Topic (ii) except for sub-section (e); Topic (iii); and Topic (iv).

- Wells Fargo is FURTHER ORDERED to file a redacted copy of its April 11, 2017 response to BlackRock's objections on the public docket.

(*Id.*).

The BlackRock Plaintiffs filed the 30(b)(6) Motion with this Court on May 11, 2017. (Dkt. #432-34). Defendant filed its opposition thereto on June 15, 2017 (Dkt. #485-86), and the BlackRock Plaintiffs their reply on June 27, 2017 (Dkt. #499-500). On June 29, 2017, Defendant filed a letter motion to strike the evidentiary exhibits the BlackRock Plaintiffs submitted in support of their reply. (Dkt. #504). The Court deferred resolution of Defendant's letter motion pending the resolution of the 30(b)(6) Motion, but permitted Defendant to file a sur-reply. (Dkt. #505). Defendant filed a sur-reply on July 10, 2017. (Dkt. #512; *see also* Dkt. #510-11).

**DISCUSSION**

**A.    The Rule 72 Objections Are Overruled and the Motions to Vacate Are Denied**

The Court begins its consideration with the Sampling Motion and the 30(b)(6) Motion, both brought pursuant to Federal Rule of Civil Procedure 72. The Court will first discuss the standards applicable to each motion under that Rule and Federal Rule of Civil Procedure 26. It will then consider each motion in turn, beginning with a discussion of additional law implicated by each before proceeding to an explanation of why each motion fails.

**1.    Applicable Law**

**a.    Federal Rule of Civil Procedure 72**

District Courts are empowered to "designate a magistrate judge to hear and decide a pretrial matter that is 'not dispositive of a party's claim or defense.'" *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010) (quoting Fed. R. Civ. P. 72(a)) (citing 28 U.S.C. § 636(b)(1)(A)). If a party timely objects to the magistrate judge's decision on the non-dispositive matter, "[t]he district judge in the case must consider [the] timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). District courts may also refer dispositive matters to a magistrate judge, but "only for recommendation, not for decision." *Arista Records*, 604 F.3d at 116 (citing 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)). "As to a dispositive matter, any part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge *de novo*." *Id.* (citing Fed. R. Civ. P. 72(b)).

"Pretrial discovery motions are considered nondispositive and are reviewed for clear error." *City of N.Y.* v. *FedEx Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2017 WL 633445, at *3 (S.D.N.Y. Feb. 14, 2017); *accord, e.g.*, *Arista Records*, 604 F.3d at 116 ("Matters concerning discovery generally are considered nondispositive of the litigation." (quoting *Thomas E. Hoar, Inc.* v. *Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)). "An order is clearly erroneous if the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *Lifeguard Licensing Corp.* v. *Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017) (quoting *Frydman* v. *Verschleiser*, No. 14 Civ. 5903 (JGK), 2017 WL 1155919, at *2 (S.D.N.Y. Mar. 27, 2017)); *accord, e.g.*, *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001). And "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure." *Id.* (internal quotation marks omitted) (quoting *Frydman*, 2017 WL 1155919, at *2). "This is a highly deferential standard, and '[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden.'" *FedEx Ground Package Sys.*, 2017 WL 633445, at *3 (alteration in original) (quoting *U2 Home Entm't, Inc.* v. *Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)); *see also Infinity Headwear & Apparel, LLC* v. *Jay Franco & Sons, Inc.*, No. 15 Civ. 1259 (JPO), 2017 WL 3309724, at *7 (S.D.N.Y. Aug. 2, 2017) ("[M]agistrate judges are given 'broad discretion in resolving nondispositive disputes and reversal is appropriate only if their

discretion is abused.'" (quoting *Advanced Analytics, Inc.* v. *Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47, 50 (S.D.N.Y. 2014))).

### b.     Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26 permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "This [recently amended] rule is intended to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information." *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM) (JCF), 2017 WL 2693713, at *3 (S.D.N.Y. June 21, 2017) (quoting Fed. R. Civ. P. 26(b)(1) Advisory Committee's Note to 2015 Amendment)).  Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

### 2.     The Sampling Motion Is Denied and the Objections Raised Therein Overruled

### a.     The Court Reviews the Sampling Opinion for Clear Error

The Consolidated Plaintiffs argue that the Sampling Opinion should be reviewed *de novo*, because it was rooted in conclusions of law and exceeded the scope of the Court's reference to Judge Netburn.  (Pl. Sampling Br. 5-6).  The Court does not agree.  The Sampling Opinion was decided pursuant to Rule 26,

"the Federal Rule of Civil Procedure governing discovery," and thus is a classic, non-dispositive decision regarding discovery that is subject to clear error review. *Capitol Records, LLC* v. *Escape Media Grp., Inc.*, No. 12 Civ. 6646 (AJN), 2015 WL 1402049, at *3 (S.D.N.Y. Mar. 25, 2015).

The Second Circuit rejected an argument similar to the Consolidated Plaintiffs' in *Arista Records.* In that case, a defendant argued that a motion to quash the plaintiffs' subpoena was a dispositive motion because its adjudication necessarily required the magistrate judge to decide the dispositive question of whether the complaint properly stated a claim. *Arista Records*, 604 F.3d at 116. The Circuit affirmed the district court's rejection of this argument. *Id.* It found the motion was not dispositive because (i) the magistrate judge need not have decided the complaint's sufficiency in order to resolve it, (ii) quashing the subpoena would not have terminated any claims or the action, (iii) the defendant's other arguments undermined his contention that the motion was dispositive, and (iv) the district court had indicated that it would have affirmed the magistrate judge even if it had considered the matter *de novo. Id.* at 116-17.

This Court rejects the Consolidated Plaintiffs' arguments regarding the nature of the Sampling Opinion for similar reasons. Judge Netburn did not decide Plaintiffs' standard of proof at trial or summary judgment in resolving the sampling issue. She in fact did just the opposite, disclaiming any law-of-the-case effect. *BlackRock MJ Opinion*, 2017 WL 953550, at *4. A dispositive determination was not inevitably implicated by her proportionality analysis

under Rule 26.  Nor did the Sampling Opinion terminate any claims or the action.  Indeed, the Consolidated Plaintiffs themselves have admitted that they have other evidence relevant to Defendant's "discovery" and "actual knowledge."  (*See, e.g.*, Pl. Sampling Br. 20-22).  Thus, for the reasons it will explain more fully in the following section of this Opinion, the Court would deny the Sampling Motion even if it employed *de novo* review and conducted Judge Netburn's Rule 26 analysis anew.

### b.     The Sampling Opinion Is Not Clearly Erroneous or Contrary to Law

The Consolidated Plaintiffs offer a host of arguments in support of the Sampling Motion.  They contend that the Sampling Opinion was mistaken in its conclusions regarding the utilization of sampling in RMBS litigation.  (Pl. Sampling Br. 10-14).  The Consolidated Plaintiffs argue that the Sampling Opinion erred in concluding that sampling would not identify breaches that materially and adversely affected loan value.  (*Id.* at 14).  And because "discovery," as used in the relevant Trust documents allegedly requires only "constructive knowledge," rather than "actual knowledge," the Consolidated Plaintiffs believe the Sampling Opinion misconstrued the law and misapplied contract-interpretation principles to the parties' contracts.  (*Id.* at 15-20).  Finally, the Consolidated Plaintiffs dispute the Sampling Opinion's conclusion that sampling would not aid the Plaintiffs in proving their claims that Defendant failed to fulfill its contractually heightened duties subsequent to events of default.  (*Id.* at 22-25).

These arguments do not succeed.  In reviewing the Sampling Opinion, the Court is left with neither the definite and firm conviction that a mistake has been made nor a belief that Judge Netburn failed to apply or misapplied the applicable law.

> **i.** **It Was Not Clear Error to Conclude That "Discovery" Requires More Than Constructive Knowledge**

As this Court found in its March 30 Opinion, it remains the law in RMBS cases of this kind that "[t]o prevail ultimately on the breach of contract claim, a plaintiff does have to demonstrate breach on a loan-by-loan and trust-by-trust basis." *BlackRock DJ Opinion*, 2017 WL 1194683, at *7 (alteration in original) (internal quotation marks omitted) (quoting *Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016)); *see also, e.g.*, *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chi.* v. *Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014) ("[The trustee's] alleged misconduct must be proved loan-by-loan and trust-by-trust.  For example, [determining] … [w]hether [the trustee] was obligated to repurchase a given loan requires examining which loans, in which trusts, were in breach of the representations and warranties.  And [determining] whether a loan's documentation was deficient requires looking at individual loans and documents."); *Royal Park Invs. SA/NV* v. *HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 601 (S.D.N.Y. 2015) ("Certainly, at trial or summary judgment, plaintiffs must prove their claims 'loan-by-loan and trust-by-trust.'" (quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund*, 775 F.3d at 162)).  Thus,

Judge Netburn was correct in holding as much. *See BlackRock MJ Opinion,*
2017 WL 953550, at *4.

The Consolidated Plaintiffs have alleged that Defendant breached the
relevant Trust Agreements by failing to discharge certain contractual duties.
As Judge Netburn found, these allegations "are rooted specifically in Sections
2.03 and 8.01 of the PSAs":

> Section 2.03 provides in relevant part: "Upon discovery
> or receipt of written notice of any materially defective
> document in, or that a document is missing from, a
> Mortgage File or of the breach by the Originators or the
> Seller of any representation or warranty under the
> related Originator Mortgage Loan Purchase Agreement
> or the Mortgage Loan Purchase Agreement, as
> applicable, in respect of any Mortgage Loan which
> materially adversely affects the value of such Mortgage
> Loan, Prepayment Charge or the interest therein of the
> Certificateholders, the Trustee shall promptly notify the
> applicable Originator or the Seller, as the case may be,
> the Servicer and the NIMS Insurer … and request that,
> in the case of a defective or missing document, the
> Seller cure such defect or deliver such missing
> document within 120 days from the date the Seller was
> notified of such missing document or defect or, in the
> case of a breach of a representation or warranty,
> request the related Originator or the Seller, as
> applicable, cure such breach within 90 days from the
> date the applicable Originator or the Seller, as the case
> may be, was notified of such breach. Notwithstanding
> the foregoing, any breach of a Deemed Material and
> Adverse Representation with respect to a Group 1
> Mortgage Loan or Group 2 Mortgage Loan shall
> automatically be deemed to materially and adversely
> affect such Mortgage Loan or the interest of the related
> Certificateholders therein.
>
> If the Seller does not deliver such missing document or
> cure such defect or if the related Originator or the Seller,
> as applicable, does not cure such breach in all material
> respects during such period, the Trustee shall enforce
> such Originator's or the Seller's obligation, as the case

> may be, under the applicable Originator Mortgage Loan
> Purchase Agreement or the Mortgage Loan Purchase
> Agreement, or Additional Mortgage Loan Purchase
> Agreement as applicable, and cause such Originator or
> the Seller, as applicable, to repurchase such Mortgage
> Loan from the Trust Fund at the Purchase Price on or
> prior to the Determination Date following the expiration
> of such period (subject to Section 2.03(d)).

*BlackRock MJ Opinion*, 2017 WL 953550, at *2 (quoting ABFC 2006-OPT1 PSA

§ 2.03(a)).

Under this Section, if Defendant (i) discovers or receives written notice of

any materially defective document in, or document that is missing from, a

mortgage file, or (ii) discovers or receives written notice of any breach by an

originator or seller of a representation or warranty "in respect of any Mortgage

Loan which materially adversely affects the value of such Mortgage Loan,

Prepayment Charge or the interest therein of the Certificateholders,"

Defendant's "specific obligations as trustee take effect." *BlackRock MJ Opinion*,

2017 WL 953550, at *2 (quoting ABFC 2006-OPT1 PSA § 2.03(a)). Specifically,

Defendant

> must promptly notify the originator or seller of the
> defect in the particular loan. If the seller fails to cure or
> repurchase the defective loan within either 120 days (if
> the defect is a missing document) or 90 days (if the
> defect is an R&W breach), [Defendant] must then
> "enforce such Originator's or the Seller's obligation ... to
> repurchase such Mortgage Loan.

*Id.* (omission in original) (quoting ABFC 2006-OPT1 PSA § 2.03(a)). The

Consolidated Plaintiffs contend that Defendant failed to discharge these

obligations.

With regard to Section 8.01, Defendant's obligations

are triggered by actual knowledge or written notice of an [Event of Default ("EOD")]: "[T]he Trustee shall not be charged with knowledge of any failure by the Servicer to comply with the obligations of the Servicer referred to in clauses (i) and (ii) of Section 7.01(a) or any Servicer Event of Termination unless a Responsible Officer of the Trustee at the Corporate Trust Office obtains actual knowledge of such failure or the Trustee receives written notice of such failure from the Servicer, the NIMS Insurer or the Majority Certificateholders. In the absence of such receipt of such notice, the Trustee may conclusively assume that there is no Servicer Event of Termination."

*BlackRock MJ Opinion*, 2017 WL 953550, at *3 (second alteration in original) (quoting ABFC 2005-OPT1 PSA § 8.01). Once Defendant had the requisite knowledge or notice, "it was required to 'exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.'" *Id.* (quoting ABFC 2006-OPT1 PSA § 8.01). The Consolidated Plaintiffs contend that Defendant failed to do so.

In light of these contentions and the contract language on which they are based, the Consolidated Plaintiffs take issue with the Sampling Opinion's conclusions regarding the usefulness of sampling as a means of obtaining evidence relevant to and probative of Defendant's alleged breaches. (Pl. Sampling Br. 10-15). At the heart of the problem for the Consolidated Plaintiffs is a purported misunderstanding of the Consolidated Plaintiffs' ultimate burden of proof. (*Id.* at 10-15). The parties agree, and the contracts are clear, that Defendant's pre-event-of-default obligations arose upon "discovery or

receipt of written notice" of (i) any "materially defective" or missing document, or (ii) the breach by an originator or seller of any representation or warranty that "materially adversely" affected the value of a loan. *BlackRock MJ Opinion*, 2017 WL 953550, at *2 (quoting ABFC 2006-OPT1 PSA § 2.03(a)). And Defendant's post-event-of-default obligations arose when Defendant had actual knowledge or written notice of a servicer's failure to comply with its obligations. *Id.* at *3 (quoting ABFC 2005-OPT1 PSA § 8.01). But the parties dispute the definition of "discovery." The Consolidated Plaintiffs contend that "discovery" as used in Section 2.03 requires only inquiry or constructive notice. (Pl. Sampling Br. 15-19). Defendants counter that to "actually 'discover' individual R&W breaches," Defendant "must obtain knowledge of them." (Def. Sampling Opp. 9). Thus, "testing [Defendant's] 'discovery' of R&W breaches requires [i] identifying the specific R&W breach at issue and [ii] examining what [Defendant] knew about the breach and when it acquired the knowledge." (*Id.*).

In support of their claim, the Consolidated Plaintiffs cite to the March 30 Opinion and its recognition that "while '[l]earning of facts merely suggestive of a breach would not require the Trustee to immediately raise a claim,' '*upon receipt of such notice*, it becomes incumbent upon the [Trustee] to pick up the scent and nose to the source." *BlackRock DJ Opinion*, 2017 WL 1194683, at *10 (alterations and emphasis in original) (quoting *Policemen's Annuity & Benefit Fund of City of Chi.* v. *Bank of Am., NA*, 907 F. Supp. 2d 536, 553 (S.D.N.Y. 2012)). The Consolidated Plaintiffs also highlight two cases that do not sway this Court: They note that in *Bank of New York Mellon Trust*

*Company, National Association* v. *Morgan Stanley Mortgage Capital, Inc.*, No. 11 Civ. 505 (CM) (GWG), 2013 WL 3146824, (S.D.N.Y. June 19, 2013), the court held that "[a] party discovers a breach when it knows *or should know* that the breach has occurred" *id.* at *19 (emphasis added) (quoting *Morgan Guar. Tr. Co. of N.Y.* v. *Bay View Franchise Mortg. Acceptance Co.*, No. 00 Civ. 8613 (SAS), 2002 WL 818082, at *5 (S.D.N.Y. Apr. 30, 2002)). (Pl. Sampling. Br. 15). Though the Second Circuit vacated and remanded the case on appeal, the Consolidate Plaintiffs point out that the Circuit affirmed as correct the district court's observation that "the law charges a party with discovery of breach only after it has had a reasonable opportunity to investigate and confirm its suspicions — in short, when it effectively becomes aware, rather than simply suspicious, of breach," *Bank of N.Y. Mellon Tr. Co.* v. *Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 310 (2d Cir. 2016). (Pl. Sampling. Br. 15). And in *Assured Guaranty Municipal Corp.* v. *Flagstar Bank, FSB*, 920 F. Supp. 2d 475 (S.D.N.Y. 2013), the court found that an insurer's repurchase demand had informed the servicer of pervasive breaches affecting charged-off loans, and was sufficient to trigger those of the servicer's obligations that were premised on its "becoming aware of" an R&W breach, *id.* at 512-13. (Pl. Sampling Br. 16). This, the Consolidated Plaintiffs contend, affirms the proposition that "inquiry notice" or constructive awareness is sufficient to trigger contract obligations that came into effect upon a servicer's "becoming aware of" — i.e., discovering — an R&W breach. (*Id.*).

Additionally, the Consolidated Plaintiffs contend that Judge Netburn misapplied contract interpretation principles to the parties' contracts. (Pl. Sampling Br. 16-20). Judge Netburn found that "[e]quating 'discovery' with constructive knowledge [was] inconsistent with the bargained-for terms of the PSAs, which limit [Defendant's] pre-EOD duties as trustee to the four corners of the governing agreements." *BlackRock MJ Opinion*, 2017 WL 953550, at *7 (citing ABFC 2005-HE2 PSA § 8.01 (requiring the trustee, prior to a Servicer EOD, to "perform such duties and only such duties as are specifically set forth in this Agreement")). But the Consolidated Plaintiffs argue that what is inconsistent with the bargained-for terms of the PSAs is Judge Netburn's treatment of "discovery" and "actual knowledge" as synonymous, when the use of two different terms to address two different subjects in two different sections of the PSAs must be given meaning. (Pl. Sampling Br. 19).

The Consolidated Plaintiffs are correct in their identification of relevant contract-interpretation principles. But Judge Netburn was equally correct that "discovery" requires more than inquiry notice. Indeed, the Court finds these two positions reconcilable: Allowing that "discovery" and "actual knowledge" are different terms that must be given different meanings does *not* compel the Court to hold that "discovery" must mean constructive knowledge or inquiry notice in order to mean something other than "actual knowledge." There is more daylight between these concepts than the Consolidated Plaintiffs admit.

Judge Netburn reasoned that

> [t]he repurchase remedy contemplated in Section 2.03 rests on the ability of an RMBS trustee to undertake

> concrete measures (i.e., enforce the originator's or the seller's repurchase obligation) with respect to a specific defect, in a specific loan, in a specific trust. A trustee cannot undertake those measures without knowing the specific missing document or the specific breach. Without specific proof that the trustee knew of the particular breach, the plaintiffs cannot establish that the trustee failed to act.

*BlackRock MJ Opinion*, 2017 WL 953550, at *6. And this reasoning is logical and correct. But the fact that a trustee cannot undertake the contractually required measures without knowing of a specific defect, in a specific loan, in a specific trust should not also permit a trustee to avoid its obligations under this Section through a stance of willful blindness. True, because Defendant cannot be required to investigate under the parties' contracts, Defendant cannot be held liable for breach on the basis of constructive knowledge. However, Defendant cannot avoid liability by willfully blinding itself for the purpose of disclaiming knowledge.

It is thus plausible to the Court that the Consolidated Plaintiffs could demonstrate "discovery" through a showing of conscious avoidance or implied actual knowledge, either of which would impose a higher burden than "constructive knowledge," but both of which are different than "actual knowledge." *See, e.g.*, *Fraternity Fund Ltd.* v. *Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 368 (S.D.N.Y. 2007). While "[c]onstructive knowledge is '[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person[,]'" *id.* (quoting BLACK'S LAW DICTIONARY (8th ed. 2004) (knowledge)), "[c]onscious avoidance, on the other hand, occurs when 'it can *almost* be said that the defendant actually knew'

24

because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge," *id.* (emphasis added) (quoting *United States* v. *Nektalov*, 461 F.3d 309, 315 (2d Cir. 2006)); *see also* BLACK'S LAW DICTIONARY (10th ed. 2014) (distinguishing between (i) "express actual knowledge," which is defined as "[d]irect and clear knowledge," (ii) "implied actual knowledge," which is defined as "[k]nowledge of information that would lead a reasonable person to inquire further," and (iii) "constructive knowledge," which is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person"); *cf. id.* (defining "willful blindness" as "[d]eliberate avoidance of knowledge of a crime, [especially] by failing to make a reasonable inquiry about suspected wrongdoing despite being aware that it is highly probable" and noting that it "creates an inference of knowledge").

This, the Court reasons, is the sentiment underlying the case law on which the Consolidated Plaintiffs rely. *Bank of New York Mellon*, *Flagstar*, and even the Court's March 30 Opinion all accept that where certain facts indicated a party *should have been* aware of a breach, that party cannot disclaim its discovery simply because it avoided express actual knowledge. At some point, "when 'it can *almost* be said that [Defendant] actually knew' because [Defendant] suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge," there arises a duty to nose to the source. *Fraternity Fund Ltd.*, 479 F. Supp. 2d at 368 (emphasis

added) (quoting *Nektalov*, 461 F.3d at 315).  This case law is reconcilable with the Sampling Opinion, not contrary to it.

Ultimately, the Court does not need to decide the issue of the allocation of burdens at this stage in order to uphold the Sampling Opinion.  For, as the Sampling Opinion found, at issue here is only a discovery motion, and the Court's consideration of the parties' ultimate burdens is only intended to guide the Court's review of Judge Netburn's proportionality analysis.  For now, it suffices to say that it was not clear error in light of the foregoing discussion for Judge Netburn to conclude for purposes of her proportionality analysis that proof of "discovery" would require more than mere constructive knowledge or inquiry notice.

      ii.      **It Was Not Clear Error to Conclude That Sampling Is Not Proportional to the Needs of the Case**

The focus of the Sampling Opinion's Rule 26 proportionality analysis was on "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweigh[ed] its likely benefit." *BlackRock MJ Opinion*, 2017 WL 953550, at *3 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 26(b)(1)).  The Sampling Opinion denied the Consolidated Plaintiffs' motion to re-underwrite a sampling of loans for the purpose of proving Defendant's liability or damages beyond the loans in the sample because sampling was (i) not discovery required for resolution of the

issues in these cases and (ii) discovery so burdensome and expensive that its burden and expense outweighed its likely benefit.  *Id.* at *3-9.

More specifically, Judge Netburn found that sampling could not help the Consolidated Plaintiffs identify the loans in breach, demonstrate that any breaches materially adversely affected particular loans, or ascertain the loan-specific cure and repurchase remedy.  *BlackRock MJ Opinion*, 2017 WL 953550, at *6.  Judge Netburn rejected as inapposite cases factually distinct from the instant cases where sampling was permitted, and found that none counseled her to authorize the discovery here in light of its expense, burden, and unhelpfulness.  *Id.*  Because "discovery" here required more than a showing of constructive knowledge, Judge Netburn reasoned that sampling could not help the Consolidated Plaintiffs to demonstrate that any "discovery" had occurred.  *Id.* at *7-8.  Nor could it help the Consolidated Plaintiffs with their post-EOD breach claims:  "Generalized information indicating the *trusts* with loan defaults or R&W breaches cannot substitute for proof that servicers had actual knowledge of *loan-specific* R&W breaches and that Wells Fargo actually knew of the servicers' failure to report those breaches."  *Id.* at 8 (emphasis in original).  And finally, Judge Netburn found that any sampling performed today would shed little light, if any, on whether sampling should have been performed in the past by a "prudent person" or on what might have been uncovered if it had been.  *Id.* at *9. As she concluded:  "It is not clear how sampling can show that after performing an investigation, [Defendant] would have located the *specific* breaching loans outside of a sample based on the

existence and rate of defective loans within the given sample." *Id.* (emphasis in original).

This Court can find no error in Judge Netburn's thorough reasoning. This Court accepts, as did Judge Netburn, that in other cases, sampling has been sufficiently useful to justify its burden and expense. Not so here. The Court concurs with Judge Netburn's conclusion that the minimal benefits that sampling could provide to the Consolidated Plaintiffs are outweighed by the discovery's burden and expense in light of the fact that "the contemplated sampling will cost hundreds of thousands, if not millions, of dollars, will require months to conduct, and will likely result in challenges to the admissibility of the evidence." *BlackRock MJ Opinion*, 2017 WL 953550, at *4. Judge Netburn's Rule 26 analysis was neither contrary to law nor clearly erroneous. The Sampling Motion is denied and Plaintiffs' objections thereto dismissed.

### 3. The 30(b)(6) Motion Is Denied and the Objections Raised Therein Overruled

#### a. Federal Rule of Civil Procedure 30(b)(6)

As relevant here, Federal Rule of Civil Procedure 30(b)(6) permits a party, "[i]n its notice or subpoena," to "name as the deponent a public or private corporation, ... and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." *Id.* Persons designated

are required to "testify about information known or reasonably available to the organization." *Id.*

"To satisfy Rule 30(b)(6), [a] corporate deponent has an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf." *Bush* v. *Element Fin. Corp.*, No. 16 Civ. 1007 (RJS), 2016 WL 8814347, at *2 (S.D.N.Y. Dec. 13, 2016) (quoting *Reilly* v. *Natwest Markets Grp. Inc.*, 181 F.3d 253, 268 (2d Cir. 1999)); *accord Coty Inc.* v. *Excell Brands, LLC*, No. 15 Civ. 7029 (JMF), 2016 WL 7187630, at *2 (S.D.N.Y. Dec. 9, 2016). "After a deposing party serves a 'satisfactory notice,' the responding party must 'make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed as to the relevant subject matters.'" *Bush*, 2016 WL 8814347, at *2 (quoting *Soroof Trading Dev. Co.* v. *GE Fuel Cell Sys., LLC*, No. 10 Civ. 1391 (LGS) (JCF), 2013 WL 1286078, at *2 (S.D.N.Y. Mar. 28, 2013)). "'Rule 30(b)(6) deponents need not have personal knowledge concerning the matters set out in the deposition notice,' [but] 'if they do not possess such personal knowledge … the corporation is obligated to prepare them so that they may give knowledgeable answers.'" *Id.* (quoting *Spanski Enters., Inc.* v. *Telewizja Polska, S.A.*, No. 07 Civ. 930 (GEL), 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009)); *accord Coty Inc.*, 2016 WL 7187630, at *2; *Zappia Middle E. Const. Co.* v. *Emirate of Abu Dhabi*, No. 94 Civ. 1942 (DC), 1995 WL 686715, at *4 (S.D.N.Y. Nov. 17, 1995)

("While Rule 30(b)(6) 'is not designed to be a memory contest[,]' the deponents must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization." (alteration in original) (quoting *EEOC* v. *Am. Int'l Grp., Inc.*, No. 93 Civ. 6390 (PKL) (RLE), 1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994))), *order clarified sub nom. Zappia Middle E. Constr. Co.* v. *Emirate of Abu Dhabi*, No. 94 Civ. 1942 (KMW), 1995 WL 758767 (S.D.N.Y. Dec. 21, 1995).

"A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *City of N.Y.* v. *Fedex Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2016 WL 1718261, at *5 (S.D.N.Y. Apr. 27, 2016) (citing *Dealer Comp. Servs.* v. *Curry*, No. 12 Civ. 3457 (JMF) (JLC), 2013 U.S. Dist. LEXIS 18315, at *3-4, 2013 WL 499520 (S.D.N.Y. Feb. 7, 2013)); *see also* Fed. R. Civ. P. 30 Advisory Committee's Note to 2015 Amendment ("Rule 30 is amended in parallel with Rules 31 and 33 to reflect the recognition of proportionality in Rule 26(b)(1)."); *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 2355451, at *5 (S.D.N.Y. May 28, 2013) (utilizing proportionality analysis to determine that defendants must produce Rule 30(b)(6) witness). "When a party subpoenas a corporation pursuant to F.R.C.P. 30(b)(6), ... '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Albino* v. *Glob. Equip. USA, Ltd.*, No. 6:14 Civ. 6519 (MAT), 2017 WL 3130380, at *1-2 (W.D.N.Y. July 24, 2017) (quoting *Night Hawk Ltd.* v. *Briarpatch Ltd., LP*,

No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).

"[A]n overly broad [Rule] 30(b)(6) 'notice subjects the noticed party to an impossible task,' because, where it is not possible to 'identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.'" *Eng-Hatcher* v. *Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) (quoting *Reed* v. *Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000)).

### b.     The 30(b)(6) Order Was Not Clearly Erroneous or Contrary to Law

In essence, the BlackRock Plaintiffs argue that Judge Netburn failed to weigh the Rule 26 factors properly, and that this failure constituted clear error. At a more granular level, the BlackRock Plaintiffs argue:

> (i) The 30(b)(6) Order overruled BlackRock's objections to the overbroad topics, effectively requiring the BlackRock Plaintiffs to produce "one or more omniscient individuals to recount orally the policies, practices, and operations of an entire organization and its numerous employees." (Pl. 30(b)(6) Br. 3-4).

> (ii) The Order overruled the BlackRock Plaintiffs' objections to topics that are not narrowly tailored to address outstanding discovery matters and target evidence duplicative of discovery Defendant has already obtained. (*Id.* at 4).

> (iii) "Requiring live testimony from a multitude of corporate designees would be unnecessarily cumulative and unduly burdensome," particularly given the availability of alternative means for the provision of "corporate testimony." (*Id.* at 5-6).

> (iv) It is such a "practical impossibility" for the BlackRock Plaintiffs to prepare a witness to address all of the noticed topics that these Plaintiffs can only conclude the topics were "deliberately calculated to

31

ensure Plaintiffs' failure to comply, thus resulting in serial motion practice and further depositions." (*Id.* at 5-6).

(v) "[T]he topics seek information about Trusts, securities, or parties that are not at issue in this action," and "[a]s such, ... seek information that is not relevant to the claims or defenses at issue in this action." (*Id.* at 6).

(vi) "[S]everal of the Topics improperly seek information protected by the attorney-client privilege or work-product doctrine." (*Id.*).

(vii) Finally, the BlackRock Plaintiffs also complain that the 30(b)(6) Order did not evidence any analysis of their objections nor describe its reasons for overruling them. (*Id.* at 4).[4]

In spite of the many words employed to explain it, the BlackRock

Plaintiffs' argument is simple:  Because Judge Netburn failed to adopt the

*BlackRock Plaintiffs'* proportionality analysis, *her* proportionality analysis was

of necessity clearly erroneous and contrary to the law.  This Court is not

convinced.  The 30(b)(6) Order correctly recites the relevant legal standards.

The "measured ruling" then applies these standards, to each of the noticed

deposition topics one by one, sustaining some topics here, narrowing over-

broad topics there, and rejecting other topics wholesale.  (Def. 30(b)(6) Opp. 10;

*see also* Def. 30(b)(6) Sur-Reply 9).  Far from being "left with the definite and

firm conviction that a mistake has been committed," *Lifeguard Licensing Corp.*,

---

[4]     The BlackRock Plaintiffs indicate that this constellation of objections applies with equal force to the portion of the 30(b)(6) Order that addresses 30(b)(6) topics noticed with regard to all of the BlackRock Plaintiffs and to the portion that addresses topics noticed with respect to specific Plaintiffs.  (Pl. 30(b)(6) Br. 11).

2017 WL 3142072, at *1 (quoting *Frydman*, 2017 WL 1155919, at *2), the Court is left with an impression of care and precision.

The Court has closely followed Judge Netburn's management of discovery throughout the pendency of these cases and concurs with Defendant's conclusion that Judge Netburn's fastidious work has "give[n] her a firm basis to understand the relevant factual issues and to assess the relevant burdens of the requested discovery." (Def. 30(b)(6) Opp. 8). Without restating Defendant's description of Judge Netburn's "substantial efforts ... to oversee discovery in this action" (*id.* at 2; *see also id.* at 8-11), the Court here adopts Defendant's account by reference. In light of these facts, and consistent with the law in this Circuit, the Court is appropriately deferential to Judge Netburn's discovery assessments when analyzing them on a motion under Rule 72.

The Court emphasizes that Rule 72 is not a vehicle for the relitigation of arguments rejected by Judge Netburn in her non-dispositive discovery order. (*See* Def. 30(b)(6) Opp. 11-12 & n.37). The BlackRock Plaintiffs have not identified any clear error in the 30(b)(6) Order, nor has the Court found any in its review thereof. The Court appreciates the great burden that the requested discovery imposes on the BlackRock Plaintiffs (Pl. 30(b)(6) Br. 8-10; Pl. 30(b)(6) Reply 3-4), but does not believe it was error for Judge Netburn to permit such discovery in light of the fact that this is a "multi-party litigation, with thirty-three plaintiffs organized in six affiliated groups seeking to act as class representatives for an unknown number of persons claiming interests in twelve RMBS trusts that they describe as having been originally collateralized by

$11.6 billion in underlying loans." (Def. 30(b)(6) Opp. 16; *see also* Def. 30(b)(6) Sur-Reply 8). The burden of discovery is also weighed against its unique importance, given the binding nature of 30(b)(6) testimony. (Def. 30(b)(6) Opp. 16-17).[5] Though the BlackRock Plaintiffs object to the topics' inclusion of the word "including," the Court agrees with Defendant that the word is used only to clarify the topics noticed and not to expand them. (*Id.* at 13-14). And to the extent that the noticed topics seek privileged information, Judge Netburn specifically indicated that her rulings in the 30(b)(6) Order did "not preclude an appropriate privilege assertion at the time of the deposition." (Dkt. #422, at 4 n.1).

In sum: Judge Netburn considered properly the Rule 26 factors, and her 30(b)(6) Order was neither clearly erroneous nor contrary to law. Thus, the 30(b)(6) Motion must be denied and the BlackRock Plaintiffs' objections thereto overruled.[6]

---

[5] The BlackRock Plaintiffs' arguments that non-30(b)(6) testimony can be binding upon a company's consent is unhelpful given that the BlackRock Plaintiffs have not provided the Court with proof of such consent in this case. (*See* Pl. 30(b)(6) Reply 7-8).

[6] The Court notes that it reaches this analysis notwithstanding the deposition testimony introduced by the BlackRock Plaintiffs in support of their 30(b)(6) reply. (*See* Galdston 30(b)(6) Reply Decl., Ex. 1-24). Even if it were proper in these circumstances for the Court to consider evidence that was not presented to Judge Netburn in the Court's review of the 30(b)(6) Order, these depositions would not change the Court's conclusion that the 30(b)(6) Order was neither clearly erroneous nor contrary to law, for the reasons described above in this section. *See, e.g.*, *Verint Sys. Inc.* v. *Red Box Recorders Ltd.*, 183 F. Supp. 3d 467, 470 (S.D.N.Y. 2016) ("In reviewing the decision of a magistrate judge, a district judge should not consider 'factual evidence that was not presented to the magistrate judge.'" (quoting *Thai Lao Lignite (Thailand) Co.* v. *Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)).

**B.      The Motion to Supplement and Substitute Is Granted**

**1.      Federal Rule of Civil Procedure 15**

Federal Rule of Civil Procedure 15 allows a court, "[o]n motion and reasonable notice," and "on just terms," to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.  The court may permit supplementation even though the original pleading is defective in stating a claim or defense." Fed. R. Civ. P. 15(d).  "As a general matter, Rule 15(d) 'reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties.'" *Beckett* v. *Inc. Vill. of Freeport*, No. 11 Civ. 2163 (LDW) (AKT), 2014 WL 1330557, at *9 (E.D.N.Y. Mar. 31, 2014) (quoting *Witkowich* v. *Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)).

The Second Circuit has indicated that "[a] district court may grant a motion to file a supplemental pleading 'in the exercise of its discretion, upon reasonable notice and upon such terms as may be just.'" *Chen-Oster* v. *Goldman, Sachs & Co.*, No. 10 Civ. 6950 (AT) (JCF), 2017 WL 1378265, at *8 (S.D.N.Y. Apr. 12, 2017) (quoting *Quaratino* v. *Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)).  "Absent undue delay, bad faith, dilatory tactics, and undue prejudice to the party to be served with the proposed pleading, or futility, the motion should be freely granted." *Id.* (internal quotation marks omitted) (quoting *Quaratino*, 71 F.3d at 66); *see also Bornholdt* v. *Brady*, 869 F.2d 57, 68 (2d Cir. 1989) ("An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely

granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."). "The burden is on the non-moving party to demonstrate the existence of such grounds." *Growblox Scis., Inc.* v. *GCM Admin. Servs., LLC*, No. 14 Civ. 2280 (ER), 2016 WL 1718388, at *4 (S.D.N.Y. Apr. 29, 2016).

To analyze whether a party has carried this burden, a court utilizes the same standard as that applied to a motion to amend brought under Rule 15(a). *See, e.g.*, *Klein* v. *PetroChina Co.*, 644 F. App'x 13, 15 (2d Cir. 2016) (summary order); *Escoffier* v. *City of N.Y.*, No. 13 Civ. 3918 (JPO) (DF), 2017 WL 65322, at *2 (S.D.N.Y. Jan. 4, 2017) ("[C]ourts adhere to the same liberal standards in determining motions brought under any of these provisions."), *report and recommendation adopted*, No. 13 Civ. 3918 (JPO), 2017 WL 3206337 (S.D.N.Y. July 27, 2017); *Lin* v. *Toyo Food, Inc.*, No. 12 Civ. 7392 (KMK), 2016 WL 4502040, at *1 (S.D.N.Y. Aug. 26, 2016). Leave to amend may be denied if the amendment would be futile, *see, e.g., Knife Rights, Inc.* v. *Vance*, 802 F.3d 377, 389 (2d Cir. 2015), as where the "amended portion of the complaint would fail to state a cause of action," *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (holding that amended complaint must be "sufficient to withstand a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)"). Leave to amend may also be denied "when a party has been given ample prior opportunity to allege a claim," *De Jesus* v. *Sears, Roebuck & Co.*,

*Inc.*, 87 F.3d 65, 72 (2d Cir. 1996), or "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant," *Cerni* v. *J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (internal quotation mark omitted) (quoting *Kenney* v. *Clay*, 172 F. Supp. 3d 628, 643 (N.D.N.Y. 2016)).

"The concepts of delay and undue prejudice are interrelated — the longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." *Davidowitz* v. *Patridge*, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *2 (S.D.N.Y. Apr. 23, 2010) (citing *Evans* v. *Syracuse City Sch. Dist.*, 704 F.2d 44, 46-47 (2d Cir. 1983)). "In determining what constitutes 'prejudice,' [courts] generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan* v. *N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *accord Lin*, 2016 WL 4502040, at *1.[7]

---

[7] Though the NCUAB seeks to supplement its pleading long after a Rule 16 scheduling order was filed, it is not clear to the Court that NCUAB is required to show "good cause" under Federal Rule of Civil Procedure 16(b)(4) "since this latter provision pertains solely to motions to *amend* — not motions to *supplement* pleadings." *Beckett* v. *Inc. Vill. of Freeport*, No. 11 Civ. 2163 (LDW) (AKT), 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) (emphases in original); *Watson* v. *Wright*, No. 08 Civ. 960 (A)(M), 2011 WL 1118608, at *5 (W.D.N.Y. Jan. 11, 2011) ("Unlike motions to amend ... Rule 16's plain language does not require courts to set a deadline for filing a motion to supplement and the parties in this case did not set such a deadline in their Scheduling Order."), *adopted by* 2011 WL 1099981 (W.D.N.Y. Mar 24, 2011). Neither party has argued that a "good cause" showing is required. The Court will not therefore consider expressly whether "good cause" has been shown, though it believes that if it were to analyze the Motion to

## 2. Federal Rule of Civil Procedure 17

Rule 17 dictates that every civil action must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). If a court finds that an action has been brought improperly by a party other than the real party in interest, Rule 17 further instructs that "[t]he court may not dismiss an action for failure to prosecute ... until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *accord In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009). The Second Circuit has admonished district courts that "[a] Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997); *accord House of Europe Funding I Ltd.* v. *Wells Fargo Bank, N.A.*, No. 13 Civ. 519 (RJS), 2015 WL 5190432, at *2 (S.D.N.Y. Sept. 4, 2015).

### 3. The NCUAB May Substitute the Separate Trustee as the Derivative Claimant and the NCUAB as the Direct Claimant for the Re-conveyed Certificates from the R5 and R6 Trusts

#### a. The Separate Trustee May Be Substituted as the Derivative Claimant

In the March 30 Opinion, the Court found that BNYM was the real party in interest with regard to the NCUAB's derivative claims because the Granting Clause of the Indenture Agreement gave BNYM, in its capacity as Indenture

---

Supplement under a good-cause standard, the motion would still succeed for the reasons outlined in this section.

Trustee, "all of [the Trusts'] right, title and interest in and to ... the Underlying Securities ... , and all distributions thereon, ... [and] all present and future claims, demands, causes, and choses in action in respect of the foregoing, including ... the rights of the [Trusts (as the Issuers)] under the Underlying Securities and Underlying Agreements." *BlackRock DJ Opinion*, 2017 WL 1194683, at *23 (alterations and omissions in original) (quoting Dkt. #82, at ¶ 33; Dkt. #82-2). BNYM has now granted part of its rights and authority under the Indenture Agreement to the Separate Trustee through the Separate Trustee Agreement. (*See* Pl. Supp. & Sub. Br. 7 (quoting Hall Supp. & Sub. Decl., Ex. B, at § 1.1)).

### i.     The Separate Trustee Has the Capacity to Sue

It is well-established that a trustee of an express trust has the capacity to sue on its own behalf. The Court recognized as much implicitly in finding in the March 30 Opinion that BNYM had the capacity to assert the derivative claims brought by the NCUAB, and Defendant has not argued to the contrary. *See BlackRock DJ Opinion*, 2017 WL 1194683, at *29; *see also* Fed. R. Civ. P. 17(a)(1) (allowing that "a trustee of an express trust" may "sue in [its] own name[] without joining the person for whose benefit the action is brought").

"A trustee is a real party to the controversy where it 'possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'" *Wells Fargo Bank Nw., N.A.* v. *Synergy Aerospace Corp.*, No. 16 Civ. 8065 (JPO), 2017 WL 3393945, at *4 (S.D.N.Y. Aug. 7, 2017) (quoting *Navarro Sav. Ass'n* v. *Lee*, 446 U.S. 458, 464 (1980)). "Whether the trustee possesses

such powers is a question that is resolved based on the underlying trust document." *Id.* (quoting *U.S. Bank Nat. Ass'n* v. *Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 606 (S.D.N.Y. 2012)). Here, pursuant to the underlying Separate Trustee Agreement, the Separate Trustee has been granted "all legal title, claims, powers, rights, authorities, and duties of the Indenture Trustee, including pursuit of the Separate Trustee Claims ... in connection with the Separate Trustee Claims." (Pl. Supp. & Sub. Br. 7 (quoting Hall Supp. & Sub. Decl., Ex. B, at § 1.1)). Plainly, the Separate Trustee now possesses powers to hold, manage, and dispose of the assets implicated by the Separate Trustee Claims.

### ii. The Proposed Substitution Is Not Invalid Because the Separate Trustee Agreement Is Allegedly Invalid

That said, Defendant does not accept that the Separate Trustee is the real party in interest in this case. Instead, Defendant contends "[t]hat party is — and has always been — BNYM." (Def. Supp. & Sub. Opp. 6). Defendant contests the Separate Trustee's status on the basis of the propriety *vel non* of the Separate Trustee Agreement, and the NCUAB's role in orchestrating its execution. More specifically, Defendant contends that BNYM lacked the authority to appoint a Separate Trustee other than "for the purpose of meeting legal requirements applicable to it in the performance of its duties." (*Id.* at 4 (internal quotation marks omitted) (quoting Dkt. #82-2, at § 5.13(a))). In support of this contention, Defendant notes that "nothing in [the NCUAB's] submission indicates that BNYM, as indenture trustee, made a determination

40

that the appointment is necessary to fulfill any legal requirement." (*Id.* at 8). Defendant also argues that the NCUAB is not empowered to "wield rights held by the NGN Trust Noteholders" and "cause[] BNYM to appoint [its] lawyer, Graeme W. Bush, as Separate Trustee." (*Id.* at 5; *see also id.* at 7). And finally, Defendant takes issue with the NCUAB's provision of the Separate Trustee's compensation in light of the Indenture Agreement's requirement that "any ... separate trustee appointed pursuant to [its] Section 5.13 ... be compensated only from the Indenture Trustee Fee or by the Indenture Trustee[.]" (*Id.* at 8 (omissions in original) (internal quotation marks omitted) (quoting Dkt. #82-2 § 5.13(f))).

As a preliminary matter, the Court is not convinced that Defendant has standing to challenge the validity of the Separate Trustee Agreement as a means of challenging the Separate Trustee's real-party-in-interest status. (*Compare* Pl. Supp. & Sub. Br. 11-13, *with* Def. Supp. & Sub. Opp. 9-11). Effectively, Defendant is seeking to enforce certain provisions of the Indenture Agreement with which Defendant asserts the Separate Trustee Agreement is noncompliant. However, it is well-established that a party may not act to enforce agreements to which it was not a party nor of which it was not an intended beneficiary. *Rajamin* v. *Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 87 (2d Cir. 2014) (affirming district court's ruling "that plaintiffs lacked standing to enforce the agreements to which they were not parties and of which they were not intended beneficiaries"); *see also, e.g.*, *Cohen* v. *DHB Indus., Inc.*, 658 F. App'x 593, 594-95 (2d Cir. 2016) (summary order) (holding that nonparty to

settlement agreement could not enforce rights provided therein unless he was a third-party beneficiary); *Lopez* v. *Bayview Loan Servicing, LLC*, No. 16 Civ. 2610 (JPO), 2017 WL 3396421, at *5-6 (S.D.N.Y. Aug. 8, 2017) (affirming and applying holding of *Rajamin* that assignments' alleged noncompliance with trust agreements might have made assignments unenforceable, but only at the instance of parties to or intended beneficiaries of the agreements). But even if Defendant *could* challenge the Separate Trustee's real-party-in-interest status on this basis, the challenge could not succeed because any conflict between the Indenture Agreement and Separate Trustee Agreement would not render either void. A trustee's unauthorized acts do not automatically void an agreement: "[A]n unauthorized act by the trustee is not *void* but merely *voidable* by the beneficiary." *Rajamin*, 757 F.3d at 89 (emphasis added).

The challenge would also fail at a more fundamental level, because Defendant has not shown the existence of any true conflict between the agreements. Beginning with Defendant's contention that the appointment of the Separate Trustee was in some way improper, the Court finds that even if BNYM appointed the Separate Trustee at the NCUAB's request, and even if the Separate Trustee has his own relationship with the NCUAB, BNYM appointed the Separate Trustee pursuant to *its own* authority under the applicable NGN Indenture Agreements. (*See* Dkt. #82-2, at §§ 5.13, 11.05). The fact that the NCUAB requested or suggested the appointment of the Separate Trustee in no way compelled BNYM to make that appointment; BNYM did so consistent with its contractual obligation to "cooperate in all respects with any reasonable

request by the [NCUAB as] Guarantor for action to preserve or enforce the Guarantor's ... interests under this Indenture." (Pl. Supp. & Sub. Reply (omission in original) (quoting Dkt. #82-2, at § 11.05)).

The Court also agrees with the NCUAB that while the language of § 5.13 *empowers* BNYM to appoint a separate trustee to meet legal requirements applicable to it in the performance of its duties, that language does not plainly *limit* BNYM to appointing a separate trustee only for that purpose. (Pl. Supp. & Sub. Reply 2-3). But even if it did, the Court finds it plausible that the appointment of the Separate Trustee would fall within its bounds. Under the Indenture Agreements, BNYM was empowered and authorized

> to do all things not inconsistent with the provisions of [the] Indenture that it may deem advisable in order to enforce the provisions hereof or to take any action with respect to a default or an Event of Default hereunder, or to institute, appear in or defend any suit or other proceeding with respect hereto, or to protect the interests of the Noteholders and the Guarantor. The Indenture Trustee shall not be answerable or accountable except for its own bad faith, willful misconduct or negligence.

(Dkt. #82-2, at § 5.01(a)(i)). The Agreements also empowered BNYM to institute legal proceedings to enforce noteholders' rights upon the incidence and continuance of an event of default. (*Id.* at § 4.03(b)). Reading these sections together, and in the context of the broader Indenture Agreement, the Court believes BNYM could claim the appointment of the Separate Trustee was necessary to permit it to meet the legal requirements applicable to it in the performance of its duties.

Finally, the Court agrees that the Trust Agreement's joint-action requirement does not preclude on its face an action taken by the Separate Trustee with the Indenture Trustee's consent. Nor does the Trust Agreement preclude a payment structure that is compliant with the Indenture Agreement in effect. What the Indenture Agreement *does* do is limit BNYM's actions to those "not inconsistent with the provisions of [the] Indenture that it may deem advisable in order to enforce the provisions hereof[.]" (Dkt. #82-2, at § 5.01(a)(i)). Thus, BNYM's consent to the terms of the Separate Trustee Agreement evidences to the Court BNYM's belief that the terms outlined therein are "not inconsistent" with the Indenture Agreement's provisions. At this stage, the Court credits that interpretation.

### iii. The Proposed Substitution Is Not Improper Because of Its Scope

Defendant also argues that substitution should not be permitted because it "would 'require more than a merely formal alteration of the complaint.'" (Def. Supp. & Sub. Opp. 11 (quoting *Cortlandt St. Recovery Corp.* v. *Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 424 (2d Cir. 2015)). Because the substance of the complaint will need to be modified to include new factual allegations describing "the circumstances of [the Separate Trustee's] appointment, the alleged basis for that appointment, and [the Separate Trustee's] citizenship, ... allowing the substitution would inject new factual legal questions into this case, requiring additional discovery and prolonging litigation." (*Id.* at 12). With this, the Court agrees in part: If substitution itself required the amendment of

the Complaint's substantive allegations, it would be more than merely formal. Fortunately, the Court finds it does not.

In support of its argument to the contrary, Defendant correctly indicates that in *Cortlandt St. Recovery Corp.* v. *Hellas Telecommunications., S.á.r.l*, 790 F.3d 411 (2d Cir. 2015), the Second Circuit affirmed a district court's refusal to permit the plaintiff to remedy a standing defect through a Rule 17(a) ratification. The Court found that Rule 17(a) ratification would be (i) futile, because it would only destroy diversity jurisdiction in attempting to remedy standing, and (ii) improper because it would require more than a "merely formal" change to the complaint and would alter the "complaint's factual allegations as to the events or the participants." *Id.* at 423-24 (quoting *Advanced Magnetics, Inc.*, 106 F.3d at 20).

But in support of *its* argument for substitution, the NCUAB notes that the *Cortlandt* Court also reached several rulings helpful to its cause: First, the *Cortlandt* Court distinguished its case from others denying Rule 17 relief because the *Cortlandt* plaintiff lacked underlying Article III standing. The Circuit noted that where the named plaintiffs in prior cases "had standing irrespective of any amendment under Rule 17 to pursue at least *some* of its claims against the defendants," the plaintiff in *Cortlandt* did not. *Cortlandt*, 790 F.3d at 422. In *Cortlandt*, "there was no valid lawsuit pending ... in which to permit an amended complaint." *Id.* Second, the Circuit left open the "possibility" that a plaintiff could have avoided the "challenging procedural pitfalls" that ultimately precluded Rule 17 relief if it had made "a request for

leave to obtain a valid assignment under some other rule of civil procedure."
*Id.* at 424-25. Third, the Circuit emphasized that Rule 17 had been amended specifically "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought," as well as to "codif[y] the modern "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." *Id.* at 421 (quoting 6A Charles Alan Wright et al., FED. PRAC. & PROC. CIV. § 1555 (3d ed. 2014)). And fourth, in a concurrence, *Cortlandt*'s author wrote separately to emphasize the need to consider the practical value of substitution in aiding expeditious litigation and avoiding unnecessary expense and delay. *Id.* at 426-27 (Sack, J., concurring).

Post-*Cortlandt* case law further supports the NCUAB's cause. In *House of Europe Funding I Ltd.* v. *Wells Fargo Bank*, No. 13 Civ. 519 (RJS), 2015 WL 5190432, at *5 (S.D.N.Y. Sept. 4, 2015), for example, Judge Sullivan permitted a plaintiff to amend its complaint to plead the fact of its authorization to pursue the litigation despite the fact that doing so would entail the modification of the complaint's factual allegations. *See generally id.* He identified his case as "a classic example of the circumstances that Rule 17(a) was designed to address, namely 'to avoid forfeiture in situations in which it is unclear at the time the action is filed who had the right to sue and it is subsequently determined that the right belonged to a party other than the party that instituted the action.'" *Id.* (quoting *Del Re* v. *Prudential Lines, Inc.*, 669 F.2d 93, 96 (2d Cir. 1982)). And he distinguished it from *Cortlandt* on two

important bases:  First, Judge Sullivan noted that the plaintiff in his case possessed Article III standing notwithstanding any ratification.  *Id.* at *6. Second, he noted that while the proposed amendment in *Cortlandt* would have "altered the factual allegations underlying [that plaintiff's] basis for having suffered an injury," the amendment proposed by the plaintiff in his case simply asserted the fact that plaintiff was authorized to bring the lawsuit, "a 'merely formal' alteration, akin to substituting the name of the party."  Judge Sullivan concluded that "[a]mending a complaint to incorporate the fact that the ratifying party duly authorized a lawsuit cannot, on its own, be considered too substantial of a change to fall within Rule 17(a)."  *Id.* at *7.

Shortly after *House of Europe* was issued, Magistrate Judge Gorenstein affirmed and extended its reasoning, permitting a Rule 17 ratification even where underlying standing did not exist.  *See Digizip.com, Inc.* v. *Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 678-80 (S.D.N.Y. 2015).

In reaching these conclusions, both courts considered the three factors announced in *Advanced Magnetics, Inc.* v. *Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997):  (i) whether the complaint's "only pertinent flaw was the identity of the party pursuing [the relevant] claims," such that "the proposed amended complaint sought only to substitute one name for another; the factual and legal allegations of the complaint would remain unaltered;" (ii) whether "there was [any] indication of bad faith ... or an effort to deceive or prejudice the defendants;" and (iii) whether "the proposed substitution ... threaten[ed] to prejudice the defendants," given the timely provision of "notice of the substance

of the allegations, the relevant parties, and their claims." *House of Europe*, 2015 WL 5190432, at *3 (quoting *Cortlandt St.*, 790 F.3d at 422 (identifying the *Advanced Magnetics* factors)).

Judge Sullivan found the plaintiff's

> proposed amendment to the complaint — which would merely incorporate the fact [of ratification] — [was] valid for the same three reasons that warranted a Rule 17(a) amendment in *Advanced Magnetics*, namely: [i] it [was] a merely cosmetic change, [ii] it [was] not motivated by bad faith, and [iii] it would not prejudice [the defendant]. [The plaintiff's] proposed amendment to the complaint would leave the factual and legal allegations underlying its claims unaltered, and since [the plaintiff was] still pursing the same legal theory based on the same alleged breaches ... that caused the same alleged harm, the only change would be a technical amendment providing that ... the real party in interest, ha[d] authorized [plaintiff's] prosecution of its claims[.]

*House of Europe*, 2015 WL 5190432, at *3.

Likewise, Judge Gorenstein found that "allowing plaintiff to cure the standing defect through Rule 17 vindicate[d] the three policy interests discussed in *Advanced Magnetics* and *Cortlandt Street*." *Digizip.com*, 139 F. Supp. 3d at 680. He reasoned that

> as in *Advanced Magnetics*, "[t]he complaint's only pertinent flaw was the identity of the party pursuing those claims." That is, "the factual and legal allegations of the complaint would remain unaltered" if the suit continue[d]. Second, there [was] no indication of "bad faith or ... an effort to deceive or prejudice the defendants." To the contrary, the standing defect ... was apparently the result of an "honest mistake." ... Finally, the proposed change [did] not "threaten to prejudice the defendants, who had timely notice of the substance of the allegations, the relevant parties, and their claims."

*Id.* (internal citations omitted).

So too here. As the Court indicated in the March 30 Opinion, "the only pertinent flaw" in the Second Amended Complaint implicated by the Motion to Supplement and Substitute was the identity of the party to pursue the derivative claims. The "factual and legal allegations" substantiating these claims will remain unaltered if the suit continues. In this regard, the Court draws the same distinction as did Judge Sullivan in *House of Europe*: Amending a pleading to allege new facts relating only to the authorization to litigate is different from amending a pleading to allege new facts that go to the constitutionality of a litigation or the merits of the underlying claims. Moreover, the Court emphasizes that the Second Circuit in *Advanced Magnetics* held only that "[a] Rule 17(a) substitution of plaintiffs should be *liberally allowed* when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20 (emphasis added). It did not hold that a substitution could never be allowed unless the change is merely formal and in no way alters the original complaint's factual allegations. Second, the Court finds that there is no indication that the NCUAB harbored an intention to deceive Defendant, nor acted in bad faith. Rather, the NCUAB possessed a genuine belief in its standing, which belief was reasonable in light of the law then-existing in this District. And third, the Court does not believe that the proposed substitution threatens to prejudice Defendant, who has had notice of the substance of the allegations, the relevant actors, and their claims for

several years.  Rather, "this case is a classic example of the circumstances that Rule 17(a) was designed to address, namely, 'to avoid forfeiture in situations in which it is unclear at the time the action is filed who had the right to sue and it is subsequently determined that the right belonged to a party other than the party that instituted the action.'"  *House of Europe*, 2015 WL 5190432, at *5 (quoting *Del Re*, 669 F.2d at 96).

### iv.    The Proposed Substitution Is Not Improper for Lack of Mistake or Justified Delay

Defendant's final arguments are that substitution is improper because the NCUAB did not name itself the Plaintiff by mistake, but rather did so as a matter of litigation strategy, and because the NCUAB has offered no justification for its delay in rectifying the standing issue of which it has long been aware.  (Def. 30(b)(6) Opp. 12-16).  Again, the Court cannot agree.

The NCUAB failed to rectify the standing issue because it believed in good faith that it was the real party in interest with regard to the derivative claims.  Defendant scoffs at the NCUAB's proffered justification for this belief, i.e., the unsettled status of this issue within this District, but the Court itself endorsed the reality of this question in the March 30 Opinion.  *BlackRock DJ Opinion*, 2017 WL 1194683, at *25-29.  (*See also* Pl. Supp. & Sub. Reply 7 (noting that at the time of the Second Amended Complaint's filing, the only court in this District to have considered the standing question has resolved it in the NCUAB's favor); *id* at 9).  And when the NCUAB offered to undertake a "fallback" motion with regard to its standing, it was this Court that did not

permit it to do so.  (Def. Supp. & Sub. Opp. 15; Pl. Supp. & Sub. Reply 7 (citing Dkt. #310-1)).

Ultimately, the Court found in the March 30 Opinion that the NCUAB was mistaken concerning the identity of the real party in interest with regard to the derivative claims.  At that juncture, the NCUAB promptly filed the Motion to Supplement and Substitute.  Contrary to Defendant's contention that the NCUAB "has offered no justification for its delay," the NCUAB has clearly indicated that the delay was the result of its genuine, honestly mistaken belief that it was the correct, real party in interest, and the Court's decision to resolve the issue of the NCUAB's standing in the context of the Consolidated Plaintiffs' motion to dismiss the operative complaints in these cases.  (Pl. Supp. & Sub. Reply 6-8).  The Court finds that the NCUAB sought substitution within a reasonable time, given these circumstances.

**b.    The NCUAB May Be Substituted as Direct Plaintiff for the Re-conveyed Certificates from the R5 and R6 Trusts**

In the March 30 Opinion, the Court held that with regard to the NCUAB's request to substitute itself as the direct claimant for itself as a derivative claimant with regard to the claims brought on behalf of recently unwound NGN trusts would only replace an incorrect party with the real party in interest. *BlackRock DJ Opinion*, 2017 WL 1194683, at *30.  The Court noted that it did not expect that substitution would "alter[ ] the original complaint's factual allegations as to the events or the participants."  *Id.* (quoting *House of Europe Funding I Ltd.*, 2015 WL 5190432, at *2); *see also Advanced Magnetics*, 106 F.3d at 20.  The Court now understands that "[t]wo NGN Trusts have unwound

(before their scheduled security dates) since [the NCUAB] filed its initial complaint, meaning that 'the RMBS certificates [were] conveyed back' to [the NCUAB] along with 'all rights to assert claims regarding th[ose] certificates.'" (Pl. Supp. & Sub. Br. 5 (quoting *BlackRock DJ Opinion*, 2017 WL 1194683, at *30)). Defendants do not dispute the applicability of the March 30 Opinion's reasoning to both of these trusts. (*See* Def. Supp. & Sub. Opp. 5 n.1 (recognizing this substitution is permitted pursuant to the March 30 Opinion)). Therefore, for the reasons explained in the March 30 Opinion, the Court will permit the NCUAB to substitute itself as direct Plaintiff for the re-conveyed certificates from both the R5 and R6 trusts.[8]

### 4. The NCUAB May File a Supplemental Pleading

The NCUAB seeks to file a supplemental complaint to plead facts that happened after its Second Amended Complaint was filed. *See* Fed. R. Civ. P. 15(d). The supplemental complaint would include (i) facts pertaining to BNYM's appointment of and assignment of the NGN-related claims to the Separate Trustee for their pursuit here (Pl. Supp. & Sub. Br. 8); and (ii) facts pertaining to the re-conveyed trust certificates (*id.* at 15).

The Court begins with the latter category, as it presents a simpler question. Defendant has not argued that the substitution of the NCUAB as direct Plaintiff for the re-conveyed certificates from both the R5 and R6 trusts would prejudice it. The NCUAB promptly sought to supplement its pleading

---

[8]     The Court declines at this stage to offer an advisory opinion on the merits of future motions to substitute the NCUAB as the direct plaintiff for any trust certificates that may be re-conveyed in the future. (Def. Supp. & Sub. Opp. 5 n.1).

upon the unwinding of these Trusts, and allowing the NCUAB to supplement its pleading will not delay this action in any way, because the NCUAB is already a party to this action, and the claims brought on behalf of recently unwound NGN trusts were brought already in the Second Amended Complaint. *See BlackRock DJ Opinion*, 2017 WL 1194683, at *30 (considering these claims in adjudicating motion to dismiss Second Amended Complaint). Additionally, in light of the Court's foregoing finding that the NCUAB is the real party in interest with regard to these claims, the NCUAB clearly has good cause to supplement its pleading to include these facts because doing so will permit the NCUAB to replace an incorrect party with the real party in interest. *Id.* Therefore, the Court will permit the NCUAB to file a supplemental complaint alleging facts that happened after the filing of the Second Amended Complaint relating to the re-conveyed certificates from both the R5 and R6 trusts.

The Court will also permit the NCUAB to allege in its supplemental complaint the facts that happened after the filing of the Second Amended Complaint relating to the appointment of the Separate Trustee. Defendant argues that this should not be permitted for a number of reasons: Defendant argues that the supplementation would be futile because the Separate Trustee lacks standing to sue, and because his new claims are untimely. (Def. Supp. & Sub. Opp. 17-18). Defendant reiterates its belief that the NCUAB unduly delayed in addressing the issue of its standing. (*Id.* at 18). And Defendant argues that it would be prejudiced by supplementation insofar as it will need to file a new motion to dismiss and conduct new discovery. (*Id.* at 19-20).

These claims do not succeed. With regard to the allegedly undue delay, Defendant is correct that it first identified the relevant standing defect as early as February 20, 2015. (Def. Supp. & Sub. Opp. 3 (citing Dkt. #24, at 3)). Defendant is also correct that the NCUAB failed to remedy this defect, despite Defendant's notice thereof, in either its First or Second Amended Complaint. *Id.* But the Court cannot take the next step with Defendant, and conclude that the NCUAB's failure to amend its pleading more expeditiously was unduly delayed absent satisfactory explanation, or the result of dilatory tactics or bad faith. As the Court explained above, it does not find that the NCUAB unduly delayed in addressing the standing issue, in light of its genuine belief in the face of unsettled law that it was the real party in interest, and in light of this Court's deferral of the issue to the motion-to-dismiss stage.

With regard to undue prejudice, the Court cannot accept that Defendant will be unduly prejudiced by supplementation, if it is prejudiced at all. As the NCUAB explains, fact discovery with regard to the claims against Defendant is largely complete. (Pl. Supp. & Sub. Br. 13-14; Pl. Supp. & Sub. Reply 5). The substitution of the Separate Trustee will require minimal additional discovery, if any, because "[t]he only thing [it] would change is the name of the party asserting the claim." (Pl. Supp. & Sub. Br. 14; *see also* Pl. Supp. & Sub. Reply 5). The Court is also cognizant of and credits the NCUAB's warning that a denial of the Motion to Supplement and Substitute, would force "the Separate Trustee ... to file the NGN Trust-related claims in a new action," which would likely be related to the Court, and which "may also require inefficient

54

duplication of discovery efforts already accomplished here." (Pl. Supp. & Sub. Br. 14).[9] And though Defendant contends conversely that granting the Motion will prompt it to file a second motion to dismiss (Def. Supp. & Sub. Opp. 20), the Court cannot understand how this could be. The Court already has addressed the grounds on which it imagines Defendant might have moved — the real-party-in-interest status of the Separate Trustee and validity of his appointment — in this Opinion, and suggested its belief that Defendant lacks the standing to mount a challenge on this basis.

Finally, with regard to futility, the Court does not believe that supplementing the Complaint to permit the inclusion of facts relating to the appointment of the Separate Trustee would be futile. The Court has already found, above, that the Separate Trustee may be substituted as the derivative claimant because it is the real-party-in-interest. And Rule 17 dictates that "[a]fter ... substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3). This means that "for statute of limitations purposes, the claim[s] of the real party in interest ... date[] back to the filing of the complaint." *Cortlandt St.*, 790 F.3d at 421. There is, therefore, no timeliness issue. The Separate Trustee's claims are timely, because it is the real party in interest, and its claims relate back. Supplementing the facts supporting these claims does not render them

---

[9]    Thus, both sides proffer, if not threaten, that a Court determination contrary to their position will result in additional litigation. The Court appreciates both sides' concerns for its docket, but must render its decisions without regard to the possibility of additional work.

untimely.  Relatedly, permitting the Separate Trustee to supplement the
Second Amended Complaint with allegations relating to facts that occurred
after its filing will not render that Complaint insufficient to withstand a motion
to dismiss.  *See Kassner*, 496 F.3d at 244.  It will rather do just the opposite,
and bolster that pleading's sufficiency with regard to the deficits the Court
identified in the March 30 Opinion.

Because the Court finds Defendant has not shown that supplementation
would result in undue delay, futility, or undue prejudice, or that the NCUAB's
request for it is the result of bad faith or dilatory tactics, the NCUAB's motion
must be freely granted.  The Court grants the NCUAB leave to file a
supplemental pleading.

## CONCLUSION

For the foregoing reasons, the Sampling Motion is DENIED, the 30(b)(6)
Motion is DENIED, and the Motion to Supplement and Substitute is GRANTED.
The Clerk of Court is directed to terminate the following motions: in Case
No. 14 Civ. 9371, the motions pending at Docket Entries #407 and 432; in
Case No. 14 Civ. 9764, the motion pending at Docket Entry #299; in Case
No. 14 Civ. 10067, the motions pending at Docket Entries #292 and 308; in
Case No. 14 Civ. 10102, the motion pending at Docket Entry #315; and in Case
No. 15 Civ. 10033, the motion pending at Docket Entry #238.

Before concluding, the Court pauses to express its dissatisfaction with
the blatant circumvention of its briefing-length restrictions.  The Court was
troubled by this conduct with regard to the briefing submitted at the motion-to-

dismiss stage, and is disappointed to see its utilization again here. The parties — and Plaintiffs in particular — are hereby warned that future attempts to evade the Court's page limits, by relegating entire arguments to the footnotes, or by using other "creative" formatting devices, will not be taken kindly. Going forward, the parties would do well to seek the Court's leave to enlarge their page limits, rather than attempting to hide their unauthorized enlargements in plain sight.

SO ORDERED.

Dated:     August 18, 2017
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge