USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 13, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BLACKROCK ALLOCATION TARGET SHARES:
SERIES S PORTFOLIO, *et al.*,

               Plaintiffs,

            v.

WELLS FARGO BANK, NATIONAL
ASSOCIATION, *et al.*,

               Defendants.

14 Civ. 9371 (KPF) (SN)

------------------------------------------------------------X

**OPINION AND ORDER**

ROYAL PARK INVESTMENTS SA/NV,
*Individually and on Behalf of all Others
Similarly Situated,*

               Plaintiffs,

            v.

WELLS FARGO BANK, N.A,
*as Trustee*,

               Defendant.

14 Civ. 9764 (KPF) (SN)

------------------------------------------------------------X

NATIONAL CREDIT UNION ADMINISTRATION
BOARD, *as Liquidating Agent of U.S. Central
Federal Credit Union, Western Corporate Federal
Credit Union, Members United Corporate Federal
Credit Union, Southwest Corporate Federal Credit
Union, and Constitution Corporate Federal Credit
Union*,

               Plaintiff,

            v.

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

               Defendant.

14 Civ. 10067 (KPF) (SN)

|                                                                      |   |                        |
|----------------------------------------------------------------------|---|------------------------|
| and                                                                  | : |                        |
| NCUA GUARANTEED NOTES TRUST 2010-R1,                                 | : |                        |
| NCUA GUARANTEED NOTES TRUST 2010-R2,                                 | : |                        |
| NCUA GUARANTEED NOTES TRUST 2010-R3,                                 | : |                        |
| NCUA GUARANTEED NOTES TRUST 2011-R2,                                 | : |                        |
| NCUA GUARANTEED NOTES TRUST 2011-R4,                                 | : |                        |
| NCUA GUARANTEED NOTES TRUST 2011-R5,                                 | : |                        |
| and NCUA GUARANTEED NOTES TRUST 2011-M1,                             | : |                        |
|                                                                      |   |                        |
| Nominal Defendants.                                                  | : |                        |
| -----------------------------------------------------------------X   |   |                        |
| PHOENIX LIGHT SF LIMITED, *et al.*,                                  | : |                        |
|                                                                      |   |                        |
| Plaintiffs,                                                          | : |                        |
|                                                                      |   |                        |
| v.                                                                   | ; | 14 Civ. 10102 (KPF) (SN) |
|                                                                      |   |                        |
| WELLS FARGO BANK, N.A.,                                              | : |                        |
|                                                                      |   |                        |
| Defendant.                                                           | : |                        |
| -----------------------------------------------------------------X   |   |                        |
| COMMERZBANK AG,                                                      | : |                        |
|                                                                      |   |                        |
| Plaintiffs,                                                          | : |                        |
|                                                                      |   |                        |
| v.                                                                   | ; | 15 Civ. 10033 (KPF) (SN) |
|                                                                      |   |                        |
| WELLS FARGO BANK N.A.,                                               | : |                        |
|                                                                      |   |                        |
| Defendant.                                                           | : |                        |
| -----------------------------------------------------------------X   |   |                        |

KATHERINE POLK FAILLA, District Judge:

Pending before the Court is a motion by the Coordinated Plaintiffs in the above actions to vacate two orders issued by Magistrate Judge Sarah Netburn on December 18, 2017, and January 2, 2018 (respectively, the "December 18,

2017 Order" and the "January 2, 2018 Order"). Both Orders implicate Wells Fargo's purported discovery and/or knowledge of breaches of representations and warranties ("R&Ws") contained in loan agreements for which it served as trustee. For the reasons that follow, Plaintiffs' motion is denied.

## BACKGROUND[1]

The Court presumes the parties' familiarity with the factual and procedural history of these related cases. *See BlackRock Allocation Target Shares: Series S. Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, 247 F. Supp. 3d 377, 383-88 (S.D.N.Y. 2017) ("*BlackRock Series S*"), *objections overruled sub nom. BlackRock Allocation Target Shares: Series S Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017); *BlackRock Allocation Target Shares* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 953550, at *2-3 (S.D.N.Y. Mar. 10, 2017), *order clarified sub nom. BlackRock Allocation Target Shares: Series S Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017). The Court therefore incorporates its prior factual recitations by reference and limits its discussion of factual and procedural histories to the specific orders by Judge Netburn that Plaintiffs have moved to vacate.

---

[1] Except where otherwise specified, the docket citations in this Opinion are to entries in Case No. 14 Civ. 9764. For clarity, the Court will not also cite to the correlative docket entries in the related cases. As mentioned above, Plaintiffs' motion challenges Judge Netburn's Orders of December 18, 2017 ("Dec. 18, 2017 Order" (Dkt. #431)), and January 2, 2018 ("Jan. 2, 2018 Order" (Dkt. #435)). For ease of reference, the Court refers to the Consolidated Plaintiffs' Memorandum in Support of Their Motion to Vacate as "Pl. Br." (filed under seal), and Wells Fargo's Memorandum of Law in Opposition to Plaintiffs' Motion to Vacate as "Def. Opp." (redacted version at Dkt. #458).

## A. The December 18, 2017 Order

In these coordinated litigations, Wells Fargo has invoked the attorney-client privilege to withhold from production communications containing its counsel's opinions and advice. (*See* Def. Br. 1). According to Plaintiffs, however, Wells Fargo has improperly invoked the attorney-client privilege to protect certain documents concerning its awareness of R&W breaches and events of default, while at the same time contending that "it did not learn of such Breaches[.]" (Dkt. #420). On October 31, 2017, Plaintiffs filed a letter with the Court requesting a pre-motion conference in anticipation of a motion "to exclude evidence or argument that [Wells Fargo] failed to obtain discovery or receipt of notice of breaches of representations and warranties ... , and actual knowledge of Events of Default" in the underlying loan documents at issue. (*Id.*). Alternatively, Plaintiffs urged the Court to "find that Wells Fargo waived any privilege over documents underlying its state-of-mind claim and defense [that] it placed directly at issue in this action." (*Id.*).

Determining that Plaintiffs' requests were "substantially evidentiary," the Court directed Plaintiffs to re-file the letter with Magistrate Judge Netburn (Dkt. #421), after which Wells Fargo filed a responsive letter opposing Plaintiffs' request (Dkt. #423). After a hearing on the parties' submissions on December 12, 2017 (*see* Wood Decl., Ex. A), Judge Netburn denied Plaintiffs' requests, reasoning that (i) "Wells Fargo is not relying on privileged material for its defense," and (ii) Plaintiffs bore the burden of establishing Wells Fargo's

4

knowledge "and not Wells Fargo's state of mind concerning whether its legal obligations were triggered" (Dec. 18, 2017 Order at 3-4).

**B.    The January 2, 2018 Order**

The second challenged order pertains to Plaintiffs' responses to interrogatories. Wells Fargo had served on Plaintiffs various interrogatories, including the following, to which the Court refers as the "Contention Interrogatory":

> As to each R&W Breach that You contend Wells Fargo discovered, State and Describe the facts and evidence supporting that contention, Including Identifying each Loan in each Covered Trust that you contend is evidence of an R&W Breach, the nature of the particular R&W breach(es) You contend are evidence by each such Loan (with references to the particular relevant R&W(s) in the relevant [Governing Agreement]), *the date on which You contend the Trustee discovered each R&W Breach identified*, [and] a description of your contention as to how each identified R&W breach at the time of its discovery materially and adversely affected the interests of Certificateholders or Noteholders.

(Wood Decl., Ex. B at 8 (emphasis added)). On June 21, 2017, Judge Netburn issued an order overruling Plaintiffs' objections to this interrogatory, except to excise the final clause requiring Plaintiffs to provide "a description of your contention as to how each identified R&W breach at the time of its discovery materially and adversely affected the interests of the Certificateholders or Noteholders[.]" (Dkt. #353). Judge Netburn thus ordered Plaintiffs to respond to the Contention Interrogatory within 60 days of the June 21, 2017 Order. (*Id.*).

5

Plaintiffs, save for the BlackRock Plaintiffs, thereafter sought reconsideration of Judge Netburn's June 21, 2017 Order with respect to the Contention Interrogatory, seeking an extension of time to answer it until after expert discovery had provided "expert identification of the breaching loans[.]" (Dkt. #373). Although Judge Netburn denied the request for an extension of time, she allowed Plaintiffs to respond to the Contention Interrogatory "for a sample of a hundred (100) loans for each plaintiff group," rather than every loan at issue. (*Id.*).

On October 10, 2017, Wells Fargo sought to compel supplemental responses to the Contention Interrogatory, claiming that Plaintiffs' answers were "deficient and evasive, particularly as to the date of discovery" of each R&W breach identified. (*See* Jan. 2, 2018 Order at 2).[2] As characterized by Judge Netburn, Plaintiffs deemed these responses proper because (i) "the willful blindness standard authorized by Judge Failla in a prior order means that discovery is not pinned to a specific date but rather is a gradual development"; (ii) "further supplementation is disproportionate under Federal Rule of Civil Procedure 33(d)"; (iii) "Wells Fargo's privilege claims prevent Plaintiffs from identifying dates of discovery"; and (iv) "establishing the dates of discovery [is] part of Wells Fargo's affirmative burden." (*Id.* at 2-3). In the January 2, 2018 Order, Judge Netburn rejected Plaintiffs' explanation, reasoning that "[e]ven under a willful blindness theory, there must be a

---

[2] Plaintiffs had responded to this portion of the Contention Interrogatory by stating, as one example, "that Wells Fargo discovered R&W breaches 'by January 2009 and thereafter' or 'on or before' a specific date[.]" (Pl. Br. 19).

6

moment when Plaintiffs claim that Wells Fargo's failure to act constituted a breach of the governing agreements," and therefore ordered Plaintiffs to provide the supplemental responses that Wells Fargo sought. (*Id.* at 3).

**C.     The Motion to Vacate**

On January 16, 2018, Plaintiffs filed objections and a motion to vacate the December 18, 2017 and January 2, 2018 Orders "concerning [Wells Fargo's] discovery and knowledge of breaches." (Dkt. #441 (capitalization removed)). As to the December 18, 2017 Order, Plaintiffs argue that because Wells Fargo asserts privilege over certain documents that may include attorney opinions as to whether R&W breaches occurred, the Court should preclude Wells Fargo from submitting evidence and argument that it failed to discover or lacked knowledge of those breaches, or alternatively, the Court should find that Wells Fargo implicitly waived the attorney-client privilege as to those documents. (*See* Pl. Br. 8-16). For similar reasons, Plaintiffs urge the Court to vacate the January 2, 2018 Order, while simultaneously arguing that the Order contravenes this Court's prior statements regarding Plaintiffs' burden of proof. (*Id.* at 18). Wells Fargo filed an opposition to the motion to vacate on February 14, 2018, arguing that it was entitled to argue that it lacked knowledge of R&W breaches and events of default, and that the January 2, 2018 Order was not erroneous. (Dkt. #458-59).[3]

---

[3]     On February 20, 2018, Plaintiffs requested oral argument on the motion (Dkt. #462) and the Court reserved ruling on the request the following day (Dkt. #463). As the Court does not find that oral argument would have been useful in ruling on the motion, that request is now denied.

## DISCUSSION

### A. The Standard of Review Is Clear Error

As an initial matter, the parties dispute the applicable standard of review. While Wells Fargo maintains that the Court must review the Orders for clear error (Def. Opp. 8-10), Plaintiffs seek a more demanding *de novo* review (Pl. Br. 8). Wells Fargo has the better of this argument.

The standard of review that a district court applies to a magistrate's orders "depends on whether the issue decided by the magistrate judge is dispositive or nondispositive." *Hughes* v. *LaSalle Bank, N.A.*, No. 02 Civ. 6384 (MBM) (HBP), 2004 WL 414828, at *1 (S.D.N.Y. Mar. 4, 2004). Whereas dispositive orders are subject to *de novo* review, if a party timely objects to a magistrate's nondispositive order, a district court may only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" and "contrary to law if 'it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Khaldei* v. *Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013) (citations omitted).

Orders involving discovery, such as those here involving privilege issues, are nondispositive rulings subject to review for clear error or rulings that are contrary to law. *Eisai Ltd.* v. *Dr. Reddy's Labs., Inc.*, 406 F. Supp. 2d 341, 342 (S.D.N.Y. 2005). Plaintiffs argue that they are entitled to *de novo* review

because the orders at issue involve "legal conclusions." (Pl. Br. 8). But legal questions involved in a nondispositive order do not transform the order into a dispositive one. To the contrary, the standard applicable to nondispositive orders specifically addresses legal questions, as "[t]he 'contrary to law' prong ... is concerned with the magistrate judge's legal conclusions[.]" *Peterson* v. *Katonah Lewisboro Sch. Dist.*, No. 13 Civ. 51 (VB), 2014 WL 3891253, at *1 (S.D.N.Y. June 27, 2014) (alterations in original) (quoting *Pall Corp.* v. *Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008)). "Indeed, courts in this Circuit have routinely applied a clear error standard of review to a magistrate judge's nondispositive pretrial order even when the appellate standard of review for the underlying questions of law would be *de novo*." *Progress Bulk Carriers* v. *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc.*, 2 F. Supp. 3d 499, 502 (`S.D.N.Y. 2014) (collecting cases). Thus, because the Orders at issue are nondispositive, the Court will review them for clear error or rulings that are contrary to law.

**B.    Plaintiffs' Motion to Vacate Is Denied**

    **1.    The December 18, 2017 Order Is Neither Clearly Erroneous Nor Contrary to Law**

The correctness of the December 18, 2017 Order boils down to one issue: whether Wells Fargo has relied on or otherwise placed at issue privileged information in mounting its defense. As discussed below, if the answer to this question is, "Yes," then Wells Fargo may have implicitly waived the attorney-client privilege and may also be precluded from relying on defense theories that

9

hinge on the privileged information.[4]  As it happens, however, the answer to this question is, "No."

### a. Applicable Law

"The attorney-client privilege generally forbids an attorney from disclosing confidential communications that pass in the course of professional employment from client to lawyer." *United States* v. *Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).  The purpose of the privilege is "to encourage full and frank communication between" attorney and client, with the recognition "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co.* v. *United States*, 449 U.S. 383, 389 (1981).  "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts 'apply [the privilege] only where necessary to achieve its purpose' and 'construe the privilege narrowly because it renders relevant information undiscoverable.'" *United States* v. *Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (alteration in original) (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)).

One instance in which courts do not apply the privilege is "known as 'implied waiver' or 'at-issue waiver,'" under which a party may give up an

---

4  Because both the primary and alternative forms of relief that Plaintiffs seek hinge on a single issue, the Court rejects Plaintiffs' contention that the Magistrate "fail[ed] to address the primary relief sought" (Pl. Br. 8), as Judge Netburn denied "Plaintiffs' motion for preclusion *or* waiver" based on her determination that "Wells Fargo is not relying on privileged material for its defense" (Dec. 18, 2017 Order at 3, 5 (emphasis added)).  Indeed, the principal case on which Plaintiffs rely in seeking to preclude Wells Fargo from submitting evidence or argument draws from the same implied-waiver doctrine that underlies Plaintiffs' alternative requested relief.  (*See* Pl. Br. 9-10 (discussing *Arista Records LLC* v. *Lime Grp. LLC*, No. 06 Civ. 5936 (KMW) 2011 WL 1642434 (S.D.N.Y. Apr. 20, 2011)).

10

asserted privilege if "'the party attempts to use the privilege both as a shield and a sword' by 'partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny.'" *Newmarkets Partners, LLC* v. *Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (internal alterations omitted) (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)). "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *In re Grand Jury Proceedings*, 219 F.3d at 182-83 (quoting *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)). Other examples include where "a client testifies concerning portions of the attorney-client communication, … a client places the attorney-client relationship directly at issue, … and when a client asserts reliance on an attorney's advice as an element of a claim or defense[.]" *In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Sedco Int'l S.A.* v. *Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982)). "The key to a finding of implied waiver in the third instance is some showing by the party arguing for a waiver that the opposing party *relies* on the privileged communication as a claim or defense or as an element of a claim or defense." *Id.*

  b.  **Analysis**

As this Court has previously stated, Plaintiffs bear the burden of proving the underlying R&W breaches "on a 'loan-by-loan and trust-by-trust basis.'" *BlackRock Allocation Target Shares*, 247 F. Supp. 3d at 390-91 (quoting

11

*Phoenix Light SF Ltd.* v. *Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 713 (S.D.N.Y. 2016)). And as the December 18, 2017 Order recognized, Plaintiffs must also prove "what Wells Fargo knew (or discovered)" with respect to such breaches, "not Wells Fargo's state of mind concerning whether its legal obligations were triggered." (Dec. 18, 2017 Order at 4). As a defense to Plaintiffs' claims, Wells Fargo asserts that it lacked knowledge of the R&W breaches and events of default; Wells Fargo disclaims any intention to "rely upon any privileged or work product protected-material at trial" or to "assert[ ] an advice of counsel or state of mind defense." (Def. Opp. 11).

Rejecting these disclaimers, Plaintiffs contend that, in fact, "Wells Fargo intentionally injected counsel into all R&W and [Event of Default] discussions and determinations in order to cloak such ordinary business operations in privilege claims." (Pl. Br. 3). Plaintiffs thus argue that (i) the December 18, 2017 Order erred by imposing a requirement that Wells Fargo affirmatively rely on privileged communication to effect waiver; (ii) alternatively, even assuming waiver requires such reliance, Wells Fargo has relied on privileged communications in mounting its defense; and (iii) the Order "is contrary to law because it ignores the primacy of fairness in holding Wells Fargo did not forfeit its privilege protection." (*Id.* at 11-18). As explained here, Plaintiffs have not demonstrated that the Order is clearly erroneous or contrary to law.

At the outset, the Court agrees with Plaintiffs that implied waiver does not *always* require affirmative reliance on purportedly privileged information. In *United States* v. *Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), for example, the

12

Second Circuit held that a defendant's testimony asserting his good faith belief in the legality of his actions put at issue his knowledge of the law and thus waived any privilege over his communications with counsel on the subject. 926 F.2d at 1292-93. Nevertheless, the Court clarified that the waiver depended on the defendant's *testimony* supporting his claims of good faith; he would not have waived the privilege merely by denying his criminal intent. *Id.* at 1293 ("Defendant was free to deny criminal intent either without asserting good faith or to argue his good faith defense by means of defense counsel's opening and closing statements and by his examination of witnesses.").

It follows from this quoted passage in *Bilzerian* that, by asserting its lack of knowledge as to the underlying R&W breaches and events of default, Wells Fargo is not "us[ing] the privilege both as a shield and a sword" in this litigation. *In re Grand Jury Proceedings*, 219 F.3d at 182. To be sure, "privileged information may be in some sense *relevant* to any lawsuit," and the information that Wells Fargo maintains as privileged could very well be relevant to Plaintiffs' claims. *Cty. of Erie*, 546 F.3d at 229. But "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue." *Id.* Had Wells Fargo maintained that its lack of knowledge was based on counsel's advice, it likely would have waived the privilege over any evidence relevant to that advice, yet that is not Wells Fargo's position.

And although courts have held that the assertion of a "state of mind" defense may waive the privilege, this is only so where such an assertion renders the privileged information "vital" to disproving the defense. *Cty. of Erie*,

13

546 F.3d at 229. Here, Plaintiffs must prove not only the existence of R&W breaches for each loan within each trust at issue, but also that Wells Fargo, at least, "should have been aware" of such breach. *BlackRock Allocation Target Shares: Series S Portfolio*, 2017 WL 3610511, at *10 (emphasis removed). Plaintiffs' burden thus depends on the underlying loan documents and data related to those documents, not on any legal opinion that Wells Fargo may or may not have received in relation to those documents. *See, e.g., Standard Chartered Bank PLC* v. *Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 82 (S.D.N.Y. 1986) (holding defendant did not waive privilege by bringing counterclaims alleging reliance on plaintiff's oral agreement, where plaintiff sought communications from defendant's counsel regarding whether such agreement was binding). Indeed, Plaintiffs' counsel conceded before Judge Netburn that any legal advice that Wells Fargo received would not establish the existence *vel non* of an R&W breach. (*See* Wood Decl., Ex. A, at 15:9-11 ("I don't think, for example, that this is an issue where we are trying to say that there was an event of default, period, because [Wells Fargo's] lawyer said so.")).

Separately, the Court rejects Plaintiffs' argument that the December 18, 2017 Order "is contrary to law because it ignores the primacy of fairness in holding Wells Fargo did not forfeit its privilege protection." (Pl. Br. 15). Courts do indeed consider notions of fairness in determining whether a party has waived its attorney-client privilege. *Cty. of Erie*, 546 F.3d at 229. But "[t]he unfairness courts have found which justified imposing involuntary forfeiture generally resulted from a party's advancing a claim to a court or jury ... while

14

relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." *John Doe Co.* v. *United States*, 350 F.3d 299, 303 (2d Cir. 2003), *as amended* (Nov. 25, 2003). As discussed above, and as Judge Netburn recognized, Plaintiffs have numerous avenues by which they may attempt to prove Wells Fargo's knowledge with respect to R&W breaches that do not impinge on the attorney-client relationship, including in particular the terms of the underlying loans and data relevant to those loans. Depriving Plaintiffs of access to Wells Fargo's privileged communications is thus not unfair.

For all of these reasons, Plaintiffs' motion to vacate the December 18, 2017 Order is denied.

### 2. The January 2, 2018 Order Is Neither Clearly Erroneous Nor Contrary to Law

The January 2, 2018 Order requires Plaintiffs to identify "a moment when Plaintiffs claim that Wells Fargo's failure to act constituted a breach of the governing agreements" (Jan. 2, 2018 Order at 3), in response to an interrogatory seeking "the date on which [Plaintiffs] contend [Wells Fargo] discovered each R&W Breach identified" (Wood Decl., Ex. B at 8). Plaintiffs raise three grounds for vacating this Order, each of which fails.

*First*, Plaintiffs argue that the Order "only compounds the fundamental unfairness resulting from" the December 18, 2017 Order. (Pl. Br. 18). The Court has already rejected Plaintiffs' argument that the December 18, 2017 Order caused Plaintiffs any "fundamental unfairness," and the Court thus rejects this argument as well.

15

*Second*, Plaintiffs argue that the Order is inconsistent with this Court's prior pronouncements regarding Plaintiffs' burden of proof as to Wells Fargo's knowledge of each alleged R&W breach. (Pl. Br. 19-20). Specifically, this Court held that in order to show Wells Fargo's "discovery" of an R&W breach, Plaintiffs must prove, at least, "conscious avoidance," meaning "when it can almost be said that the defendant actually knew because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge," or "implied actual knowledge," meaning "knowledge of information that would lead a reasonable person to inquire further[.]" *BlackRock Allocation Target Shares*, 2017 WL 3610511, at *10 (internal quotation marks, citations, and emphasis omitted). Plaintiffs contend that this holding obviates the need to provide a particular date in response to the Contention Interrogatory, and instead permits Plaintiffs to provide approximations, such as "by January 2009 and thereafter" or "'on or before' a specific date[.]" (Pl. Br. 19). It does not.

To prove that Wells Fargo "almost … actually knew" of an R&W breach, or that Wells Fargo acquired "information that would lead a reasonable person to inquire further," Plaintiffs must bring forth facts showing that Wells Fargo acquired data at least suggesting that a given R&W breach had occurred. Such facts will inherently involve timing, as Plaintiffs will be unable to satisfy this burden without showing the relevant information came to Wells Fargo's attention at some point. And the discovery that Wells Fargo seeks is within the ambit of discoverable information defined by the Federal Rules of Civil

16

Procedure.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").  Thus, although Plaintiffs' response to the Contention Interrogatory need not provide the exact hour and minute that Wells Fargo discovered an R&W breach, it must be more precise than such open-ended statements as "by January 2009 and thereafter" or "on or before" a given date.

*Third*, Plaintiffs argue that the Order "improperly shifts Wells Fargo's burden to prove its affirmative statute of limitations or other defenses to [P]laintiffs" by requiring Plaintiffs "to change their contentions simply to conform to Wells Fargo's defenses or incorrect standard for discovery of Breaches."  (Pl. Br. 20).  The Order does no such thing.  To be sure, Plaintiffs' responses to the Contention Interrogatory may very well prove dispositive of Wells Fargo's statute of limitations defense.  But by propounding interrogatories on the issue, Wells Fargo was engaging in proper discovery in order to satisfy its burden of proof.

Plaintiffs have therefore failed to show that the January 2, 2018 Order is clearly erroneous or contrary to law, and their motion to vacate that Order is denied.

**CONCLUSION**

Given the foregoing, Plaintiffs' motion to vacate Judge Netburn's December 18, 2017 and January 2, 2018 Orders is DENIED. The Clerk of Court is directed to terminate the motions appearing in Case Number 14 Civ. 9371 at Docket Entries #656 and #679; 14 Civ. 9764 at Docket Entries #441 and #462; Case Number 14 Civ. 10067 at Docket Entries #405 and #413; Case Number 14 Civ. 10102 at Docket Entries #430 and #447; and Case Number 15 Civ. 10033 at Docket Entries #377 and #397.

SO ORDERED.

Dated: August 13, 2018
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge